No. 25-1417

## UNITED STATES COURT OF APPEALS
## FOR THE SEVENTH CIRCUIT

BARBARA SIMONSON,

    Plaintiff-Appellant

    v.

THOMAS OLEJNICZAK,
STEVEN J. KRUEGER,
CONWAY, OLEJNICZAK & JERRY, S.C.

    Defendants-Appellees.

Appeal from the United States District Court
For the Eastern District of Wisconsin
The Honorable Judge William C. Griesbach

BRIEF AND REQUIRED SHORT APPENDIX OF
PLAINTIFF-APPELLANT BARBARA SIMONSON

THE LAW OFFICE OF ERIC SIMONSON
Eric Simonson
Attorney for Plaintiff-Appellant Barbara Simonson

210 E. 73rd Street, #9B
New York, NY 10021
917-579-8733
eric.simonson.br@gmail.com

## APPEARANCE & CIRCUIT RULE 26.1 DISCLOSURE STATEMENT

Appellate Court No: 25-1417

Short Caption: Simonson v. Olejniczak et al

    To enable the judges to determine whether recusal is necessary or appropriate, an attorney for a non-governmental party, amicus curiae, intervenor or a private attorney representing a government party, must furnish a disclosure statement providing the following information in compliance with Circuit Rule 26.1 and Fed. R. App. P. 26.1.

    The Court prefers that the disclosure statements be filed immediately following docketing; but, the disclosure statement must be filed within 21 days of docketing or upon the filing of a motion, response, petition, or answer in this court, whichever occurs first. Attorneys are required to file an amended statement to reflect any material changes in the required information. The text of the statement must also be included in the front of the table of contents of the party's main brief. **Counsel is required to complete the entire statement and to use N/A for any information that is not applicable if this form is used.**

[ ]      **PLEASE CHECK HERE IF ANY INFORMATION ON THIS FORM IS NEW OR REVISED AND INDICATE WHICH INFORMATION IS NEW OR REVISED.**

(1)      The full name of every party that the attorney represents in the case (if the party is a corporation, you must provide the corporate disclosure information required by Fed. R. App. P. 26.1 by completing item #3):

Barbara Simonson

(2)      The names of all law firms whose partners or associates have appeared for the party in the case (including proceedings in the district court or before an administrative agency) or are expected to appear for the party in this court:

Law Office of Eric Simonson, Eric Simonson, Esq. Mr. Simonson is also a partner at Greenspoon Marder LLP, which I

has not been retained by the Appellant at any time.

(3)      If the party, amicus or intervenor is a corporation:

     i)      Identify all its parent corporations, if any; and

     ii)      list any publicly held company that owns 10% or more of the party's, amicus' or intervenor's stock:

(4)      Provide information required by FRAP 26.1(b) – Organizational Victims in Criminal Cases:

N/A

(5)      Provide Debtor information required by FRAP 26.1 (c) 1 & 2:

N/A

Attorney's Signature: /s/Eric Simonson      Date: 3/20/25

Attorney's Printed Name: Eric Simonson

Please indicate if you are *Counsel of Record* for the above listed parties pursuant to Circuit Rule 3(d).    Yes [✔]   No [ ]

Address: Law Office of Eric Simonson

     210 E. 73rd Street, #9B, New York, NY 10021

Phone Number: 917-579-8733      Fax Number:

E-Mail Address: eric.simonson.br@gmail.com

rev. 12/19 AK

**APPELLANT BRIEF**

TABLE OF CONTENTS

TABLE OF AUTHORITIES                                                      (ii)

JURISDICTIONAL STATEMENT                                                   1

STATEMENT OF THE ISSUES                                                    2

STATEMENT OF THE CASE                                                      2

SUMMARY OF ARGUMENT                                                       10

ARGUMENT                                                                  14

    A.  Standard of Review.                                             14

    B.  The District Court Improperly Dismissed
        The Affidavit.                                                 14

    C.  The District Court Misapplied the Standard
        For Summary Judgment by Making Adverse
        Inferences, Relying on Evidence (in One Case
        Demonstrably False) not in the Record and
        Ignoring Evidence in the Record.                               17

    D.  The District Court Did Not Analyze the
        Written Terms of the Contract.                                 22

    E.  The District Court Failed to Properly
        Apply Wisconsin Law and Improperly Used
        Negative Inferences When It Held That
        Simonson's Failure to Pay Defendants'
        Invoices in Full and On Time Excused
        Defendants' Performance Under the
        Contract.                                                      24

CONCLUSION                                                                31

CERTIFICATE OF COMPLIANCE WITH FRAP RULES 32(a)(7)
AND 32(g) and CR 32(c)                                                     33

CIRCUIT RULE 30(d) STATEMENT      (Appears on cover page of Short Appendix)

ATTACHED REQUIRED SHORT APPENDIX

i

# TABLE OF AUTHORITIES

CASES                                                    PAGE(S)

*Anderson v. Liberty Lobby, Inc.*, 477 U.S. 242 (1986)                    14

*California Wine Ass'n v. Wisconsin Liquor of Oshkosh,*
    20 Wis.2d 110 (Wis. 1963)                        23

*King and Kind d/b/a Kings Lodging and Tree*
    *Service v. Niederkorn,* Wis.Ct.App.Dist.III,       26, 27

*Kluge v. Brownsburg Community School Corp.,*
    No. 21-2475 (7th Cir. 2023)                       14

*Lujan v. Nat'l Wildlife Fed'n,* 479 U.S. 871 (1990)                 14, 15

*Management Comp. Serv. v. Hawkins,*
    206 Wis. 2d 158 (Wis. 1996)                       27

*Myrold v. Northern Wis. Co-op Tobacco Pool,*
    206 Wis. 244 (1931)                              24, 25

*Payne v. Pauly,* 337 F.3d 767 (7th Cir. 2003)                    14, 15, 28

*Parker v. Four Seasons Hotels, Ltd.,*
    845 F.3d 807 (7th Cir. 2017)                      17

*Ranes v. American Fam. Mut. Ins. Co.,*
    219 Wis.2d 49 (1998)                             24

*Steele v. Pacesetter Motor Cars, Inc.,*
    267 Wis.2d 873 (2003)                            23

*Weaver v. Champion Petfoods USA Inc.*
    3 F.4th 927 (7th Cir. 2001)                       14

*Wohl v. Spectrum Mfg.*, 94 F.3d 353 (7th Cir. 1996)                 14

STATUTES

28 U.S.C. § 1291      1

28 U.S.C. § 1332      1

RULES

FRCP Rule 56(a)      17

FRCP Rule 59(e)      1

OTHER

Restatement (Second) of Contracts § 241 (1981)      26

Wisconsin Standard Jury Instructions      23

## JURISDICTIONAL STATEMENT

The district court has jurisdiction as a civil action under the laws of the United States pursuant to 28 U.S.C. § 1332, the Plaintiff a citizen of the State of Connecticut and each of the Defendants a citizen of the State of Wisconsin, and the amount in controversy in excess of $75,000. Each of Defendants Thomas Olejniczak and Steven J. Krueger are residents of Wisconsin. Defendant Conway, Olejniczak & Jerry, S.C. ("COJ") is a service corporation organized under the laws of the State of Wisconsin, with its principal and sole place of business in Green Bay, Wisconsin. At the time of filing the instant action, and to Plaintiff's information and belief as of today, none of COJ's equity holders, nor any of its employees are residents of Connecticut.

This appeal is taken from the final decision of the U.S. District Court for the Eastern District of Wisconsin entered on August 20, 2024, granting defendants summary judgment, as upheld by the Order of the District Court, dated February 11, 2025 entitled by the Court as "Order on Motion for Reconsideration" (the "Motion"), in each case by the Honorable William C. Griesbach. The Motion, properly titled "Motion Pursuant to FRCP 59(e)," was filed by the Plaintiff on September 12, 2024. The United States Court of Appeals has jurisdiction in this case pursuant to 28 U.S.C. § 1291.

The Notice of Appeal was filed with the District Court on March 12, 2025.

## STATEMENT OF THE ISSUES

1. Did the District Court properly dismiss Plaintiff-Appellant's affidavit (the "Affidavit") as evidence sufficient to raise genuine issues of material fact?

2. Did the District Court properly apply the standard for summary judgment when it made adverse inferences based on the facts in the record, ignored contrary facts in the record, and in one case cited a "fact" critical to its analysis not in the record and demonstrably false?

3. In holding that Defendant-Appellees did not breach a legal services contract, did the District Court err by not addressing the written terms of such contract and holding that because Plaintiff-Appellant must have known that Defendant-Appellees were not going to perform under the contract, Defendant-Appellees therefore did not breach the contract?

4. Did the District court properly apply Wisconsin law in the context of a summary judgment motion by holding that Plaintiff-Appellant's failure to pay some of Defendant-Appellees' invoices in full and on time excused the failure of Defendant-Appellees' performance under the legal services contract?

## STATEMENT OF THE CASE

This is a fairly straight forward breach of contract action. In June, 2014, Plaintiff-Appellant (hereafter sometimes referred to as "Simonson") hired Defendant-Appellees (hereafter sometimes referred to collectively as "Defendants," and individually as "Olejniczak," "Krueger" and "COJ") to represent her in her capacity as personal representative of the estate of John Hoher (the "Estate") and

the trustee of the John and Jane Hohler Trust (the "Trust") in the face of a legal action against Simonson, as trustee and personal representative, brought by her sister. Simonson and Defendants executed a legal services agreement (the "Contract") [A19;D27#2][1] . Among other things, the Contract provided that it could be terminated by Defendants upon reasonable notice to Simonson by Defendants [A1 p.21;D27#2 p.3], and that past due amounts of legal fees would incur interest until paid [A19 p.20; D27#2 p.2]. At an initial telephonic meeting among Simonson, Olejniczak and Krueger, at the Defendants' suggestion, it was agreed that Defendants would also finalize and file all documents necessary to close the Estate as promptly as possible, expanding the scope of the Contract [A 40-41.; D37#1 pp.1-2][A26 item 19 D36 p.3]

For the next six months, Simonson paid each monthly invoice delivered for Defendants' services in full and on time.[A26 item 24; D36 p.3 item 24] During the early months of 2015, Simonson communicated to Defendants that some of the recent invoices were excessive and included inappropriate charges. [A41 ¶¶6-9; D37 #1 p.2][A29 ¶51] Simonson asked Olejniczak to reconsider the relevant invoices. As a gesture of good faith, Simonson continued to make partial payments to defendants. [A.42 ¶14; also A27-28 ¶ 29 and 48] On June 5, 2015, the probate court issued its ruling on the ongoing litigation, affirming Simonson's actions as trustee and personal representative, and, among other things, ordered Simonson to

---

[1] A document or page(s) of a document in the Short Appendix are referenced a "A [number], p.___" plus the docket number referenced as "D[number]" (and, in the case of multiple documents under one docket entry, a "#___, p.___"). If the reference is solely to a document or page(s) to a docketed document not in the Short Appendix, the reference will be "D[number],#_____ (if any), p._____."

determine and pay the reasonable and appropriate legal fees invoiced by Defendants. [A27 ¶31-36; D27#4]  The probate judge noted that the documents required to be filed to close the Estate had yet to be filed. [A32 ¶32-33; D36 p.4] Krueger stated that Defendants needed to do that and would. [A32 ¶32-33; D36 p.4] This was the first time Simonson became aware of Defendants' failure to make those promised estate filings. [A43 ¶17; D36 p.4 ¶¶ 32-33]

Following the probate court's order, Defendants suggested that they disengage from representing Simonson. [A28 ¶42-45,A43 ¶¶20-21; D37#1] Simonson asked that they continue representing her, but in an effort limit legal fees going forward came to an agreement with Defendants that Simonson would deal with most of the administrative matters relating to the Trust, with assistance from Defendants as needed.  [A28 ¶40-45,A43 ¶¶18-21; D37#1] There was no discussion of Defendants withdrawing from representing her in litigation matters, and no mention of Defendants' continued failure to make the Estate filings. [A42 ¶18-19, 21; D37#1 ¶¶18-19, 21]

During July and August 2015, Olejniczak communicated by email to Simonson demanding payment of Defendants' fees and threatening to withdraw. [A27-29 ¶37, 46-47, 63; D36 (same paragraphs)] Defendants offered modest compromises to the amounts owed. [A.29 ¶53-57; D36(same paragraphs)]  Simonson responded that she wanted to talk through the invoices with Olejniczak in order to determine if the compromises were reasonable, as she was required to do under the probate court's order. [A41-42 ¶¶7-11; D37 #1(same paragraphs)]  She continued to

4

make good faith partial payments to defendants, including a payment on July 30, 2015. [A.27-28 ¶¶29,48, A42 ¶14; D36, D37#1(same paragraphs)]

In August 2015, Simonson was copied on a demand from the probate court to Defendants that the delinquent estate filings must be made as soon as possible, as promised by Krueger on June 5, 2015. [A29 ¶¶58-59; D36(same paragraphs)] Simonson contacted Olejniczak to demand an explanation why Defendants had not made the filings. [A29 ¶ 60; D36(same paragraphs)] Olejniczak then demanded payment, refused to make the estate filings, told Simonson to make the filings herself, and said Defendants were going to move the probate court to seek to withdraw as counsel of record. [A29 ¶¶61-63; D36(same paragraphs)]

On August 24, 2015, Defendants made a motion to the probate court to seek permission to withdraw as counsel of record, by its terms to be granted if Simonson did not object within five days. [A30 ¶64; D36 ¶64] Simonson objected within that period in a filing dated August 26 (delivered by overnight mail on August 27). [A43 ¶23; D37 #1 ¶23.]   What she did not know, but Defendants did, was that the probate court approved the requested permission to withdraw earlier in the day of August 26 and prior to receiving Simonson's objections. [A30¶66; D36 ¶66] Simonson did not receive notice of the probate court's decision either from the probate court or the Defendants. [A43-44 ¶¶24-26; D37#1  ¶¶24-26] Following the probate court's order, while over the next two months Defendants and Simonson continued to communicate over email, Defendants never once communicated in any manner the existence of the probate court order or that the probate court had

permitted withdrawal or that they were formally withdrawing as her counsel or terminating the Contract. [A37-38 ¶¶ 140-141 (incorporating admissions of Defendants D37#2 and Affidavit); D37 #1 and #2]

Simonson continued to believe that Defendants were her counsel and would handle any subsequent legal action against the Estate and Trust and against her in her capacities as personal representative and trustee. [A44 ¶¶ 25, 27; D37#1; also see D.36 ¶¶140-141] She was not surprised that she didn't get any notification from the probate court as to the withdrawal motion, given that court's often very slow response time. [A44 ¶29; D 37#1 ¶29] She prepared and filed the estate documents and handled the many administrative matters she had as trustee. [A42-43 ¶¶ 15; D37 #1 and A 31, D36 ¶¶73-77]

During September and October 2015, counsel for her sister sent her various demands and threats, copying Krueger. [A31¶80; D 36 ¶80] On October 5, 2015, that counsel sent to Simonson what appeared to be draft motion papers for a motion to remove Simonson as trustee and personal representative. [A31-32 ¶¶84-85; D36 ¶ ¶84-85] On October 12, 2015, that counsel sent to Simonson substantially identical papers, this time with a date for a hearing of November 9. [A32 ¶86; D36, same paragraph] In each case, Krueger was copied. [*See* Exh's 22 and 23 to D36 ¶¶84 and 85] Simonson wrote to that counsel that she would not be available on that date and that if that date were firm, she (she assumed through her lawyers, the Defendants) would ask for an adjournment. [A32 ¶88; D36¶88] Unbeknownst to Simonson, the probate court scheduled a hearing for November 9, 2015. [A.32 ¶¶32-

6

33; D37#1]  The probate court notified the Defendants of that hearing [D37#2] but did not send any notification to Simonson. [A45 ¶32; D37#1(same paragraph)] Despite receiving the court notice, the Defendants did not inform Simonson of the hearing or its date and time.[A45¶33; D37#1; and D37#2 ¶¶50]   Simonson assumed that her lawyers, who had never terminated the Contract and never informed her of their purported withdrawal as counsel of record, would represent her at any hearing, or at very least, tell her the date and time. [A45 ¶35; D37#1 ¶35]  That never happened.

At the November 9, 2015 hearing, only the attorney for the movant appeared. [A33  ¶99; D36 ¶99]The probate court removed Simonson as personal representative and trustee and imposed very material surcharges and sanctions on Simonson. [A33  ¶99; D36 ¶99] The probate court cited two reasons for its decision: (i) Simonson's failure to appear at the hearing, and (ii) her purported failure to complete estate filings.[2] [Exh 25 to D36]

When Simonson was informed of the decision of the probate court, she promptly hired, at her own expense, new counsel, who petitioned the probate court to reconsider or vacate its decision based on the failure of Simonson to receive proper notice of the hearing. [A45 ¶36; D37#1 ¶36]  The probate court declined. Simonson's new counsel then appealed that denial.  The appeal was unsuccessful.

---

[2] Counsel for the movant at that hearing had argued to the probate court that the estate filings had not been finalized and filed.  In the absence of anyone speaking on  behalf of Simonson, the probate court took this as true.  However, it was a misrepresentation to that court.  Ultimately, the successor trustee told the probate court that Simonson's estate filings were adequate and made, and the probate court agreed.

The appellate court ruled, apparently for the first time, that while Simonson was not properly given legal notice of the hearing, she had constructive knowledge according to the probate court which the court deemed sufficient, deferring to the probate court's judgment on this matter, notwithstanding the probate court's failure to hold an evidentiary hearing.[A33 ¶¶103, 104 and D26#16]

Plaintiff-Appellant filed suit against Defendants for breach of contract in the Eastern District of Connecticut on August 20, 2021, alleging that Defendants breached the Contract in two ways: by failing to file the Estate documents, and by failing to appear on her behalf at, or even notify her of, the November 9, 2015 probate court hearing. The District Court dismissed the action for failure of the court to have personal jurisdiction over the Defendants. Simonson appealed this decision to the United State Court of Appeals for the Second Circuit. The appellate court affirmed the dismissal.

Shortly thereafter, on April 25, 2023, Simonson filed the instant action in the Eastern District of Wisconsin. [D1] On February 27, 2024, in the middle of discovery, Defendants filed their motion for summary judgment citing twelve reasons. [D23-27] Simonson opposed that motion. [D35-37] On August 20, 2024, the District Court in an order (the "Order") rejected Defendants first basis for summary judgment, but granted the second (that because Simonson had materially breached the Contract, Defendants could not be liable), and third (that Defendants did not breach the Contract when they failed to file the Estate documents or failed to appear on behalf of Simonson at the November 9, 2015 probate court hearing).[A2-

8

16; D40]  The District Court did not address the other bases for summary judgment asserted by Defendants.  Plaintiff-Appellant then filed a motion under FRCP 59(e) (the "59(e) Motion") on September 12, 2024. [D45]  The District Court denied the motion in an order dated February 11, 2025 (the "Reconsideration Order"), not addressing specifically the matters raised in the 59(e) Motion, merely holding that because Simonson failed to pay Defendants' invoices in full and on time, Defendants were excused from all performance under the Contract. [A17-18; D49]

The following facts are either admitted to by Defendants or unquestioned by them in the summary judgment motion: Simonson engaged Defendants by entering into the Contract. [A19]  Defendants agreed to expand the scope of the representation to include, among other things, filing the Estate documents promptly after June 2014. [A 40-41.; D37#1 pp.1-2][A26 item 19 D36 p.3] Defendants failed to make those filings promptly or at any time, despite being ordered to do so by the probate court, and as of August 2015 repudiated their obligation to do so. [ A29 ¶61; D36¶61] Simonson paid a majority of the invoiced amounts and about half of those in full and on time. [A26-29 ¶¶24, 29, 48; D36 (same paragraphs)] There was a good faith dispute as to how much was properly due and payable.  [A41 ¶¶6-9; D37 #1 p.2][A29 ¶51]    Simonson, as trustee, was required by order of the probate court to scrutinize the bills. [D27#4] The probate court had ordered appropriate payment of Defendants' fees, so Simonson could not simply refuse to pay what was appropriate. [D27#4; A41-42 ¶11, D37#1 ¶11] Simonson continued to make good faith progress payments, notwithstanding the

9

dispute. [A27,48¶¶29,48 D36 ¶¶29, 48; A42 ¶14 D37#1 ¶14]  Defendants moved the probate court to permit withdrawal. [A30¶64,D36 ¶64]  Simonson objected to the motion within the five days provided in Defendants' motion in a filing dated August 26, 2015, received by the probate court on August 27, 2015.  [A43 ¶23] On August 26, 2015, the probate court ordered that Defendants be permitted to withdraw before receiving Simonson's objections. [A30 ¶66]   Simonson was not notified by the probate court of its decision. [A43 ¶24]   Defendants did not notify her at any time. [A43-44 ¶¶24-27; D37#1  ¶¶24-26]  The Contract could not be terminated prior to the probate court's granting Defendants permission to withdraw.[3]  The terms of the Contract, drafted by Defendants, required Defendants to terminate the Contract with reasonable notice and sufficient time to retain new counsel. [A21; D27#2 p.3] Defendants never did so after the probate court granted permission to withdraw. [A43-44 ¶¶24-26; D37#1  ¶¶24-26]  Simonson did not receive any notice from the probate court regarding the November 9, 2015 hearing. [A45 ¶32; D37#1] Defendants, however, did receive the notice, yet neither appeared on her behalf at the hearing nor informed her of the hearing. [A45¶33; D37#1; and D37#2 ¶¶50]

## SUMMARY OF ARGUMENT

The Contract existed.  Defendants did not abide by the Contract with respect to the filing of the Estate documents, representing Simonson at a hearing or in the manner in which they purport to have terminated the Contract.  Plaintiff-

---

[3] It is axiomatic that Defendants could not be counsel of record for Simonson yet not be engaged by Simonson to be her counsel.  Thus, no termination of the Contract by Defendants could have occurred prior to the probate court's ruling on the motion seeking permission to withdraw.

Appellant was directly damaged by these breaches. Curiously, in the District Court's Order, there are no references to evidence submitted by Simonson in opposition to the motion, including Simonson's affidavit, Plaintiff's proposed findings of fact or Defendants' admissions. Apparently, without explanation, the District Court did not consider them at all, relying solely on Defendants' proposed findings of fact.

While the Order held that Defendants did not breach the Contract, it never addressed the termination language in the Contract. Rather, it held that Simonson must have known Defendants were not going to provide additional legal services, in itself not a defense to breach of contract. The only other real questions in this case are (i) whether, under the circumstances, Simonson's failure to pay Defendant's bills during a relatively short period of time (the last progress payment was made on July 30, 2015, less than a month before Defendants sought permission to withdraw as counsel of record), during which Simonson and Olejniczak were discussing adjustments to the bills, interest was being accrued and there was no ultimate risk to payment, was a sufficiently "material breach" to relieve Defendants' obligations to perform under the Contract under Wisconsin law, and (ii) whether the District Court erred in its application of Wisconsin law and in its use of adverse inferences and dismissing the Affidavit, among other failures to properly apply the law of summary judgment, to reject without explanation Plaintiff-Appellant's proffered evidence showing that there are a host of genuine issues of material fact that are outcome determinative in this case.

The District Court's first mistake of law was to fail to properly weigh the Affidavit. The District Court did not cite the Affidavit or any other proposed findings of fact proffered by Simonson. This was contrary to settled law in this Circuit. The Affidavit was factual, not conclusory, based on firsthand knowledge of events Simonson witnessed. It did not contain conjecture or legal conclusions. There is nothing internally inconsistent in the Affidavit, nor does it claim anything that is implausible on its face. The District Court nevertheless failed to consider or rejected relevant portions of the Affidavit by making negative inferences from other facts in the record that do not directly and unambiguously contradict the Affidavit. Had the statements in the Affidavit been properly considered by the District Court, summary judgment could not have been ordered.

Next, the District Court erred by jumping to conclusions based on adverse inferences from facts in the record that do not unambiguously support (and in many cases do not support in any way) the propositions that formed the basis of its analysis. Notably, the District Court not only ignored countervailing evidence in the record (it did not mention any evidence or proposed findings of fact submitted to the Court by Simonson, including Defendants' admissions [D37#2] and the Affidavit), but also in one instance critical to its analysis, cited as fact a proposition not in the record that both Plaintiff-Appellant and Defendants agree is demonstrably not true. These errors infect the District Court's analysis of both of the issues addressed in the Order, whether Simonson materially breached the Contract and whether Defendants breached the Contract.

12

Surprisingly in a case of breach of contract, the District Court did not address the termination provisions of the Contract. The Contract could be unilaterally terminated by Defendants only by reasonable notice to Simonson. It is undisputed that Defendants never provided any unambiguous notice to Simonson and no notice whatsoever after the probate court permitted Defendants' withdrawal, which was the earliest time Defendants could have provided such notice. Thus, Defendants remained obligated under the Contract to continue representing Simonson without regard to whether the probate court had permitted their withdrawal as counsel of record. In addition, the District Court relied upon a mistaken interpretation of contract law when it held that because Simonson "must have known" Defendants were not going to perform under the Contract (a proposition with no direct evidence in the record and strongly contested, with evidence, by Simonson), that knowledge therefore legally excused Defendants' failure to perform under the Contract.

Finally, the District Court in its Order erred in the application of Wisconsin law as to whether Simonson's failure to pay all invoices when due excused Defendants' failure to perform under the Contract. Simonson's 59(e) Motion challenged this determination, showing that it was incomplete in its analysis under Wisconsin law and based on improper inferences from the record. Instead of addressing those concerns, the District Court in the Reconsideration Order changed its analysis to hold that because it was true that Simonson did not pay every invoice in full and on time, Defendants' failure of performance under the Contract as a matter of law was excused (the argument that was made by Defendants). This was

13

contrary to Wisconsin law—and contrary to the District Court's own analysis of the applicable law set forth in the Order.

## ARGUMENT

A. **Standard of Review**.

In reviewing the grant of summary judgment, the Court of Appeals undertakes a *de novo* review, taking the facts in a light most favorable to the non-moving party. *Weaver v. Champion Petfoods USA Inc.*, 3 F.4th 927, 934 (7th Cir. 2001). The burden is on the movant to prove that summary judgment is warranted because there are no genuine issues of material fact relevant to the issues addressed by the summary judgment motion. *Weaver,* at 934. On summary judgment, the court must construe the facts *in favor of the nonmovant* and may **not** make credibility determinations, *decide which inferences* to draw or weigh the evidence. *Anderson v. Liberty Lobby, Inc.,* 477 U.S. 242, 255 (1986); *Kluge v. Brownsburg Community School Corp.,* No. 21-2475 (7th Cir. 2023); *Payne v. Pauly,* 337 F.3d. 767,770 (7th Cir. 2003). Where the material facts specifically averred by one party contradict facts averred by a party moving for summary judgment, the motion must be denied. *Lujan v. Nat'l Wildlife Fed'n,* 479 U.S. 871, 888 (1990).

B. **The District Court Improperly Dismissed the Affidavit**.

In this Circuit, a nonmovant's own affidavit can constitute affirmative evidence by itself to defeat a summary judgment motion. *Payne v. Pauly*, 337 F. 3d 767, 770 (7th Cir. 2003) (citing five 7th Circuit opinions); *Wohl v. Spectrum Mfg.*, 94 F.3d 353, 358 (7th Cir. 1996). As the court explained in *Payne*, cases holding the contrary involved affidavits of witnesses with no firsthand personal knowledge, were

14

speculative or had other defects making them inadmissible as evidence. Where the material facts specifically averred by one party contradict facts averred by the moving party, a summary judgment motion must be denied. *Lujan v. Nat'l Wildlife Fed'n*, 479 U.S. 871, 888 (1990).

The Affidavit is based entirely on Simonson's firsthand knowledge, sets forth specific facts, contains no hearsay or speculation or other defects making it inadmissible as evidence, and standing alone is internally consistent. Defendants have not contended otherwise. An affidavit will defeat a motion for summary judgment provided it is based on firsthand knowledge and sets forth specific facts, so long as it is not inherently implausible. *Payne, supra*. That is, unless standing alone such affidavit is contradictory in a material manner or based on virtually impossible assumptions of fact, it is sufficient to defeat a motion for summary judgment. The District Court did not articulate any reason not to consider the Affidavit. It merely ignored it.

Had the District Court properly considered the Affidavit, summary judgment would have been impossible. A review of the Order does not indicate that the District Court even recognized its existence. On the first basis for summary judgment in the Order, had the District Court properly considered paragraphs 7, 8, 9, 10, 11, 12, 14, 15, 20, and 21 of the Affidavit [A41-43] it could not have concluded that there was not a genuine issue of material fact as to whether (i) it was "unlikely COJ would ever see payment of the amount outstanding and any additional fees it earned;" [cite] or (ii) "[Simonson] had steadfastly refused to authorize payment."

[cite] The Affidavit shows a consistent effort by Simonson, despite her many tasks between June 5, 2015 and the end of August 2015, to resolve the fee dispute, including making progress payments evidencing her goodwill and intentions, her need under the probate court order to scrutinize the invoices, her efforts over a six month period to negotiate the fees, and the existence of sufficient trust assets to pay all fees. In paragraph 11, uncontradicted by any direct evidence in the record, Simonson clearly states that she never indicated that she would refuse to pay all appropriate legal fees of Defendants. Defendants never asserted that they faced any risk of ultimately being paid, as the District Court concluded.

On the second basis for summary judgment, the District Court simply ignored the Affidavit and Plaintiff's Responses and Additions to Statement of Proposed Findings of Fact [A.24 through 39] or used adverse inferences (and mistakes of fact) to dismiss Simonson's proffered evidence and conclude it was somehow completely implausible that Simonson was not aware of the withdrawal. The Affidavit, in paragraphs 20 through 26, 31 through 36, provides clear statements as to underlying facts and Simonson's actual state of mind (not the District Court's speculation as to her state of mind) supporting Simonson's claims that (i) she was unaware of the purported withdrawal or the decision by the probate court to permit withdrawal, (ii) that she objected to Defendants' withdrawal[4], (iii) she received no communication from Defendants of any purported termination of the Contract (also

---

[4] As noted below, the District Court's finding that Simonson did not object to Defendants' withdrawal motion is unsupported by the record and contrary to the proposed factual findings. Even Defendants agree that Simonson timely filed her objections with the probate court, although the probate court issued its decision before receiving them.

supported by Defendants' admissions [A43-44 ¶¶24-27; D37#1 ¶¶24-26]), (iv) Simonson was not alerted to the possibility that the probate court had decided the motion, given the often long periods of time it took to consider and issue orders, or (v) was aware of the probate court's scheduling of the November 9 hearing. Instead, the District Court cited ambiguous facts, such as that Simonson made administrative filings on her own and corresponded with opposing counsel (who wrote her directly, copying Krueger) and a quote from one letter in which Simonson perhaps unartfully said that if a hearing here to be held on November 9, "she" would need to seek a rescheduling (without considering whether Simonson really meant she would have her lawyers do it) to draw an adverse inference, in the face of Simonson's direct sworn statements in the Affidavit.

### C. The District Court Misapplied the Standard for Summary Judgment by Making Adverse Inferences, Reliance on Evidence (in One Case Demonstrably False) not in the Record and Ignoring Evidence in the Record When it Held that Defendants Did Not Breach the Contract.

In deciding a motion for summary judgment, the court must view the evidence and draw reasonable inferences in the light most favorable to the nonmoving party. *Parker v. Four Seasons Hotels, Ltd.,* 845 F.3d 807, 812 (7th Cir. 2017). Summary judgment is only proper if there is no genuine dispute as to any material fact and that the movant is entitled to judgment as a matter of law. Fed.R.Civ.P. 56(a).

Simonson alleges that Defendants breached the Contract in two ways: (i) by failing to timely file the Estate papers, and (ii) by failing to properly terminate the Contract, failing to appear at (or notify Simonson of) the November 9, 2015 probate court hearing. As noted earlier in this brief, there is ample evidence in the record to

support these propositions. The District Court ignored that evidence and instead focused on collateral factors and incomplete snippets from emails and Simonson's deposition, making adverse inferences against Simonson, and in one case, citing as fact something not in the record that is demonstrably false and not alleged by Defendants. Not once did the District Court address Plaintiff's Responses and Additions to Statement of Proposed Findings of Fact [A24 through 39, D36] or any of the evidence proffered by Simonson, including the Affidavit.

On the first allegation of breach of contract, the District Court relied heavily on a single email from Olejniczak to Simonson on July 21, 2015 in which Olejniczak unilaterally declared the representation over. What the District Court did not cite was Simonson's response denying this [A43,44 or the Affidavit [A43 ¶¶20,21], and Defendants continuing thereafter to provide services to Simonson and communicate with her after this point (e.g., A30 ¶70 where Defendants essentially admit that they did not stop working on Simonson's behalf until August 26, 2015). Olejniczak's email of August 24, 2015, in which he finally unambiguously refused to make the Estate filings and said he was going to make a motion to withdraw clearly evidences that Defendants knew they were still bound by the Contract and couldn't be released from it until the probate court permitted it, contrary to the District Court's conclusion.

Even a casual reading of the series of emails in the record between Plaintiff and Defendants shows that Plaintiff rejected any attempt by Defendants to repudiate their obligations under the legal services contract. [A27-30, ¶¶ 39, 40, 41,

18

43, 62; A43 ¶21]  Each time Defendants attempted to unilaterally declare the contract ended, Plaintiff objected.  [A27-30 ¶¶ 39, 40, 41, 43, 62; A43 ¶21]  From July 21, 2015 until August 24, 2015, Defendants continued to represent Plaintiff as counsel of record, respond to her emails and otherwise perform services for Plaintiff. At no point did Plaintiff agree that the representation had ended.  [A43 ¶20]

The District Court took an adverse inference from Simonson taking more responsibility for administration of the Trust to mean that she no longer needed Defendants' services of all kinds, interpreting an agreement by Defendants to be available if Simonson needed assistance as a statement that the Contract was terminated.  All of this was in the face of contrary evidence and proposed findings of fact provided by Simonson and not considered by the District Court.  As noted above, the District Court relied solely on the Proposed Findings of Fact of All Defendants [D25] without even considering Plaintiff's Proposed Findings of Fact [D36].  Finally, the District Court concluded finding that the Contract did not include an obligation of Defendants to file the Estate documents, ignoring evidence in the record and the fact that Defendants do not dispute the issue.

As for the second breach, the District Court based much of its analysis on its conclusion that the withdrawal motion was granted "without objection."  Nothing in the record supports this.  It is untrue as noted in the Statement of the Case. Defendants do not contest this.  The probate court granted Defendants' motion before the five-day objection period had expired, and the probate court had not seen or considered Simonson's legal and factual objections.  As such, it was an improper

19

inference for the District Court to conclude that Simonson must have known the result or that any conclusion as to the materiality of any breach could rest upon the probate court's decision under such circumstances.[5]  There is a host of evidence indicating Simonson did not know that the Defendants had been permitted to withdraw. Notably, Defendants did not provide any notice to Simonson subsequent to the decision of the probate court, which was the first time they could have terminated their obligations under the Contract.  Instead, the District court made this adverse inference from cherry-picked facts, such as Simonson filing the Estate documents on her own and answering letters to her (and copied to Krueger) from opposing counsel that primarily related to her administrative duties, all of which are easily explainable without concluding that Simonson was aware of some hypothetical termination of the Contract.

The District Court relied on Simonson's attempts to limit further legal fees by limiting Defendants' involvement in certain routine management matters [A43 ¶¶18, 19, 21] as conclusive proof that the representation had been terminated. Among those routine matters was dealing with opposing counsel's correspondence relating to purely factual administrative matters for which no legal expertise or capacity was required.  No adverse inference should be taken from Simonson petitioning of the Probate Court for an extension of time to close the estate and file additional estate documents.  The probate court directly notified Simonson, in her

---

[5] Just because the probate court permitted withdrawal does not indicate it considered whether under the Contract, Simonson's failure to pay invoices in full and on time relieved Defendants from performing under the contract.  The legal standards are not the same and the probate court's decision was based on incomplete information.

capacity as personal representative, of the missed deadline to close the estate [60], and given Defendants' repeated denials of any responsibility, and the fact that the probate court contacted her directly, she believed a direct response to the probate court was not only expected but prudent to minimize any potential damages from Defendants' breach of the Contract. The quoted language from the deposition cited by the District Court [A15] related only to administrative matters, not court appearances [A27 ¶¶39, 148; A43 ¶¶18, 19] and was intended to control costs going forward. [A43 ¶21] It does not reflect or imply that Simonson had agreed to termination of Defendants as her counsel. There can be no inference supporting the proposition that Plaintiff understood that the representation had concluded by these actions, and at very least, it is a question for the jury.[6]

There was a contractual obligation for Defendants to file the papers necessary to close the Estate promptly. That obligation arose in July 2014 [A1-2 ¶¶3, 4, 5]. Defendants breached that obligation. They further breached it when they attempted to repudiate their obligations. Repudiating an obligation by one party under a contract does not relieve the repudiating party from the contract. Defendants' repudiation of the contract is legally irrelevant to the summary judgment motion. To the extent that the Court is holding that Simonson agreed to terminate the contract, that is inconsistent with the evidence and at most shows a genuine issue of material fact for the jury to decide.

---

[6] Had Plaintiff failed to take these actions, undoubtedly Defendants would argue that she failed to mitigate damages from their breach. Thus, the District Court's interpretation of events sets up an impossible "Catch-22." A reasonable jury could conclude that the factors cited by the District Court are either ambiguous or irrelevant if they result in this illogical result.

There is no direct evidence in the record before the Court that Simonson was ever informed of the probate court's order. The only direct evidence before the Court is that Simonson was never informed and believed Defendants remained her counsel. [140, 141, 149] Simonson's actions in her capacity as personal representative and trustee following that time do not support an unambiguous inference sufficient to deem the Affidavit implausible.

It is uncontroverted that Defendants never communicated to Simonson that they had withdrawn despite there being communications between Simonson and Defendants after the probate court permitted withdrawal. Defendants continued to be notified by the probate court as to court hearings. Opposing counsel continued to copy Defendants on correspondence with Simonson. It was completely reasonable for Simonson to assume she continued to be represented by Defendants, particularly as to probate court hearings and other purely litigation matters. Regardless, as explained in D., below, Simonson's subjective belief is not relevant to a claim of breach of contract. Just because Simonson was aware of a potential breach by Defendants does not absolve Defendants of the breach nor does it, under these circumstances, suggest Simonson acquiesced to Defendants' breach (an argument not articulated by Defendants or the District Court).

D. **The District Court Did Not Analyze the Written Terms of the Contract**.

The District Court did not analyze the terms in the Contract relating to termination. The Contract provides that Defendants could terminate the Contract only after "reasonable notice" to Simonson "allowing, of course, time for employment

22

of other counsel." [A21] Prior to being permitted to withdraw by the probate court, Defendants could not have terminated their obligations under the Contract. As a matter of law and the Contract, such a termination required reasonable notice be given. *California Wine Ass'n v. Wisconsin Liquor of Oshkosh,* 20 Wis.2d 110, 125-25 (Wis. 1963). No notice—or even any relevant communication—was provided by Defendants following such time. Speculation about Simonson's state of mind is irrelevant under Wisconsin law.[7] As a legal matter, the Contract was still in effect, and Defendants breached it by failing to represent Plaintiff at the November 9, 2015 Probate Court hearing. Whether Simonson knew, or should have known, that Defendants were going to breach the legal services agreement has no bearing on the question of whether there was a breach.

Further, the District Court held in effect that because Simonson must have known about Defendants' withdrawal (a point on which there is a genuine issue of material fact), she assumed the responsibility of representing herself, thereby relieving Defendants from any further obligations. Again, all of this is legally irrelevant to whether Defendants breached the Contract.[8]

Finally, there is nothing in the record to support the proposition that Simonson assumed any responsibility with respect to appearing in court hearings.

---

[7] Wisconsin standard jury instructions in cases of breach of contract summarize the law succinctly: "A party to a contract breaches it when performance of a duty under the contract is due and the party fails to perform. Failing to perform a duty under the contract includes defectively performing it as well as not performing it at all." The knowledge of the non-breaching party is irrelevant. *Steele v. Pacesetter Motor Cars, Inc.,* 267 Wis. 2d 873. (2003).

[8] It could be relevant to a question of mitigation of damages, but that issue was not addressed by the District Court and is not before this Court in Plaintiff-Appellant's appeal.

Any sharing of responsibilities between Simonson and Defendant related solely to administrative matters. In fact, without leave of the probate court, plaintiff as trustee and personal representative could, and was expected to, make various factual and administrative filings on behalf of the estate and trust. However, because Simonson was not a licensed Wisconsin lawyer, she could *not* appear on her own behalf as a representative of the trust and estate in a litigation matter without probate court approval.

### E. The District Court Failed to Properly Apply Wisconsin Law and Improperly Used Negative Inferences When It Held That Simonson's Failure to Pay Defendant's Invoices in Full and On time Excused Defendants' Performance Under the Contract.

Under Wisconsin law, while the language of a contract may permit termination of a contract by one party for any breach by the other party, this still is subject to the requirement that the breach be "material" regardless of the contract's language. *Ranes v. American Fam. Mut. Ins. Co.,* 219 Wis.2d 49,57 (1998). Further, longstanding Wisconsin law provides that determination of a material breach is a question for the jury. *Myrold v. Northern Wis. Co-op. Tobacco Pool,* 206 Wis. 244, 249, 2239 N.W. 422 (1931)("Whether or not there is a material breach is, except in clear cases, a question for the jury.").

The District Court erred in granting summary judgment that Defendants were relieved or all responsibilities under the Contract due to a purported breach by Simonson for failure to pay Defendants' invoices in full and on time. The District Court's reasoning on this question is unclear. In the Order, the District Court relied upon an analysis of Wisconsin law regarding the definition of a "material breach"

24

sufficient to relieve a non-breaching party of its contractual obligations after such breach.[A11-12]  Simonson challenged this analysis in the 59(e) Motion, pointing out that the analysis was incomplete and based upon adverse inferences in the face of Simonson's direct evidence.  In the Reconsideration Order, the District Court did not address Simonson's arguments, but rather changed its analysis to hold, without legal citation, that because Simonson did not pay every invoice in full and on time, as a matter of law, Defendants were excused from further performance under the Contract. [A17-18]

The analysis in the Reconsideration Order is contrary to Wisconsin law, as is clear from the original Order and the cases cited therein.  If this is the District Court's holding, it must be reversed.  For purposes of this appeal, we also will address the analysis in the Order, assuming it was the District Court's actual holding.

In the Order, the District Court erred in three principal ways in granting summary judgment that Defendants were relieved of all responsibilities under the Contract due to a purported breach by Simonson for failure to pay Defendants' invoices in full and on time.

First, as a matter of Wisconsin substantive law of contracts, only under extraordinary circumstances is the question of material breach not a question for the jury.  *Myrold, supra.*  While this does not completely foreclose summary judgment, it does foreclose a trial judge from making factual determinations of disputed matters material to the legal analysis.  This appears to be a higher

standard than contained in FRCP 56. In a case in which there is no dispute as to a material fact, the jury still must evaluate the facts itself to determine, in its judgment, whether the requirements of Wisconsin law for discharge are met. It is not an analysis for the presiding judge.

Second, that Wisconsin law of contracts generally follows the Restatement of Contracts in determining whether a breach is sufficiently material to excuse future performance by the non-breaching party and, as set forth in the Order, considers five factors:

> (a) the extent to which the injured party will be deprived of the benefit which he reasonably expected;
> (b) the extent to which the injured party can be adequately compensated for the part of the benefit of which he will be deprived;
> (c) the extent to which the party failing to perform . . . will suffer forfeiture;
> (d) the likelihood that the party failing to perform . . . will cure his failure, taking account of all the circumstances including reasonable assurances;
> (e) the extent to which the behavior of the party failing to perform . . . comports with standards of good faith and fair dealing.

Restatement (Second) of Contracts § 241 (1981).

The District Court's second mistake was in failing to consider all of the factors and misapplying the factors to the case at hand. The District Court focused on the first factor, "the *extent* to which the injured party will be deprived of the benefit which he reasonably expected" (emphasis added), holding that the sole benefit to Defendants was to be paid for their services, and that Defendants were *entirely* deprived of that benefit. [A13] This holding suffers from two defects: First, it does not address the "extent" question. It is undisputed that Defendants received payment for a majority of the total amount of their invoices. Thus, the Defendants

26

received a majority of the maximum benefit they could have expected to receive, yet the Court based its holding on the proposition that the failure to make *certain* timely payments deprived Defendants of the "only benefit" they reasonably expected from the contract.[A13]

Wisconsin courts have consistently held that the "extent" is a critical factor to weigh. *See King and King d/b/a Kings Lodging and Tree Service v. Niederkorn,* Wis. Ct. App. Dist. III, App. No. 2021AP281, ¶28 and footnote 10 (2022). In *King, supra,* footnote 10, the court rejected the argument that merely depriving a party of a reasonably expected benefit, in that case, a less than full payment, is sufficient by itself to constitute a material breach relieving the contractual counterparty of all obligations to perform.

Second, the Restatement and Wisconsin courts consider other factors that were not fully considered by the District Court. For example, factor (b) which focuses on whether the injured party can be adequately compensated. Under Wisconsin law, this includes an assessment of the ability of the purportedly injured party to receive a damage award if the issue is litigated. *King, supra,* at ¶ 30. *See also, Management Comp. Serv. v. Hawkins,* 206 Wis. 2d 158, 186 (Wis. 1996). It is undisputed that the Trust had more than adequate resources to pay any unpaid balance due to Defendants. Whether or not Simonson may have refused to pay Defendants, a proposition that Simonson vigorously contests, Defendants had the option to (i) sue Simonson and/or the Trust for payment; or (ii) petition the Probate Court for an order for immediate payment under the terms of the June 5 Order.

Defendants do not deny that they had the ability to seek redress, and indeed attempted to do so, although in the wrong forum [A32-33 ¶132-135; D36 (same paragraphs)]. Ultimately, Defendants were, in fact, paid in full with interest by the successor trustee. Given these facts, it is not possible for the District Court to conclude that "it is unlikely COJ would ever see payment."

As for factor (c), whether Simonson would suffer a risk of forfeiture, the District Court's reasoning was based, at least in part, on an adverse inference that Simonson could have avoided any forfeiture by hiring new counsel. [A13] The record shows that Simonson had no knowledge of the probate court's order permitting Defendants' withdrawal as counsel of record. At very least, it is a contested fact. As such, it would not have been logical for Simonson to have engaged other counsel to avoid forfeiture. The Affidavit, together with the undisputed fact that Defendants never informed Simonson of the probate court's ruling, are sufficient to defeat a motion for summary judgment. *Payne v. Pauly,* 337 F.3d. 767,770 (7th Cir. 2003). Not only did Simonson face a material risk of forfeiture, she experienced such forfeiture.

With respect to factor (d), the Order concluded that it was unlikely that COJ ultimately would get paid. Even Defendants have not made that claim or provided any evidence of this in the Proposed Findings of Fact by All Defendants [D25]. Instead, Defendants argued that failure to pay the invoices "in full and on time" constituted a material breach of the legal services agreement. Their argument was based on timing and paying the entire balance, and not a penny less. Under no

28

reading of Wisconsin law can this be the basis for a claim of material breach under the circumstances of this case, particularly where interest was charged and paid for any delays in payment.

As for factor (e), it was not considered by the District Court. There is no evidence in the record to support any bad faith actions by Simonson, and Defendants do not allege it. Simonson demonstrated the opposite by making progress payments.

The third and final error is that the Order bases its holding on negative inferences from ambiguous facts without addressing the implications of all of the facts and contentions before the Court in the Plaintiff's Responses and Additions to Statement of Proposed Findings of Fact and in the Affidavit. As noted above, it appears that the District Court simply ignored these items in the record before it. The following illustrate how this error is outcome determinative in this appeal and illustrates that there are genuine issues of material fact. Among others, note the following upon which the Court based its opinion:

(i)     Simonson "simply refused to pay her bill." The Court assumed this to be the case because over a 14 month period, a roughly six month period elapsed where Simonson did not pay invoices in full and on time, but rather made partial payments and refused to accept offers in compromise by Defendants. These facts do unambiguously support the proposition. First, Simonson in the aggregate paid a majority of all amounts requested. Simonson never indicated that she refused to make further payments. Defendants have

29

provided no evidence that they did not expect ultimately to get paid, and have not even argued the point.    Rather there was a dispute as to how much was properly owed.  Notwithstanding the fee disagreement, Simonson made partial payments.  Simonson tried to talk through the issues with Olejniczak in July and August. [A41¶¶7, 8, 9]  Simonson's refusal to immediately accept take it or leave it, no explanation offers from Defendants does not unambiguously support any particular inference.  There is nothing in the record to indicate whether the offers by Defendants to compromise the bills were reasonable or sufficiently explained to support Simonson's analysis as a fiduciary.  No adverse conclusion may be drawn from what may have been unreasonable offers, or from Simonson's refusal to just immediately accept an offer under threats to withdraw.  None of this unambiguously supports a conclusion that Simonson simply refused to pay, and such a conclusion is directly contrary to the Affidavit, indicating a genuine issue of material fact.

(ii)    The August 2015 motion to withdraw "was granted, without objection." Simonson objected to this motion.  This "fact" appears to have been material to the Court's analysis and it is manifestly untrue. The Probate Court granted the motion two days after the motion was filed and prior to receiving Simonson's objections.

(iii)    Because the probate court made its decision prior to reading Simonson's objections, and did not address the issue of whether Simonson had *materially* breached the Contract, it is not possible to infer that the probate court

30

believed the failure to make complete and timely payments was a material breach of the Contract sufficient to relieve Defendants of their contractual obligations thereafter. Respectfully, it is impossible to infer anything from the probate court's brief order, and it is certainly not, as the Order states, "conclusive evidence" of anything. Perhaps the probate court believed the motion was unopposed? Perhaps the Probate Court believed that withdrawal may be permitted for failure to fulfill an obligation to the lawyer that was something less than a material breach? The legal standards are not the same. The probate court's order permitting withdrawal does nothing to undercut Simonson's credibility, or the facts set forth in the Affidavit. At most, it sets up a genuine issue of material fact.

## CONCLUSION

The District Court made numerous errors warranting reversal. It did not consider the Affidavit or any of Simonson's proposed findings of fact (or even explain why it did not do so). It relied heavily on adverse inferences from the proffered facts and ignored all contrary evidence in the record, including anything in Plaintiff's Responses and Additions to Statement of Proposed Findings of Fact [A.24 D36] or the Affidavit. It never analyzed the Contract to determine whether the provisions for termination were satisfied. Finally, the District Court improperly applied Wisconsin law of material breach by providing an incomplete analysis and ignoring

contrary facts in the record. For these reasons, as more fully argued in this brief, Plaintiff-Appellant asks this Court to reverse the Order and the Reconsideration Order.

Dated at New York, New York, first day of May, 2025.

THE LAW OFFICE OF ERIC SIMONSON
Attorney for Plaintiff-Appellant Barbara Simonson

/s/ *Eric Simonson*
Eric Simonson
eric.simonson.br@gmail.com
210 E. 73rd Street, #9B
New York, NY 10021
917-579-8733

## CERTIFICATE OF COMPLIANCE WITH FRAP RULE 32(a)(7) AND CR 32(c)

This document, Plaintiff-Appellant's Brief, complies with the word limit of FRAP Rule 32(a)(7)(B) and CR 32(c). It contains 8,506 words of text, as computed by Microsoft Word, including footnotes, but excluding the portions of the Brief that are excluded by FRAP Rule 32(f). This Brief is prepared using Microsoft Word with Century Schoolbook 12 point type.

/s/<u>Eric Simonson</u>
Attorney for Plaintiff-Appellant
Barbara Simonson
May 1, 2025

No. 25-1417

## UNITED STATES COURT OF APPEALS
## FOR THE SEVENTH CIRCUIT

---

BARBARA SIMONSON,

      Plaintiff-Appellant

      v.

THOMAS OLEJNICZAK,
STEVEN J. KRUEGER,
CONWAY, OLEJNICZAK & JERRY, S.C.

      Defendants-Appellees.

---

Appeal from the United States District Court
For the Eastern District of Wisconsin
The Honorable Judge William C. Griesbach

---

### SHORT APPENDIX OF
### PLAINTIFF-APPELLANT BARBARA SIMONSON

Plaintiff-Appellant, by her attorney, Eric Simonson, certifies that the

following Short Appendix of Plaintiff-Appellant Barbara Simonson includes all

materials required by Circuit Rule 30(a) and (b).

May 1, 2025
                        /s/ Eric Simonson
                        THE LAW OFFICE OF ERIC SIMONSON
                        Attorney for Plaintiff-Appellant Barbara Simonson

TABLE OF CONTENTS
TO
SHORT APPENDIX

**Document**                                                      **Page**

1. Judgment in a Civil Case, 23-C-526
   [Docket 41]                                                      1

2. Order Granting Defendant's Motion
   For Summary Judgment      23-C-526
   [Docket 40]                                                      2

3. Order Denying Plaintiff's Motion
   For Reconsideration        23-C-526
   [Docket 49]                                                     17

4. Legal Services Agreement dated
   June 18, 2014
   [Docket 27 #2]                                                  19

5. Plaintiff's Responses and Additions
   To Statement of Proposed Findings
   Of Fact
   [Docket 36]                                                     24

6. Affidavit of Barbara Simonson
   [Docket 37 #1]                                                  40

AO 450 (Rev. 5/85) Judgment in a Civil Case

# United States District Court
### EASTERN DISTRICT OF WISCONSIN

BARBARA SIMONSON,

        Plaintiff,

                      **JUDGMENT IN A CIVIL CASE**
    v.                         Case No. 23-C-526

THOMAS M. OLEJNICZAK,
STEVEN J. KRUEGER, and,
CONWAY, OLEJNICZAK & JERRY, S.C.,

        Defendant.

☐    **Jury Verdict.** This action came before the Court for a trial by jury. The issues have been tried and the jury has rendered its verdict

☒    **Decision by Court.** This action came before the Court for consideration.

    **IT IS HEREBY ORDERED AND ADJUDGED** that the plaintiff takes nothing, and this case is DISMISSED.

                    Approved:  s/ William C. Griesbach
                                  WILLIAM C. GRIESBACH
                                  United States District Judge

    Dated:  August 20, 2024

                                  GINA M. COLLETTI
                                  Clerk of Court

                                  s/ Joleen M. Krings
                                  (By) Deputy Clerk

UNITED STATES DISTRICT COURT
EASTERN DISTRICT OF WISCONSIN

---

BARBARA SIMONSON,

        Plaintiff,

      v.                                 Case No. 23-C-526

THOMAS M. OLEJNICZAK,
STEVEN J. KRUEGER, and,
CONWAY, OLEJNICZAK & JERRY, S.C.,

        Defendants.

---

## ORDER GRANTING DEFENDANTS' MOTION FOR SUMMARY JUDGMENT

---

Plaintiff Barbara Simonson filed this breach of contract action against Defendants Thomas M. Olejniczak, Steven J. Krueger, and Conway, Olejniczak & Jerry, S.C. (COJ), whom she retained to assist her with a probate matter in Wisconsin. Ms. Simonson alleges that Defendants breached their legal services agreement by failing to appear on her behalf at a November 9, 2015 hearing and failing to file certain documents to close the Estate. The court has jurisdiction under 28 U.S.C. § 1332. Before the court is Defendants' motion for summary judgment. Based upon the facts and for the following reasons, Defendants' motion will be granted, and the case will be dismissed.

## BACKGROUND

Ms. Simonson's father, John Hohler, died on May 29, 2013. Defs.' Proposed Findings of Fact (DPFOF) ¶ 1, Dkt. No. 25. Prior to his death, Mr. Hohler and his wife (who predeceased him) created the "John J. and Jane Hohler Trust." *Id.* ¶ 2. Ms. Simonson was designated as the trustee and as the personal representative of her late father's Estate. *Id.* ¶¶ 3–4. The terms of the

Trust and Estate provided that 10% of all assets would be distributed to a Grandchildren Sub-Trust and the remainder would be distributed equally to Children Sub-Trusts. *Id.* ¶ 5. Mr. Hohler was survived by two children (Ms. Simonson and her sister, Mary Vaira) and one grandchild (Joseph Simonson), which meant the beneficiaries of the Trust were the Joseph Simonson Sub-Trust (10%), the Barbara Simonson Sub-Trust (45%); and the Mary Vaira Sub-Trust (45%). *Id.* ¶ 6.

Ms. Simonson hired Attorney Jennifer D'Amato to open the Estate, which she did on July 16, 2013 in Winnebago County Case No. 13-PR-206. *Id.* ¶ 7. Attorney D'Amato was replaced by Attorney Roy Fine on January 15, 2014. *Id.* ¶ 8. On June 16, 2014, Ms. Vaira filed a petition in probate court to remove Ms. Simonson as trustee and personal representative. *Id.* ¶ 10. At that point, Ms. Simonson retained the law firm of Conway, Olejniczak & Jerry, S.C. to replace Attorney Fine. *Id.* ¶ 11. Ms. Simonson signed a written Legal Services Agreement with COJ on June 18, 2014, stating that COJ would "represent you in the dispute in the Estate and Trust of John J. Hohler with Mary M. Vaira." *Id.* ¶¶ 12–13; Dkt. No. 27-2 at 1. As part of their agreement, Ms. Simonson agreed to "pay [COJ's] monthly statements on time" and that "[a]ccounts not paid within thirty (30) days will be charged interest at the rate of five percent (5%) per annum on the unpaid balance." DPFOF ¶ 14; Dkt. No. 27-2 at 2. The agreement also indicated that COJ reserved "the right to withdraw from representation of [Ms. Simonson] at any time after reasonable notice to [her], allowing of course, time for employment of other counsel." DPFOF ¶ 15; Dkt. No. 27-2 at 3. The agreement provided that "[u]nder the rules of professional conduct by which we are governed, we may be required to withdraw from our representation of [Ms. Simonson] in the event of, for example: nonpayment of our fees and expenses." Dkt. No. 27-2 at 3.

Attorneys Olejniczak and Krueger from COJ worked on Ms. Simonson's matter. DPFOF ¶ 16. According to Ms. Simonson, when she learned that Attorney Fine had not closed the Estate,

she told Attorney Olejniczak that closing the Estate was one of the first things that required attention and Attorney Krueger told her that he filed the necessary papers to close it in the summer of 2014. *Id.* ¶¶ 18–20. On October 14, 2014, the probate court issued an Order that allowed Ms. Simonson to remain the trustee and personal representative. *Id.* ¶ 22. Over the next eight months, defendants assisted Ms. Simonson with administering the Trust. *Id.* ¶ 23. On June 5, 2015, the probate court issued an Order setting final deadlines to distribute Trust assets. *Id.* ¶ 31. In that Order, the probate court definitively denied Ms. Vaira's petition to remove her sister as trustee and personal representative. *Id.* ¶ 34. Attorney Krueger emailed the June 5, 2015 Order to Ms. Simonson on June 11, 2015. *Id.* ¶ 36. Ms. Simonson testified that she was "very pleased at that point" with the "great success as of the June 5th Order." *Id.* ¶ 35; Simonson Dep. 170:23–171:8, Dkt. No. 26-3.

On July 20, 2015, Ms. Simonson sent an email to Attorney Krueger stating that "[t]he Trust cannot pay to have everything reviewed by you and I am left to administer and execute the Order and the Trust." DPFOF ¶ 39; Dkt. No. 27-22 at 2. The next day, Attorney Krueger asked for "clarification of what you expect our role to be from this point forward" and offered to "'take a back seat' and assist only when and where requested." DPFOF ¶ 40; Dkt. No. 27-6 at 3. In response, Ms. Simonson said, "Yes, that makes sense . . . . My primary goal in retaining you was to get the properties distributed and that is a priority for the Trust." DPFOF ¶ 41; Dkt. No. 27-6 at 3. Attorney Olejniczak wrote in reply, "The properties have been transferred and therefore we believe our representation is concluded." DPFOF ¶ 42, Dkt. No. 27-6 at 2.

In an email dated July 27, 2015, Ms. Simonson wrote to Attorney Krueger, "My understanding is that you were to be available on an 'as needed basis' and I was not informed that you were speaking to Wyon. I would like to know what was discussed." DPFOF ¶ 43; Dkt. No.

3

27-7 at 1. According to the Probate Case Summary, Wyon F. Wiegratz was the attorney for Mary Vaira. Dkt. No. 26-1 at 2. Attorney Krueger explained, "Per Tom's July 21 email, our representation is concluded. If there are additional issues in which you'd like our assistance, please let me know. Wyon contacted me to advise that both he and your sister were receiving communications directly from you and . . . I advised him that he was free to communicate with you directly as we were no longer involved in the day-to-day dealings related to the implementation of the Order." DPFOF ¶ 44; Dkt. No. 27-7 at 1.

As of June 30, 2015, plaintiff owed $91,047.51 in unpaid legal fees to COJ. DPFOF ¶ 38. In his July 21, 2015 email, Attorney Krueger told Ms. Simonson that "we'd appreciate payment of our outstanding legal fees as soon as possible." *Id.* ¶ 46; Dkt. No. 27-6 at 3. Ms. Simonson made two partial payments on July 30, 2015, totaling $12,000. DPFOF ¶ 48. After applying these payments, the amount owed as of July 31, 2015, was $80,216.63. *Id.* ¶ 49. Ms. Simonson made no additional payments. *Id.* ¶ 50. She told Attorney Olejniczak that she would "provide [him] with a very detailed review" of the disputed charges, pursuant to his request. DPFOF ¶ 51; Dkt. No. 27-6 at 1. Ms. Simonson never provided Attorney Olejniczak with her review, claiming to be "extremely busy" and "under a lot of pressure," and because "it was a very stressful time . . . it was not a priority at that point." DPFOF ¶ 52; Simonson Dep. 112:21–113:12, 132:2–133:14. In an effort to get paid, Attorney Olejniczak made several offers to compromise COJ's bills, discounting up to $22,500, which Ms. Simonson never accepted. DPFOF ¶¶ 53–57.

On August 14, 2015, the probate court issued a Notice to Close Estate, stating that the August 3, 2015, deadline to close the Estate had passed, notifying that the Estate was delinquent, and advising that the court may grant an extension of time to close the Estate upon submission of a proper request. *Id.* ¶¶ 58–59; Dkt. No. 26-6. On August 24, 2015, Ms. Simonson sent an email

to Attorney Olejniczak stating, "It has come to my attention that . . . the estate is now delinquent. Please address this issue immediately . . . I do not understand why this issue is outstanding." DPFOF ¶ 60; Dkt. No. 27-10 at 3. Attorney Olejniczak responded, "We never opened the Estate, that was done by one of your prior firms . . . . As stated previously, you dismissed us as Counsel some time ago and we are requesting the Court to allow that to happen, since you have refused to pay our bill, which I agreed to substantially compromise. You will have to deal with the estate closing." DPFOF ¶ 61; Dkt. No. 27-10 at 2. Ms. Simonson replied, "I never dismissed you as counsel . . . I do not consent to your withdrawl [sic] and the last email from Steve clarified that you would be available to handle issues as needed." DPFOF ¶ 62; Dkt. No. 27-10 at 1. Attorney Olejniczak responded that they would do nothing until they were paid. DPFOF ¶ 63.

Later that day, Attorney Krueger filed a Motion to Withdraw with the probate court, which was also emailed to Ms. Simonson, requesting that the motion be granted if the court heard no objection within five days. *Id.* ¶¶ 64–65; Dkt. No. 27-11. The probate court granted the Motion on August 26, 2015, discharging COJ "from the representation of Trustee Barbara Simonson for the reasons set forth in its Motion to Withdraw" and confirming that COJ "will have no further obligations concerning the case." DPFOF ¶¶ 66–67; Dkt. No. 27-13. Ms. Simonson did not move to vacate the August 26, 2015 Order, nor did she appeal it. DPFOF ¶¶ 67–68. After that, Defendants performed no work on the probate case and Ms. Simonson administered the Trust and Estate on her own. *Id.* ¶¶ 70–72. On August 31, 2015, Ms. Simonson filed a Petition for Extension of Time to close the Estate, which she prepared herself, in which she represented to the court that she would promptly file the necessary paperwork to close the Estate. *Id.* ¶¶ 73–75. The court granted her request, giving her until October 30, 2015, to close the Estate. *Id.* ¶ 76.

5

Ms. Simonson filed a Personal Representative's Statement to Close Estate. *Id.* ¶ 77. In a letter dated September 18, 2015, the probate court identified the additional documents that it needed from Ms. Simonson before the Estate could be closed and gave her notice that a hearing would be set if the court did not receive an update by October 5, 2015. *Id.* ¶ 78; Dkt. No. 26-10. Ms. Simonson admits that she received this letter but took no action to close the Estate between September 18, 2015 and October 5, 2015, believing that the requested documents had been previously filed and "relying on the fact that at an appropriate time, I could show the Probate Court that I had complied." DPFOF ¶¶ 79–80; Simonson Aff. ¶ 30, Dkt. No. 37-1. Ms. Simonson did not petition the probate court for another extension or hire a new attorney to assist her with the closing of the Estate. DPFOF ¶¶ 82–83.

On October 5, 2015, Ms. Vaira filed a motion to hold Ms. Simonson in contempt for failing to close the Estate. *Id.* ¶ 84. The motion was mailed to Ms. Simonson on October 5, 2015, along with a Notice of Hearing set for November 9, 2015. *Id.* ¶ 85. On October 12, 2015, Ms. Vaira's attorneys mailed a file-stamped copy of the Notice of Hearing to Ms. Simonson. *Id.* ¶ 86; Dkt. No. 27-15. Ms. Simonson claims that "I had no independent knowledge that it had been filed with the Probate Court and believed it was merely a proposed hearing. I have no record of receiving the October 12, 2015 copy of such materials prior to November 9, 2015." Simonson Aff. ¶ 31. Ms. Simonson wrote a letter to Ms. Vaira's attorneys, stating, "The Personal Representative is in the process of closing the probate estate." DPFOF ¶ 81; Dkt. No. 26-11 at 4. Moreover, she represented, "I do not anticipate being available for your proposed hearing date of November 9, 2015. As a result, unless this Motion is withdrawn, the Trustee and Personal Representative will need to petition the Court to delay this hearing." DPFOF ¶¶ 87–88; Dkt. No. 26-11 at 1. Although the motion was not withdrawn, Ms. Simonson did not file a petition to move the hearing date.

6

DPFOF ¶ 89. Nor did she ask Defendants to appear on her behalf, petition the probate court on her behalf to delay it, or otherwise communicate with them about it. *Id.* ¶¶ 90–92.

Ms. Simonson did not appear at the November 9, 2015 hearing. *Id.* ¶ 96. Ms. Simonson claims she thought that November 9, 2015, was merely a proposed date for the hearing. *Id.* ¶ 97. However, she never contacted the court to confirm whether a hearing had been set for that or any other date. *Id.* ¶ 98. She states in her affidavit that because she continued to believe that Defendants remained her legal counsel, she assumed that Defendants would appear on her behalf or inform her of the fact that the hearing was scheduled for a certain date. Aff. Of Barbara Simonson, ¶ 35, Dkt. No. 37-1. After Ms. Simonson's failure to appear for the hearing, the probate court removed her as trustee and personal representative in an Order dated November 24, 2015. DPFOF ¶ 99. In doing so, the probate court found that Ms. Simonson was given proper notice of the November 9, 2015 hearing and that the "Court's Order of June 5, 2015 included certain deadlines for [Ms. Simonson] to meet [that] were not met." *Id.* ¶ 100; Dkt. No. 26-15 at 1. Ms. Simonson appealed the November 24, 2015 Order, arguing that she was not given proper notice of the November 9, 2015 hearing. DPFOF ¶¶ 101–02. The Wisconsin Court of Appeals denied Ms. Simonson's appeal on September 28, 2016, affirming the probate court's finding that Ms. Simonson was given proper notice. *Id.* ¶¶ 103–04.

On remand, the probate court issued an Order on June 21, 2017, approving a new plan of distribution and imposing surcharges on Ms. Simonson as a sanction, which were deducted from the assets distributed to the Barbara Simonson Sub-Trust. *Id* ¶¶ 105–06. Ms. Simonson appealed, arguing that the probate court erred in imposing surcharges against her and approving a plan of distribution in violation of the express terms of the Trust. ¶ 112. The appeal was denied and the Probate Court's order was affirmed on April 4, 2018. *Id.* ¶ 113. Ms. Simonson moved the court

of appeals for reconsideration, which was denied on May 7, 2018. *Id.* ¶ 114. Ms. Simonson filed

a petition for review with the Wisconsin Supreme Court, which was denied on September 7, 2018.

*Id.* ¶ 115. Ms. Simonson filed suit against Defendants in the U.S. District Court for the District of

Connecticut, which was dismissed for lack of personal jurisdiction. *Id.* ¶¶ 116–17. Ms. Simonson

appealed the decision to the U.S. Court of Appeals for the Second Circuit, which affirmed the

dismissal on April 14, 2023. *Id.* ¶ 118. Ms. Simonson filed the present action eleven days later.

*Id.* ¶ 119.

## LEGAL STANDARD

Summary judgment is proper where there is no genuine dispute as to any material fact and

the movant is entitled to judgment as a matter of law. Fed. R. Civ. P. 56(a). A dispute is genuine

if a reasonable trier of fact could find in favor of the nonmoving party. *Wollenburg v. Comtech

Mfg. Co.*, 201 F.3d 973, 975 (7th Cir. 2000). A fact is material only if it might affect the outcome

of the case under governing law. *Anweiler v. Am. Elec. Power Serv. Corp.*, 3 F.3d 986, 990 (7th

Cir. 1993). In deciding a motion for summary judgment, the court must view the evidence and

draw reasonable inferences in the light most favorable to the nonmoving party. *Johnson v. Advoc.

Health & Hosps. Corp.*, 892 F.3d 887, 893 (7th Cir. 2018) (citing *Parker v. Four Seasons Hotels,

Ltd.*, 845 F.3d 807, 812 (7th Cir. 2017)). The party opposing the motion for summary judgment

must "submit evidentiary materials that set forth specific facts showing that there is a genuine issue

for trial." *Siegel v. Shell Oil Co.*, 612 F.3d 932, 937 (7th Cir. 2010) (citations omitted). "The

nonmoving party must do more than simply show that there is some metaphysical doubt as to the

material facts." *Id.* Summary judgment is properly entered against a party "who fails to make a

showing to establish the existence of an element essential to the party's case, and on which that

8

party will bear the burden of proof at trial." *Austin v. Walgreen Co.*, 885 F.3d 1085, 1087–88 (7th Cir. 2018) (citing *Celotex Corp. v. Catrett*, 477 U.S. 317, 322 (1986)).

## ANALYSIS

### I.    Standing

Defendants argue that Ms. Simonson is not a party to the Legal Services Agreement, and thus lacks standing to bring a breach of contract claim, because she retained Defendants as trustee and representative of the Estate, not in her personal capacity.  They argue that, because she took this position in the fee arbitration that COJ commenced with the State Bar of Wisconsin, she is now estopped from taking a contrary position under the estoppel by record doctrine.  *See* DPFOF ¶¶ 132–33.  "The doctrine requires a showing that: (1) a party against whom estoppel is sought presents a later position that is clearly inconsistent with the earlier position; (2) the facts at issue are the same in both cases; and (3) the party to be estopped convinced the first court to adopt its position."  *State v. Miller*, 2004 WI App 117, ¶ 31, 274 Wis. 2d 471, 492, 683 N.W.2d 485, 496 (internal quotation marks and citation omitted).

The doctrine does not apply here, however, because the State Bar of Wisconsin dismissed Defendants' request for arbitration because Ms. Simonson did not consent to participating in the arbitration process.  Dkt. No. 27-17 at 1.  Accordingly, Ms. Simonson never convinced a court or arbitrator to adopt her position.  *See Miller*, 2004 WI App 117, ¶ 33 (holding that judicial estoppel did not apply because a judge did not adopt a party's allegedly implicit position by granting that party's motion to dismiss without prejudice).  It thus follows that Ms. Simonson is not barred from asserting her claims under the estoppel by record doctrine.  And because the express language of the Legal Services Agreement she signed demonstrate that she retained COJ in her personal capacity, she clearly has the necessary standing to bring this lawsuit.

9

## II. Breach of Contract

Alternatively, Defendants contend that Ms. Simonson's failure to pay her legal fees in a timely fashion constituted material breach of the Legal Services Agreement and, as a result, Defendants were excused from any future performance under their agreement. "It is well established that a material breach by one party may excuse subsequent performance by the other." *Mgmt. Computs. Servs., Inc. v. Hawkins, Ash, Baptie & Co.*, 206 Wis. 2d 158, 183, 557 N.W.2d 67 (1996). But not any breach will excuse future performance by the other party. "If the breach is relatively minor and not 'of the essence', the plaintiff is himself still bound by the contract; he can not abandon performance and get damages for a 'total' breach by the defendant." *Id.* (quoting Corbin, Arthur Linton, CORBIN ON CONTRACTS § 700, at 310 (1960)). For a material breach to occur, "'there must be so serious a breach of the contract by the other party as to destroy the essential objects of the contract.'" *Id.* (quoting *Appleton State Bank v. Lee*, 33 Wis.2d 690, 692, 148 N.W.2d 1 (1967)). "The issue of whether a party's breach excuses future performance of the contract by the non-breaching party presents a question of fact." *Id.* at 184. But like any issue of fact, summary judgment is nevertheless appropriate when no reasonable jury could find in favor of the opposing party based on the evidence in the record. Fed. R. Civ. P. 56(a).

Wisconsin follows the Restatement of Contracts in deciding whether a breach is material such that all future performance by the non-breaching party is excused. *Mgmt. Computs. Servs.*, 206 Wis. 2d at 184. The Restatement offers a list of circumstances that should be considered in determining whether a breach is material. They include:

> (a) the extent to which the injured party will be deprived of the benefit which he reasonably expected;
>
> (b) the extent to which the injured party can be adequately compensated for the part of that benefit of which he will be deprived;

10

(c) the extent to which the party failing to perform or to offer to perform will suffer forfeiture;

(d) the likelihood that the party failing to perform or to offer to perform will cure his failure, taking account of all the circumstances including any reasonable assurances;

(e) the extent to which the behavior of the party failing to perform or to offer to perform comports with standards of good faith and fair dealing.

Restatement (Second) of Contracts § 241 (1981).

Upon consideration of those circumstances in the context of the facts of this case, it clearly follows that Ms. Simonson's breach of her Legal Services Agreement with COJ was material. Under the terms of the Agreement, Ms. Simonson was required to "pay our monthly statements on time." Dkt. No. 27-2 at 2. The Agreement further provided that "[a]ll of our statements are payable within thirty (30) days of receipt. After paying the first six statements in full, Ms. Simonson stopped paying the full amount. As of April, 30, 2015, the total outstanding balance was $91,462. In May and July, she made partial payments of $15,000 and $12,000, leaving a balance of $80,216, but made no further payments over the following four months. COJ made repeated requests that she pay her bill throughout this time and even offered substantial discounts, but Ms. Simonson never accepted the offers and simply refused to pay her bill.

After repeated warnings, COJ finally filed a motion to withdraw from its representation in the matter, citing Ms. Simonson's failure to pay for services as its reason. In support of its motion, COJ cited Wisconsin Supreme Court Rule (SCR) 20:1.16(b)(1), (5), (6) of the Rules of Professional Conduct for Attorneys, which provides, inter alia, that a lawyer may withdraw from representing a client if:

(1) withdrawal can be accomplished without material adverse effect on the interests of the client;

* * * *

11

(5) the client fails substantially to fulfill an obligation to the lawyer regarding the lawyer's services and has been given reasonable warning that the lawyer will withdraw unless the obligation is fulfilled;

(6) the representation will result in an unreasonable financial burden on the lawyer or has been rendered unreasonably difficult by the client;

Dkt. No. 26-7 at 3. The motion was granted, without objection, on August 26, 2015, in a written order stating: "the Law Firm of Conway, Olejniczak & Jerry, S.C. is discharged from the representation of Trustee Barbara Simonson for the reasons set forth in its Motion to Withdraw" and confirming that "the Law Firm of Conway, Olejniczak & Jerry, S.C. will have no further obligations concerning the case." Dkt. No. 27-13.

By not paying her lawyers, Ms. Simonson deprived them of the benefit, indeed, the only benefit, they reasonably expected. To expect COJ to continue its representation of Ms. Simonson would only add to the fees she was refusing to pay. Given her failure to even discuss COJ's offer of a reduction, it is unlikely COJ would ever see payment of the amount outstanding and any additional fees it earned. Ms. Simonson argues that ultimately payment was guaranteed, since COJ's fees were to be paid out of the trust and its assets were more than sufficient to cover COJ's fees. But payment from the Trust assets required approval of the Trustee, Ms. Simonson, and she had steadfastly refused to authorize payment. The Probate Court's decision granting COJ's motion is strong support for, if not conclusive evidence of, the fact that Ms. Simonson's breach was material. And of course, she could have avoided any forfeiture by retaining yet her fourth lawyer to represent her or just responding to the Probate Court's directions.

Given these circumstances, no reasonable jury could find that Ms. Simonson's breach of the Legal Services Agreement with COJ was not material and thereby excused any further performance by the defendants. Defendants' motion for summary judgment can be granted for this reason alone.

12

### III. Defendants' Breach

Defendants also argue that, under the terms of the original Legal Services Agreement, they did not have an obligation to file any paperwork to close the Estate, or to appear at the November 9, 2015 hearing, because nowhere in writing did they agree to undertake such obligations. Indeed, once the firm's motion to withdraw was granted, defendants were relieved of any further obligations in the case.

"Whether a party to a contract has breached a contractual provision is a question of law." *Elliott v. Donahue*, 169 Wis. 2d 310, 316, 485 N.W.2d 403, 405 (1992). A plaintiff cannot prevail on a breach of contract claim without identifying the terms of a written contract that were breached or showing that an oral agreement was enforceable. *See Nelson v. Berg*, 2023 WI App 32, ¶ 29, 408 Wis. 2d 542, 993 N.W.2d 175 (unpublished). While it is undisputed that Defendants were retained to "represent [Ms. Simonson] in the dispute in the Estate and Trust of John J. Hohler with Mary M. Vaira," Ms. Simonson argues that the scope of the representation expanded when COJ took over responsibility for closing the Estate and assisted with administering the Trust. DPFOF ¶¶ 13, 20 & 23; Dkt. No. 27-8. Ms. Simonson contends that Defendants did not clearly repudiate their obligation to close the Estate until August 24, 2015, in an email exchange with Attorney Olejniczak. Simonson Decl. ¶ 22.

In an email dated July 21, 2015, however, Ms. Simonson stated that her "primary goal in retaining [COJ] was to get the properties distributed." DPFOF ¶ 41; Dkt. No. 27-6 at 3. Accordingly, Attorney Olejniczak wrote in reply, "The properties have been transferred and therefore we believe our representation is concluded." DPFOF ¶ 42, Dkt. No. 27-6 at 2. By declaring that the representation was concluded, Attorney Olejniczak unambiguously repudiated any further obligations COJ may have held pursuant to the Legal Services Agreement, or any other

13

oral agreement of an expanded scope representation. Although Ms. Simonson attempts to raise a genuine dispute of material fact, nothing in the record shows that, at the time, Ms. Simonson did not understand this statement to mean that COJ no longer represented her. *See* Fed. R. Civ. P. 56(c)(1)(B). If anything, Ms. Simonson's July 27, 2015 email suggests that she indeed understood that, as she took issue with the fact that Defendants were in communication with Ms. Vaira's attorney. DPFOF ¶ 43. She even admitted at her deposition that "if [she] needed something from [COJ], [she] needed to let [COJ] know." DPFOF ¶ 45; Simonson Dep. 137:1-15. This strongly suggests that she understood the representation to have concluded.

Further, it is also undisputed that the motion to withdraw, which asked the probate court to grant the motion if within five days Ms. Simonson did not object, was emailed to Ms. Simonson the same day it was filed. DPFOF ¶ 65; Dkt. No. 27-11. Ms. Simonson's claim that she did not realize COJ's motion to withdraw had been granted is belied by the record. Once the probate court discharged Defendants, she petitioned for an extension of time to close the Estate and filed a Personal Representative's Statement to Close Estate with the probate court on her own. *Id.* ¶¶ 73–75, 77 & 90–92. She even stated in her October 9, 2015 letter addressed to Ms. Vaira's attorney that she was in the process of closing the Estate and that she would petition the probate court to adjourn the November 9, 2015 hearing if Ms. Vaira's motion was not withdrawn. *Id.* ¶¶ 81, 87–88.

In sum, Ms. Simonson knew that Defendants had withdrawn from their representation of her and, regardless of whether she agreed with it, she assumed the responsibility of representing herself. Under these facts, the court concludes that Defendants did not breach any obligation to assist in the closing of the Estate, or to appear at the November 9, 2015 hearing. No alleged

14

modification of the Agreement was made that changed these facts. Summary judgment can also be granted on this basis.

Given these conclusions, it is unnecessary to address all of the additional arguments Defendants offer in support of the motion for summary judgment. It is enough, or should be, to conclude from the undisputed facts that Plaintiff materially breached the Agreement and, in any event, Plaintiff has failed to show evidence from which a jury could conclude that Defendants failed to fulfill their obligations under the Agreement.

## CONCLUSION

For these reasons, Defendants' motion for summary judgment (Dkt. No. 23) is **GRANTED** and the case is **DISMISSED**. The Clerk is directed to enter judgment forthwith.

**SO ORDERED** at Green Bay, Wisconsin this <u>20th</u> day of August, 2024.

s/ William C. Griesbach
William C. Griesbach
United States District Judge

15

UNITED STATES DISTRICT COURT
EASTERN DISTRICT OF WISCONSIN

---

BARBARA SIMONSON,

        Plaintiff,

        v.                          Case No. 23-C-526

THOMAS M. OLEJNICZAK,
STEVEN J. KRUEGER, and
CONWAY, OLEJNICZAK & JERRY, S.C.,

        Defendants.

---

## ORDER DENYING PLAINTIFF'S MOTION FOR RECONSIDERATION

---

Plaintiff Barbara Simonson filed this breach of contract action against Defendants Thomas M. Olejniczak, Steven J. Krueger, and Conway, Olejniczak & Jerry, S.C. (COJ), whom she retained to assist her with a probate matter in Wisconsin. Ms. Simonson alleged that Defendants breached their legal services agreement by failing to appear on her behalf at a November 9, 2015 hearing and failing to file certain documents to close the Estate. On August 20, 2024, the court granted Defendants' motion for summary judgment and dismissed the case. The Clerk entered judgment the same day. This matter comes before the court on Ms. Simonson's motion for reconsideration of the court's August 20, 2024 order. For the following reasons, Ms. Simonson's motion will be denied.

Ms. Simonson's motion for reconsideration comes under Federal Rule of Civil Procedure 59(e), which permits a party to move "to alter or amend a judgment . . . no later than 28 days after the entry of the judgment." Motions for reconsideration serve a limited function and "may be granted only if there has been a manifest error of fact or law, or if there is newly discovered

evidence that was not previously available." *Robinson v. Waterman*, 1 F.4th 480, 483 (7th Cir. 2021) (citing *Cincinnati Life Ins. Co. v. Beyrer*, 722 F.3d 939, 954 (7th Cir. 2013)). "Reconsideration is not an appropriate forum for rehashing previously rejected arguments or arguing matters that could have been heard during the pendency of the previous motion." *Caisse Nationale de Credit Agricole v. CBI Indus., Inc.*, 90 F.3d 1264, 1270 (7th Cir. 1996).

Ms. Simonson presents no new evidence, instead arguing the court committed a manifest error. "A 'manifest error' is not demonstrated by the disappointment of the losing party. It is the 'wholesale disregard, misapplication, or failure to recognize controlling precedent.'" *Oto v. Metro. Life Ins. Co.*, 224 F.3d 601, 606 (7th Cir. 2000) (quoting another source). After careful review of its order and Ms. Simonson's motion, the court concludes that there is no basis to alter the August 20, 2024 order. Simply put, based on the undisputed material facts, no reasonable jury could find that Ms. Simonson did not materially breach the parties' legal services agreement. She failed to make timely payments in accordance with the agreement thus depriving Defendants of the only benefit they reasonably expected and excusing them of any future performance. And having withdrawn from the case for non-payment of fees, Defendants had no further obligation to perform legal services for Ms. Simonson. The court need not go so far as to reiterate the entirety of its order. Accordingly, Ms. Simonson's motion for reconsideration (Dkt. No. 45) is **DENIED**.

**SO ORDERED** at Green Bay, Wisconsin this 11th day of February, 2025.

William C. Griesbach
United States District Judge

Gregory B. Conway
Thomas M. Olejniczak
Frederick L. Schmidt
R. George Burnett
Gregory A. Grobe
Tori L. Kluess
Robert M. Charles
Brick N. Murphy
Jodi L. Arndt
David H. Weber
Ross W. Townsend
Michele M. McKinnon
T. Wickham Schmidt
Kurt A. Goehre
James M. Ledvina
Steven J. Krueger
Jill J. Ray
Joshua M. Koch

Retired:
J. Michael Jerry

*Law Firm of*
CONWAY, OLEJNICZAK & JERRY, S.C.

Since 1976

Telephone: (920) 437-0476

Facsimile: (920) 437-2868

TMO@lcojlaw.com

www.lcojlaw.com

June 18, 2014

simonsonbarbara@gmail.com

Barbara A. Simonson
362 Hollow Tree Ridge Road
Darien, CT 06820

**Re:** **In the Matter of the Estate and Trust of John J. Hohler**
**Winnebago County Case No. 13-PR-206**

Dear Barbara:

Thank you for choosing our firm to represent you in the dispute in the Estate and Trust of John J. Hohler with Mary M. Vaira. When we take on a new client, or an already-established client on a new matter, our firm and the Code of Professional Responsibility require us to have a written fee agreement. The purpose of this letter is to set forth the basis upon which our representation will be undertaken.

**Fees and Expenses**

I will be the attorney mainly involved in this matter. My current hourly billing rate is $350.00. Attorney James M. Ledvina and Attorney Steve J. Krueger of our office will also provide legal services on this matter. Their current hourly billing rate is $275.00. These rates, as well as hourly rates for other personnel who may provide services to you, may change over time, as we generally adjust our rates in January of each year. Whenever possible, we utilize associates and paralegals (who bill at a lower hourly rate) to assist in completing tasks.

Our out-of-pocket expenses and charges incurred on your behalf (such as travel, court fees, and express mailing fees) will be billed separately. When large amounts of copies are needed, they will be billed at 10¢ per copy. In the event it is necessary to mail large quantities of documents, the actual U.S. Postal Service rates will also be charged.

*Law Firm of*
## CONWAY, OLEJNICZAK & JERRY, S.C.

June 18, 2014
Page 2

If we are unsuccessful in the litigation of this matter, you may be required to pay the opposing party's costs. Such costs may include filing fees, witness fees, and fees for depositions and documents used at trial.

### Advance on Fees and Expenses

Although our standard practice is to require advance retainer payments on all hourly matters, we are waiving that requirement for this matter.

### Monthly Statement

We will provide you with monthly statements indicating the date on which the work was done and a general description of the work performed. Monthly statements will also show the charges against any advance. We can expand the monthly statements to include further detail upon your request.

All of our statements are payable within thirty (30) days of receipt. Where significant third-party payments are required (*i.e.*, co-counsel fees, expert fees, etc.), we will normally forward the charge to you for your direct payment. Accounts not paid within thirty (30) days will be charged interest at the rate of five percent (5%) per annum on the unpaid balance.

### Disputes

All disputes that may arise relating to firm fees or expenses that cannot be resolved by agreement will be submitted for binding arbitration under the rules of the Wisconsin Bar Association Committee on the Resolution of Fee Disputes. We will cooperate with you in order to have arbitration conducted by telephone conference in lieu of personal appearance, should you so desire.

### Client Responsibilities

You agree to (a) be truthful and cooperative with us; (b) keep us informed of developments; (c) abide by this Agreement; (d) pay our monthly statements on time; (e) promptly provide us with the information and documents that you have relating to matters we are handling; (f) be available to confer with us on matters related to our representation; and (g) assist and cooperate with us as appropriate in dealing with the matter.

20

*Law Firm of*
# CONWAY, OLEJNICZAK & JERRY, S.C.

June 18, 2014
Page 3

## Outcome

Nothing in this Agreement and nothing in our statements to you is to be construed as a promise or guarantee about the outcome of any matters, and we make no promises or guarantees as to any particular result. Any opinions or belief we express to you about the outcome of a legal matter are only our best professional estimates; they are necessarily limited by our knowledge of the facts and law at the time expressed.

## Termination of Relationship

You have the right to terminate our representation at any time by notifying us of your intention to do so in writing. Our firm also reserves the right to withdraw from representation of you at any time after reasonable notice to you, allowing, of course, time for employment of other counsel. Under the rules of professional conduct by which we are governed, we may be required to withdraw from our representation of you in the event of, for example: nonpayment of our fees and expenses; misrepresentation or failure to disclose material facts concerning the engagement; action taken by you contrary to our advice; and in situations involving a conflict of interest with another client as described below.

In the event that either party should elect to terminate our relationship, our fees and expenses incurred up to that point still will be due to us. Upon payment to us of any balance due, we will return to you, or to whomever you direct, any property or papers of yours in our possession. We may retain our internal notes and memoranda, our work product and any duplicate materials, including copies of materials you provided us.

## File Retention

Once this matter is closed, we do not store complete copies of the file, nor do we retain any written materials. We have routine document destruction dates for our electronically stored information. As a result, it is the client's sole responsibility to store any and all documents and information relating to this matter.

## Conflicts of Interest

Legal conflicts of interest have become an increasingly difficult problem for law firms and their clients. The Law Firm of Conway, Olejniczak & Jerry, S.C. is a large law firm which represents a diverse group of clients. It is our ethical obligation to advise you in the event we become involved in an engagement that is directly adverse to your interests. We have conducted an

*Law Firm of*
# CONWAY, OLEJNICZAK & JERRY, S.C.

June 18, 2014
Page 4

internal review and have not identified any apparent conflict of interest. However, conflicts of interest are at times extremely difficult to identify and can sometimes arise as a result of client activities or other developments of which we may be unaware. We will make every effort to identify and resolve these conflict situations and will establish appropriate mechanisms to safeguard your interest. In an appropriate situation, we may provide you with full information regarding a potential conflict of interest and ask you to waive the potential conflict.

## Mandatory Disclosure

The Wisconsin Supreme Court has directed that law firms which operate as a service corporation entity, as Law Firm of Conway, Olejniczak & Jerry, S.C. does, should advise clients and prospective clients that the law governing this type of entity shields its owners from vicarious liability. This means that in the event of an error, the law firm and its insurer may be liable, as may the attorneys who worked on or directly supervised the matter, but no other attorneys who did not work on or directly supervise the matter. The Supreme Court also requires law firms operating as a service corporation entity to register annually with the State Bar of Wisconsin and carry certain minimum liability insurance coverage, which Law Firm of Conway, Olejniczak & Jerry, S.C. does.

## Consent and Authorization

We have found that attorney-client relationships benefit from a clear understanding of the arrangements between the attorney and the client. We trust you will find these terms and conditions satisfactory. **Please confirm the arrangements set forth in this letter by signing a copy of this Agreement and returning it to us via return e-mail.**

By your agreement to these terms of our representation, you authorize us to take any and all action we deem advisable on your behalf on this matter. We will, whenever possible, discuss with you in advance any significant actions we intend to take. We will contact you prior to incurring any significant expense (i.e., expense in excess of $1,000) in this matter unless circumstances make this impracticable, in which case we will notify you of the expense at the earliest reasonable time. We will not settle this case without your expressed consent.

*Law Firm of*
## CONWAY, OLEJNICZAK & JERRY, S.C.

June 18, 2014
Page 5

We appreciate the opportunity to represent you and look forward to working with you on this matter. I hope you will feel free to contact me any time you have a question.

Very truly yours,

**LAW FIRM OF CONWAY, OLEJNICZAK & JERRY, S.C.**

By: _Thomas M. Olejniczak_

TMO:rjb
Enclosures (copy of letter & return envelope)

### Acceptance of Terms

The foregoing is understood and agreed to this _18th_ day of June, 2014.

_Barbara A. Simonson_

031415.132:1838179

IN THE UNITED STATES DISTRICT COURT
FOR THE EASTERN DISTRICT OF WISCONSIN

| | | |
|---|---|---|
| BARBARA SIMONSON, | ) | |
| | ) | |
| Plaintiff, | ) | |
| | ) | |
| v. | ) | Case No.: 23-cv-526 |
| THOMAS OLEJNICZAK, | ) | |
| | ) | |
| STEVEN J. KRUEGER, and | ) | |
| | ) | |
| CONWAY, OLEJNICZAK & JERRY, S.C., | ) | |
| Defendants. | | |

**PLAINTIFF'S RESPONSES AND ADDITIONS TO STATEMENT OF PROPOSED FINDINGS OF FACT**

The following are Plaintiff's responses to Defendants' Statement of Proposed Findings of Fact in Support of its Motion for Summary Judgment (the "Motion"). Also included are Plaintiff's additional Proposed Additional Findings of Fact, as contemplated by local Civil L. R. 56(b)(2)(B). Plaintiff believes that many, if not most, of the Proposed Findings of Fact proffered by Defendants are not necessarily relevant to adjudicating the Motion. A failure by Plaintiff to object or counter a particular finding proposed by Defendants shall not be deemed to be an admission of such facts for any purpose other than with respect to adjudicating the Motion.

| | PLAINTIFF'S RESPONSES |
|---|---|
| 1.      Plaintiff Barbara Simonson's father, John Hohler, died on May 29, 2013. (Exh. 2 (hereinafter referred to as "B. Simonson 9-17-14 Depo. Tr.") at 5:19-21.) | |
| 2.      Prior to his death, Mr. Hohler and his wife—who predeceased him—created the "John J. and Jane Hohler Trust" ("the Trust"). (B. Simonson 9-17-14 Depo. Tr. at 5:24-25.) | |
| 3.      Ms. Simonson was designated the trustee of the Trust. (B. Simonson 9-17-14 Depo. Tr. at 5:22-6:7.) | |

| | |
|---|---|
| 4. Ms. Simonson was nominated as the personal representative of her late father's estate in his will ("the Estate"). (B. Simonson 9-17-14 Depo. Tr. at 5:22-6:7.) | |
| 5. The terms of the Trust and Estate provided that 10% of all assets would be distributed to a Grandchildren Sub-Trust and the remainder would be distributed equally to Children Sub-Trusts. (B. Simonson 9-17-14 Depo. Tr. at 7:3-8, 8:22-9:1.) | |
| 6. Mr. Hohler was survived by two children (Ms. Simonson and her sister, Mary Vaira) and one grandchild (Ms. Simonson's son, Joseph Simonson), which meant the beneficiaries of the Trust were the Joseph Simonson Sub-Trust (10%), the Barbara Simonson Sub-Trust (40%); and the Mary Vaira Sub-Trust (40%). (B. Simonson 9-17-14 Depo. Tr. at 7:3-8, 8:22-9:1.) | As per the terms of the John J. and Jane Hohler Trust, the proper percentages are 10%, 45% and 45% |
| 7. Ms. Simonson hired Attorney Jennifer D'Amato to open the Estate, which she did on July 16, 2013 in Winnebago County Case No. 13-PR-206 ("the probate case"). (Exh. 1 (hereinafter referred to as "CCAP").) | |
| 8. Attorney D'Amato was replaced by Attorney Roy Fine on January 15, 2014. (CCAP.) | |
| 9. Ms. Simonson testified that she hired Attorney Fine to close the estate. (Exh. 3 (hereinafter referred to as "B. Simonson 1-12-24 Depo. Tr.") at 50:18-51:3.) | |
| 10. On June 16, 2014, Ms. Simonson's sister, Mary Vaira, filed a Petition to remove Ms. Simonson as trustee of the Trust and personal representative of the Estate. (CCAP; Exh. 5 (hereinafter referred to as "Petition to Remove").) | |
| 11. Ms. Simonson hired the Law Firm of Conway, Olejniczak & Jerry, S.C. ("LCOJ") to replace Attorney Fine. (Exh. 6 (hereinafter referred to as "Legal Services Agreement").) | |
| 12. Ms. Simonson signed a written Legal Services Agreement with LCOJ on June 18, 2014. (Legal Services Agreement.) | |
| 13. The Legal Services Agreement states that LCOJ will "represent you in the dispute in the Estate and Trust of John J. Hohler with Mary M. Vaira." (Legal Services Agreement.) | |
| 14. As part of the Legal Services Agreement, Ms. Simonson agreed to "pay [LCOJ's] monthly statements on time." (Legal Services Agreement.) | |

| | |
|---|---|
| 15. The Legal Services Agreement states that LCOJ has "the right to withdraw from representation of you at any time after reasonable notice to you ... in the event of, for example: nonpayment of our fees." (Legal Services Agreement.) | The Legal Services Agreement imposes other obligations on LCOJ in the case of a withdrawal, including providing reasonable notice and assistance in transitioning to new counsel. (Legal Services Agreement Exh. 6) |
| 16. The attorneys at LCOJ who primarily worked on the probate case were Thomas Olejniczak and Steven J. Krueger. (Krueger Aff. ¶ 3.) | |
| 17. Attorney Olejniczak entered an appearance in the probate case on July 9, 2014. (*See* CCAP.) | |
| 18. On or about July 9, 2014, Ms. Simonson learned that Attorney Fine had not closed the estate. (B. Simonson 1-12-24 Depo. Tr. at 51:4-7.) | While Plaintiff doubted that Attorney Fine had made the required filings, Defendants subsequently confirmed that fact to Plaintiff (Exh. 39, Simonson Affidavit ¶4 ) |
| 19. Ms. Simonson testified that she told Attorney Olejniczak that closing the estate "was one of the first things that needed attention." (B. Simonson 1-12-24 Depo. Tr. at 51:51-24.) | Olejniczak and Krueger each agreed with Plaintiff (Exh. 39, Simonson Affidavit ¶5 ) |
| 20. According to Ms. Simonson, Attorney Krueger told her that he filed the necessary paperwork to close the estate sometime in the summer of 2014. (B. Simonson 1-12-24 Depo. Tr. at 52:14-53:5.) | |
| 21. On September 9, 2014, Attorney Krueger filed a response brief in opposition to Ms. Vaira's Petition to remove Ms. Simonson as trustee and personal representative. (*See* CCAP.) | |
| 22. In an Order dated October 14, 2014, the probate court allowed Ms. Simonson to remain as the trustee and personal representative. (*See* CCAP; Exh. 7 (hereinafter referred to as "October 14, 2014 Order").) | |
| 23. Over the next eight months, defendants assisted Ms. Simonson with administering the Trust. (*See* CCAP.) | |
| 24. After paying Statements 1 through 6, Ms. Simonson stopped paying LCOJ's statements in full and on time. (Exh. 12 (hereinafter referred to as "Statements").) | |
| 25. Ms. Simonson made no payments between January 9, 2015 and May 11, 2015. (*See* Statements at 28-44.) | |

| | |
|---|---|
| 26. In a letter dated April 6, 2015, Attorney Krueger told Ms. Simonson, "we need our legal fees paid to date," and asked her to pay the outstanding balance "without delay." (Exh. 31 at 3.) | |
| 27. In a follow-up email on April 6, 2015, Attorney Krueger told Ms. Simonson he would be "taking no further action until such time that our fees are paid in full." (Exh. 32.) | |
| 28. As of April 30, 2015, Ms. Simonson owed $91,462.22 according to LCOJ's statements. (Statements at 41.) | |
| 29. On May 11, 2015, Ms. Simonson made a partial payment of $15,000. (Statements at 44.) | |
| 30. Ms. Simonson made no additional payments in May or June. (Statements at 44-47.) | |
| 31. On June 5, 2015, the probate court issued an Order setting final deadlines to distribute the Trust assets. (Exh. 8 (hereinafter referred to as "June 5, 2015 Order").) | |
| 32. On or about June 5, 2015, the probate judge told the parties that the Estate still needed to be closed. (B. Simonson 1-12-24 Depo. Tr. at 55:20-56:17.) | |
| 33. According to Ms. Simonson, Attorney Krueger told her that he would "take care of it." (B. Simonson 1-12-24 Depo. Tr. at 56:23-57:7.) | |
| 34. As part of the June 5, 2015 Order, the probate court denied Ms. Vaira's Petition to remove her sister as trustee and personal representative. (June 5, 2015 Order at 6.) | |
| 35. Ms. Simonson testified that she was "very pleased at that point" with the "great success as of the June 5th Order." (B. Simonson 1-12-24 Depo. Tr. at 170:23-171:8.) | |
| 36. Attorney Krueger emailed the June 5, 2015 Order to Ms. Simonson on June 11, 2015. (Exh. 9.) | |
| 37. On June 12, 2015, Attorney Olejniczak told Ms. Simonson they needed "prompt payment" and were "not going to act as your bank any further." (Exh. 34.) | |
| 38. As of June 30, 2015, Ms. Simonson owed $91,047.51 according to LCOJ's statements. (Statements at 46.) | |
| 39. On July 20, 2015, Ms. Simonson told Attorney Krueger that the Trust "cannot pay to have everything reviewed by [them]," and that she | The context of this communication string was trust administration only, and not other parts of Defendants' representation |

-4-

| | |
|---|---|
| was "left to administer and execute the Order" herself. (Exh. 35 at 2.) | of Plaintiff. (Exh. 39, Simonson Affidavit ¶19; Exh. 41) |
| 40. On July 21, 2015, Attorney Krueger sent an email to Ms. Simonson asking for "clarification of what you expect our role to be from this point forward" and whether she wanted them to "take a back seat and assist only when and where requested." (Exh. 10.) | The context of this communication string was trust administration only, and not other parts of Defendants' representation of Plaintiff. (Exh. 39, Simonson Affidavit ¶18, 21) |
| 41. On July 21, 2015, Ms. Simonson responded to Attorney Krueger, "[T]hat makes sense ... My primary goal in retaining you was to get the properties distributed." (Exh. 10.) | The context of this communication string was trust administration only, and not other parts of Defendants' representation of Plaintiff. (Exh. 39, Simonson Affidavit ¶18) |
| 42. On July 21, 2015, Attorney Olejniczak wrote to Ms. Simonson, "The properties have been transferred and therefore we believe our representation is concluded." (Exh. 10.) | |
| 43. On July 27, 2015, Ms. Simonson wrote in an email to Attorney Krueger that it was her "understanding" that he and Attorney Olejniczak "were to be available on an 'as needed basis.'" (Exh. 11.) | The context of this communication string was trust administration only, and not other parts of Defendants' representation of Plaintiff. (Exh. 39, Simonson Affidavit ¶18) |
| 44. Attorney Krueger responded to Ms. Simonson on July 28, 2015, stating, "Per Tom's July 21 email, our representation is concluded. If there are additional issues in which you'd like our assistance, please let me know." (Exh. 11.) | |
| 45. Ms. Simonson admitted at her deposition that she knew if she needed something from Attorney Olejniczak or Attorney Krueger after July 21, 2015, she "needed to let [them] know." (B. Simonson 1-12-24 Depo. Tr. at 137:1-15.) | The context of this communication string was trust administration only, and not other parts of Defendants' representation of Plaintiff. (Exh. 39, Simonson Affidavit ¶ 18) |
| 46. In an email dated July 21, 2015, Attorney Krueger told Ms. Simonson, "[W]e'd appreciate payment of our outstanding legal fees as soon as possible." (Exh. 10.) | |
| 47. In an email dated July 21, 2015, Attorney Olejniczak told Ms. Simonson, "We have bent over backward for you in this matter and it's time you realize that your obstinacy in paying our bill will no longer be tolerated." (Exh. 10 at 1.) | |
| 48. Ms. Simonson made two partial payments on July 30, 2015 totaling $12,000. (Statements at 47.) | |
| 49. After applying the $12,000 payments, the total outstanding balance as of July 31, 2015 was | |

| | |
|---|---|
| $80,216.63 according to LCOJ's statements. (Statements at 47.) | |
| 50. Ms. Simonson made no payments in August, September, October, or November. (Statements at 47-51.) | |
| 51. Ms. Simonson told Attorney Olejniczak that she was not paying because she had concerns with some of LCOJ's charges, and that she would "provide [him] with a very detailed review" of the bills. (Exh. 10.) | Exh 10 makes clear that Plaintiff was responding to a previous request for detail made by Olejniczak. Defendants conveniently end their quote before "as you requested." |
| 52. Ms. Simonson testified that she never provided the "detailed review" because she was "very busy," she was "under tremendous pressure," and it was simply "not a priority" for her. (B. Simonson 1-12-24 Depo. Tr. at 112:21-113:12, 132:2-133:14.) | |
| 53. In an effort to get paid, Attorney Olejniczak offered to compromise LCOJ's bills. (Exh. 10 at 2; Exh. 36; Exh. 33.) | |
| 54. On July 21, 2015, Attorney Olejniczak offered a $6,000 discount. (Exh. 10 at 2.) | |
| 55. On August 5, 2015, Attorney Olejniczak offered a $15,000 discount. (Exh. 36.) | |
| 56. On October 14, 2015, Attorney Olejniczak offered a $22,500 discount. (Exh. 33.) | |
| 57. Ms. Simonson never accepted any of Attorney Olejniczak's offers. (*See, e.g.*, Exh. 10 at 2; B. Simonson 1-12-24 Depo. Tr. at 125:21-126:12.) | |
| 58. On August 14, 2015, the probate court issued a Notice to Close Estate. (Exh. 13 (hereinafter referred to as "Notice to Close Estate").) | |
| 59. According to the Notice, the deadline to close the Estate was August 3, 2015. (Notice to Close Estate.) | |
| 60. On August 24, 2015, Ms. Simonson sent an email to Attorney Olejniczak stating, "It has come to my attention that ... the estate is now delinquent. Please address this issue immediately ... I do not understand why this issue is outstanding." (Exh. 14 at 3.) | |
| 61. Attorney Olejniczak responded to Ms. Simonson on August 24, 2015, "We never opened the Estate, that was done by one of your prior firms. ... As stated previously, you dismissed us as Counsel some time ago and we are requesting the Court to allow that to happen, since you have refused to pay | Plaintiff concedes that this was what Olejniczak communicated, not the truth of the statement. |

-6-

| | |
|---|---|
| our bill, which I agreed to substantially compromise. You will have to deal with the estate closing." (Exh. 14 at 2.) | |
| 62.      Ms. Simonson responded to Attorney Olejniczak on August 24, 2015, "I never dismissed you as counsel ... I do not consent to your withdrawl [sic] and the last email from Steve clarified that you would be available to handle issues as needed." (Exh. 14 at 1.) | |
| 63.      Attorney Olejniczak responded to Ms. Simonson on August 24, 2015, "Simply put Barbara, we are doing nothing until we get paid!" (Exh. 14 at 1.) | |
| 64.      Attorney Olejniczak filed a Motion to Withdraw with the probate court on August 24, 2015 based on Ms. Simonson's "fail[ure] to make payments for services as agreed." (Exh. 15 at 2.) | The text of the cover letter to the Motion to Withdraw stated that the Motion be granted unless objected to in five days. (Exh 15 at 1) |
| 65.      The Motion to Withdraw was emailed to Ms. Simonson on August 24, 2015. (Exh. 16; B. Simonson 1-12-24 Depo. Tr. at 140:20-141:4.) | |
| 66.      The probate court granted the Motion to Withdraw on August 26, 2015. (Exh. 17 (hereinafter referred to as "August 26, 2015 Order").) | |
| 67.      The August 26, 2015 Order states that "the Law Firm of Conway, Olejniczak & Jerry, S.C. is discharged from the representation of Trustee Barbara Simonson for the reasons set forth in its Motion to Withdraw" and that "the Law Firm of Conway, Olejniczak & Jerry, S.C. will have no further obligations concerning the case." (August 26, 2015 Order.) | |
| 68.      Ms. Simonson did not move the probate court to vacate the August 26, 2015 Order. (*See* CCAP.) | |
| 69.      Ms. Simonson did not appeal the August 26, 2015 Order. (*See* CCAP.) | |
| 70.      Defendants performed no work on the probate case after August 26, 2015. (*See* Statements at 48-51.) | |
| 71.      LCOJ sent statements to Ms. Simonson at the end of August, September, and October showing no new work performed. (Statements at 48-50.) | |

| | |
|---|---|
| 72. After August 26, 2015, Ms. Simonson represented herself *pro se* in the probate matter. (*See* Exhs. 18, 20-21, 24.) | Plaintiff never represented herself. She merely did what she could as trustee and personal representative outside of court to administer the trust and estate. (Exh. 39, Simonson Affidavit ¶39) |
| 73. On August 31, 2015, Ms. Simonson filed a Petition for Extension of Time to close the Estate (PR form 1833). (Exh. 18.) | |
| 74. Ms. Simonson prepared and filed the Petition for Extension of Time herself. (*See* Exh. 18; B. Simonson 1-12-24 Depo. Tr. at 143:6-21.) | |
| 75. In the Petition for Extension of Time, Ms. Simonson told the probate court that she would "promptly" file the necessary paperwork to close the Estate. (Exh. 18; B. Simonson 1-12-24 Depo. Tr. at 145:11-15.)- | |
| 76. The probate court granted Ms. Simonson's request and gave her until October 30, 2015 to close the Estate. (Exh. 19.) | |
| 77. On September 18, 2015, Ms. Simonson filed a Personal Representative's Statement to Close Estate (PR form 1816). (Exh. 20; B. Simonson 1-12-24 Depo. Tr. at 146:11-20.) | |
| 78. In a letter dated September 18, 2015, the probate court requested additional documents from Ms. Simonson and set a new deadline of October 5, 2015 to close the Estate. (Exh. 20.) | |
| 79. Ms. Simonson admits she received the September 18, 2015 letter. (B. Simonson 115-24 Depo. Tr. at 151:20-22.) | |
| 80. Despite receiving the September 18, 2015 letter, Ms. Simonson took no action to close the Estate between September 18, 2015 and October 5, 2015. (*See* CCAP.) | Simonson believed that the documents requested by the probate court had been previously filed, some of which by Defendants, and that the probate court would discover that promptly. (Exh. 39, Simonson Affidavit ¶ 30) |
| 81. In a letter dated October 9, 2015 to her sister's attorney, Ms. Simonson said she was still "in the process of closing the probate estate." (Exh. 21 at 4.) | The probate court had not yet declared the estate closed, so the "process" had not ended. Simonson was merely voicing a truism. |
| 82. Ms. Simonson did not petition the probate court for another extension. (*See* CCAP.) | |
| 83. Ms. Simonson did not hire a new attorney to assist her with closing the Estate. (Exh. 4 at 8.) | |
| 84. On October 5, 2015, Ms. Simonson's sister, Mary Vaira, filed a motion to hold Ms. Simonson in | |

-8-

| | |
|---|---|
| contempt for failing to close the estate by the new deadline. (Exh. 22.) | |
| 85.      The contempt motion was mailed to Ms. Simonson on October 5, 2015 along with a Notice of Hearing set for November 9, 2015. (Exh. 22; B. Simonson 1-12-24 Depo. Tr. at 157:5158:24.) | |
| 86.      On October 12, 2015, Ms. Vaira's attorneys mailed a file-stamped copy of the Notice of Hearing to Ms. Simonson. (Exh. 23.) | Exh. 23 does not prove the document was, in fact, mailed to Plaintiff.  At most it shows that it was mailed to Krueger (the exhibit was produced by Defendants—see footer on bottom right hand of the pages). Plaintiff has no record or memory that it was mailed to her.  (Exh. 39, ¶ 31) |
| 87.      Ms. Simonson acknowledged the November 9, 2015 hearing date in a letter she wrote to her sister's attorneys. (Exh. 24 at 1.) | Exh 24 does not evidence Plaintiff acknowledged the probate court had set a date for a hearing.  Plaintiff characterizes November 9 as merely "proposed." Exh. 24 at 1. |
| 88.      Ms. Simonson wrote in the letter that she was not available on November 9, 2015 and, "unless this Motion is withdrawn," she would "need to petition the Court to delay this hearing." (Exh. 24 at 1.) | Exh 24 does not evidence Plaintiff acknowledged the probate court had set a date for a hearing.  Plaintiff characterizes November 9 as merely "proposed." Exh. 24 at 1. Plaintiff was unaware that the probate court had set a date.  (Exh.39, Simonson Affidavit ¶31, 32, 33) |
| 89.      The contempt motion was not withdrawn and Ms. Simonson did not file a petition to move the hearing date. (B. Simonson 1-12-24 Depo. Tr. at 166:19-21; Exh. 4 at 10.) | |
| 90.      Ms. Simonson did not communicate with Attorney Krueger or Attorney Olejniczak about the November 9, 2015 hearing. (B. Simonson 1-12-24 Depo. Tr. at 164:23-165:11, 166:2224, 167:21-168:9.) | Plaintiff and Olejniczak did communicate during this period on other matters (PFOF 93, 94, 95).  Olejniczak did not inform her of the hearing or that Defendants were not going to represent her at the hearing. (PFOF 144) |
| 91.      Ms. Simonson did not ask Attorney Krueger or Attorney Olejniczak to petition the probate court to delay the November 9, 2015 hearing. (B. Simonson 1-12-24 Depo. Tr. at 166:2224.) | |
| 92.      Ms. Simonson did not ask Attorney Krueger or Attorney Olejniczak to attend the November 9, 2015 hearing on her behalf. (B. Simonson 1-12-24 Depo. Tr. at 167:21-168:9.) | |
| 93.      On October 14, 2015, Attorney Olejniczak told Ms. Simonson that LCOJ was "in the process of filing the Fee Arbitration with the State Bar." (Exh. 33 at 1.) | |

32

| | |
|---|---|
| 94. On October 20, 2015, Ms. Simonson told Attorney Olejniczak to "reconsider [his] position." (Exh. 37.) | |
| 95. Attorney Olejniczak responded to Ms. Simonson on October 20, 2015, "I won't. I'll file the arbitration." (Exh. 37.) | |
| 96. Ms. Simonson failed to appear at the November 9, 2015 hearing. (B. Simonson 1- 12-24 Depo. Tr. at 210:14-15; Exh. 4 at 10.) | |
| | |
| 97. Ms. Simonson claims she thought the November 9, 2015 hearing date was merely a "proposed" hearing date. (B. Simonson 1-12-24 Depo. Tr. at 157:5-9.) | |
| 98. Ms. Simonson did not call the court to find out if the November 9, 2015 hearing date was a set date or a proposed date. (B. Simonson 1-12-24 Depo. Tr. at 164:19-165:11, 169:19170:2.) | Plaintiff relied on Defendants to inform her of litigation matters and represent her in such proceedings. (Exh. 39, Simonson Affidavit ¶ 34, 35 ) |
| 99. After Ms. Simonson failed to show up for the hearing, the probate court removed her as trustee and personal representative in an Order dated November 24, 2015. (Exh. 25; Exh. 4 at 10.) | |
| 100. The probate court ruled that Ms. Simonson "was given proper notice of [the November 9, 2015] hearing." (Exh. 25 ¶¶ 1, 7.) | |
| 101. Ms. Simonson appealed the November 24, 2015 Order to the Wisconsin Court of Appeals. (Exh. 26; Exh. 4 at 10.) | |
| 102. Ms. Simonson was represented by counsel on appeal and argued that she was not provided proper notice of the November 9, 2015 hearing in violation of her due process rights. (Exhs. 26, 28.) | |
| 103. In a Decision dated September 28, 2016, the Wisconsin Court of Appeals denied Ms. Simonson's appeal. (Exh. 26.) | |
| 104. The Wisconsin Court of Appeals ruled that Ms. Simonson was, in fact, provided proper notice of the November 9, 2015 hearing, and that her "due process rights were not violated." (Exh. 26 at ¶¶ 8-12.) | |
| 105. On June 21, 2017, the probate court entered an order approving a new plan of distribution. (*See* CCAP.) | |
| 106. As part of the June 21, 2017 Order, the court imposed surcharges on Ms. Simonson as a sanction, which were deducted from the assets distributed to | The June 21, 2017 order did other things as well, such as revaluation of assets and |

| | |
|---|---|
| the Barbara Simonson Sub-Trust. (B. Simonson 1-12-24 Depo. Tr. at 185:12-21, 194:1-8.) | reallocation of values. (Exh. 1, Exh. 39, Simonson Affidavit ¶41) |
| 107. According to Ms. Simonson, the probate judge sanctioned her because she failed to timely close the estate and because she failed to attend the November 9, 2015 hearing. (B. Simonson 1-12-24 Depo. Tr. at 185:12-21.) | |
| 108. According to Ms. Simonson, the probate judge later admitted he was wrong that Ms. Simonson had not timely filed all of the necessary paperwork to close the estate. (B. Simonson 1-12-24 Depo. Tr. at 146:11-20, 154:6-14, 186:24-187:19.) | |
| 109. Ms. Simonson believes she would have received a more favorable distribution had she not been removed as trustee and personal representative. (B. Simonson 1-12-24 Depo. Tr. at 199:12-16, 208:20-209:23.) | |
| 110. Ms. Simonson alleges that the successor trustee made payments from the trust that she would not have made; for example, Ms. Simonson claims the successor trustee paid her sister's attorney's fees, but "if [she] had been trustee, that would not have been paid." (B. Simonson 1-1224 Depo. Tr. at 201:5-13.) | Vaira's attorney had not complied with the probate court's June 5 order relating to such legal fees and therefore Simonson was not empowered to cause them to be paid. (Exh. 39 , Simonson Affidavit ¶ 16 ) |
| 111. Ms. Simonson objected to the successor trustee paying her sister's attorney's fees, but the probate court "didn't listen." (B. Simonson 1-12-24 Depo. Tr. at 201:14-21.) | |
| 112. Ms. Simonson appealed the June 21, 2017 Order, arguing that the circuit court erred in imposing surcharges against her and approved a plan of distribution in violation of the express terms of the Hohler Trust. (Exh. 27.) | |
| 113. The appeal was denied in a Decision dated April 4, 2018. (Exh. 27.) | |
| 114. Ms. Simonson moved the court of appeals for reconsideration, which was denied on May 7, 2018. (Exh. 28.) | |
| 115. Ms. Simonson also filed a petition for review with the Wisconsin Supreme Court, which was denied on September 7, 2018. (Exh. 28.) | |
| 116. On August 20, 2021, Ms. Simonson filed a civil malpractice suit against defendants in federal court in Connecticut. (Exh. 29.) | Defendants mischaracterize Exh. 29. Plaintiff's action was for breach of contract. Exh 29 is clear on this. |
| 117. The action was dismissed for lack of personal jurisdiction on May 17, 2022. *Simonson v. Olejniczak,* | |

-11-

| | |
|---|---|
| 2022 U.S. Dist. LEXIS 186116 (D. Conn. May 17, 2022). | |
| 118.    Ms. Simonson appealed the decision to the U.S. Court of Appeals for the Second Circuit, which affirmed the dismissal on April 14, 2023. *Simonson v. Olejniczak*, No. 22-1219, 2023 U.S. App. LEXIS 8950 (2d Cir. Apr. 14, 2023). | |
| 119.    Eleven days later, Ms. Simonson filed this action in Wisconsin. (Dkt. [1].) | |
| 120.    In the Complaint, Ms. Simonson alleges that defendants breached the Legal Services Agreement by "unilaterally" withdrawing from the probate case, by failing to close the estate, and by failing to appear at the November 9, 2015 hearing. (Dkt. [1].) | |
| 121.    Ms. Simonson initially filed this action *pro se*. (Dkt. [1].) | |
| 122.    Although she is a licensed attorney in Illinois and New York, Ms. Simonson is not admitted to practice in Wisconsin state or federal courts. (B. Simonson 1-12-24 Depo. Tr. at 42:1443:14; Exh. 4 at 13.) | Plaintiff does not hold an active law license in any jurisdiction and had not for about the last 20 years.  (Exh. 39, Simonson Affidavit ¶ 42 ) |
| 123.    Ms. Simonson was an "international tax attorney" and has never practiced any sort of litigation or appeared in court as an attorney. (B. Simonson 1-12-24 Depo. Tr. at 43:15-44:1.) | |
| 124.    Ms. Simonson has a bachelor's degree in accounting from the University of Wisconsin, an MBA from INSEAD, a law degree from the University of Texas, and an LLM in taxation from New York University. (B. Simonson 1-12-24 Depo. Tr. at 39:25-40:25, 41:20-22.) | |
| 125.    On January 10, 2024, Ms. Simonson's husband, Eric Simonson (who is also a licensed attorney), filed a Notice of Appearance on her behalf in the present case. (Dkt. [22].) | |
| 126.    Ms. Simonson is currently represented by an attorney in these proceedings and is no longer pro se. (Dkt. [22].) | |
| 127.    Mr. Simonson represented his wife at her deposition on January 12, 2024. (Exh. 3.) | |
| 128.    Ms. Simonson's Rule 26(a)(2) expert disclosures were due January 15, 2024. (Dkt. [18].) | |
| 129.    To date, defendants have not received any expert disclosures or expert reports from Ms. Simonson or her attorney. (Scipior Decl. ¶ 3.) | |
| 130.    Ms. Simonson alleges in the Complaint that she engaged LCOJ "to represent her individually and | |

| | |
|---|---|
| in her capacity as beneficiary of the Trust." (Dkt. [1] at ¶ 11.) | |
| 131.  As of November 30, 2015, Ms. Simonson owed $81,544.74 according to LCOJ's statements. (Statements at 51.) | |
| 132.  LCOJ filed for fee arbitration with the State Bar of Wisconsin. (Exh. 30.) | |
| 133.  Ms. Simonson told the Wisconsin State Bar that LCOJ was "not engaged by me in my personal capacity," that LCOJ did not represent her "in any capacity that directly involved my personal interests," and that LCOJ did not "provide any advice or take any action to benefit me as a beneficiary or in any other personal capacity." (Exh. 30 at 2-3.) | |
| 134.  Ms. Simonson also told the Wisconsin State Bar that, "while the engagement letter is signed by me, both I and COJ clearly understood that the representation was solely for the Trust, the Estate, and me in my capacities as Trustee and personal representative." (Exh. 30 at 2.) | |
| 135.  The arbitration proceedings were dismissed as a result of Ms. Simonson's representations. (Exh. 30 at 1.) | This is a gross mischaracterization of the words of Exh. 30.  As per the exhibit, no proceedings were commenced simply because both parties did not agree to them. |
| 136.  Ms. Simonson is no longer the trustee of the Trust or personal representative of the Estate. (Exh. 4 at 12.) | |
| 137.  Ms. Simonson is seeking to recover her "half" of the damages that she believes she should have received "from the trust" as a beneficiary. (B. Simonson 1-12-24 Depo. Tr. at 193:1316, 197:12-18,199:17-20; Exh. 38 at 2.) | |
| 138.  Ms. Simonson held a CPA license in Wisconsin and passed her CPA exam "on [her] first attempt." (B. Simonson 1-12-24 Depo. Tr. at 40:3-6.) | |
| 139.  Plaintiff is seeking the following damages: | |

| (iii) Computation of Damages[1]: | |
|---|---|
| (a) Lost trustee fees | $8,497.50 |
| (b) Out of pocket legal fees paid | $65,000+ |
| (c) Court imposed surcharges: | $59,357.00 |
| (d) ½ of excess legal fees paid by Trust to Conway firm | $7,500.00 |
| (e) ½ cost to Trust of replacement trustee in excess of fee cap | $20,751.00 |
| (f) ½ cost to Trust for ineligible legal fee reimbursement | $6,000.00 |
| (g) ½ cost to Trust for other ineligible legal fee reimbursement | $44,000.00 |
| (h) Improper Trust asset valuations to the detriment of Plaintiff | $20,000.00 |
| (i) Personal travel expenses to attend hearings | $10,000+ |
| (j) Personal labor managing properties while unable to sell or finance them due to liens imposed due to removal as trustee and operating losses on such properties during such time | $TBD |
| Pre-Tax Total: | $241,105.50+ |

Tax Cost of receiving taxable judgment in this case rather than amounts that would not have been taxed because either (i) they were costs and losses to the Trust that had no taxable income, and had they not been incurred, total Trust assets would have been distributed tax free or otherwise directly decreased the value of direct or indirect distributions to Plaintiff that would have been tax free (Items (c), (d). (e), (f) ,(g), and (h)) or (ii) Plaintiff was unable to fully deduct the original expense by Plaintiff against income (Items (b), and (i)), assuming a combined federal and state effective rate of 40% and a further tax gross up for the tax cost of receiving the gross-up:  Appx. $160,000+

| Total: | $401,105.00+ |
|---|---|

(Exh. 38 at 2.)

## PLAINTIFF'S PROPOSED ADDITIONAL FINDINGS OF FACTS

140.  At no time following August 24, 2015 through November 9, 2015, did Defendants communicate to Plaintiff regarding the decision by the probate court with respect to Defendants' Motion to Withdraw.  (Exh.40, Defendants' Responses to Requests to Admit, Response to Request 47; Exh.39, Simonson Affidavit ¶25 and 26.)



141. At no time following August 24, 2015 through November 9, 2015 did Defendants communicate to Plaintiff that they were terminating the Legal Services Agreement. (Exh.40, Defendants' Responses to Requests to Admit, Response to Request 47; Exh.39, Simonson Affidavit ¶25 and 26.)

142. Defendants received the probate court notice for the November 9, 2015 hearing. (Exh. 40, Defendants' Responses to Requests to Admit, Response to Request 48)

143. Defendants knew that the November 9, 2015 hearing of the probate court had been scheduled. . (Exh.40, Defendants' Responses to Requests to Admit, Response to Request 50)

144. Defendants did not communicate to Plaintiff that the November 9, 2015 hearing had been scheduled or that Defendants would not appear on her behalf. (Exh.39, Simonson Affidavit ¶¶ 33, 34, 35, 36)

145. At no time during Defendants' representation of Plaintiff did Plaintiff communicate to Defendants that she would refuse to cause payment of all appropriate legal fees billed by Defendants. (Exh 39, Simonson Affidavit ¶ 11)

146. The assets of the Trust available for payment of Defendants' legal fees (and certain other potential expenses of the Trust totaled a bit over $200,000) were approximately $1.7 million. (Exh. 39, Simonson Affidavit ¶ 12)

147. Following the probate courts' June 5, 2015 order, Plaintiff was extremely busy administering the Trust and carrying out her obligations under that order. (Exh.39, Simonson affidavit ¶ 15)

148. On June 15, 2015, Krueger emailed a list of tasks (the "Task List") for which Plaintiff would be responsible. (Exh. 41)

-15-

149.  Plaintiff did not receive any notice from the probate court or any third party, of the

results of Defendants' Motion to Withdraw.  (Exh. 39, Simonson Affidavit ¶ 24)


Dated April 5, 2015

                      THE LAW OFFICE OF ERIC SIMONSON
                      Attorney for Plaintiff Barbara Simonson


                      /s/ *Eric Simonson*
                      Eric Simonson
                      eric.simonson.br@gmail.com
                      210 E. 73rd Street, #9B
                      New York, NY 10021
                      917-579-8733


                             Dated: April 5, 2024

-16-

UNITED STATES DISTRICT COURT

FOR THE EASTERN DISTRICT OF WISCONSIN

| | | |
|---|---|---|
| BARBARA SIMONSON, | ) | |
| | ) | |
| Plaintiff | ) | |
| | ) | Case No.: 23-CV-526 |
| v. | ) | |
| | ) | |
| THOMAS OLEJNICZAK, | ) | |
| STEVEN J. KRUEGER, | ) | |
| CONWAY, OLEJNICZAK & JERRY, S.C. | ) | |
| | ) | |
| Defendants. | ) | Date:  April 5, 2024 |

## AFFIDAVIT OF BARBARA SIMONSON

The undersigned, having been duly sworn, hereby deposes and states:

1. I am over the age of eighteen and understand the obligations of an oath.

2. I make this affidavit based on my personal knowledge of the matters contained herein.

3. Shortly after engaging the firm of Conway, Olejniczak & Jerry, S.C. ("COJ") and Thomas Olejniczak ("Olejniczak") and Steven Krueger ("Krueger" and together with COJ and Olejniczak, "Defendants") to represent me in regard to the estate (the "Estate") and trust (the "Trust") of my deceased father, John Hohler (the "Representation").  In a phone conversation Olejniczak made clear that one of Defendants' first priorities was to complete all required estate filings and took upon themselves the task of doing so.

4. In those same early communications, Defendants had confirmed to me that my prior attorney had not filed the necessary documents and materials to close the Estate.

5. During those same early phone conversations, Olejniczak and Krueger made clear that in in addition to representing me in litigation (the "Litigation") against me relating to the Estate and Trust filed by my sister, Mary Vaira ("Vaira"), they would advise and assist me in trust compliance and administration.

6. Defendants advised me that as trustee, I had fiduciary duties to safeguard all trust assets and not incur or pay unreasonable or inappropriate expenses.

7. During the course of the Representation, in the exercise of my fiduciary duties, I had reason to question parts of invoices submitted to me by Defendants. In particular, but not exclusively, there were excessive fees relating to the preparation of a Trust accounting by Defendants, in which the resulting work product was inaccurate in many respects and required me to extensively revise the documents and supervise a paralegal at COJ.

8. I raised this issue several times with Olejniczak, with Olejniczak agreeing to revisit those fees to determine if they were reasonable and proper.

9. Over about a six month period, from February 2015 until October 2015, I tried to negotiate an appropriate discount to Defendants' fees.

10. Olejniczak communicated to me that he needed me to specify with precision which time entries were being challenged, together with the reasons and support for such challenge, before he would negotiate a final discount.

11. At no time during the Representation did I indicate in any manner that I would refuse to pay all appropriate legal fees billed to me by Defendants. I was required by a court order

to pay all reasonable and appropriate fees of Defendants. The only question was the final amount and the timing of the payment.

12. The assets of the Trust available for payment of Defendants' legal fees (and certain other potential expenses of the Trust which totaled a bit over $200,000 on June 5, 2015) were approximately $1.7 million.

13. Starting at the beginning of 2015, Defendants were much more active working on the Representation, incurring larger legal fees leading up to June 5, 2015.

14. Notwithstanding my concerns regarding Defendants' invoices, I made several good faith progress payments during the late spring and summer of 2015.

15. Following the probate court's June 5 Order, I had many time sensitive tasks to accomplish, including, but not limited to, distributing and re-titling ten pieces of real property, managing those ten properties (paying taxes, insurance, making capital improvements and repairs and dealing with tenants) until they were distributed to the sub-trusts established by the Trust, managing the five properties distributed to my own sub-trust of which I was the trustee, paying a court ordered referee, paying other expenses of the trust, establishing bank and brokerage accounts, dealing with investments, both liquid and illiquid, liquidating investments to provide funds to pay Trust expenses, reviewing invoices for legal services for counsel to Vaira that had been ordered paid out of Trust assets, dealing with Trust tax records, distributing numerous items of personal property, and dealing with a lack of cooperation and hostility from Vaira and her counsel, among other tasks. Defendants were fully aware of these tasks and responsibilities.

16. As trustee, I had declined to cause the Trust to reimburse counsel for Vaira for his legal fees because, among other reasons, such counsel had failed to submit to me certain materials required by the probate Court to be submitted prior to any reimbursement.

17. During the June 5 hearing at the Probate Court, Krueger affirmed that Defendants needed to finalize and file all documents and materials necessary to close the estate.

18. In June 2015, Krueger and I discussed how to accomplish the many tasks ahead. On June 15, 2015, Krueger produced a list that he said were the activities for which I was responsible. They all related to Trust administration. None related to closing the estate or any further litigation.

19. I understood the tasks not on Krueger's list would be handled by Defendants.

20. At no time before November 10, 2015 did I agree to terminate the Representation.

21. In a series of emails in July, I made clear to Krueger that the Representation was not terminated. Rather Krueger and I agreed that I would handle most of the trust administration tasks myself, in order to save Trust financial resources. At no time did I understand, nor did Krueger or Olejniczak tell me, that Defendants would not handle closing the estate or no longer represent me in the Litigation.

22. Until August 24, 2015, I had received no communication that Defendants were absolutely refusing to take any action to close the estate.

23. I filed my Objection to Defendants' motion to withdraw as my counsel of record (the "Withdrawal Motion") on August 26, 2015.

24. I never received notification either from the Probate Court or Defendants of the results of the Withdrawal Motion, nor even that any decision had been made.

25. Following August 24, 2015, I received no communications from Defendants in which they claimed to terminate the legal services agreement between me and Defendants or otherwise indicated that they did not continue to represent me.

26. Defendants never informed me on how to view the Probate Court's docket or any other means to determine the date of hearings or the results of motions.

27. Because Defendants never informed me of the results of the Withdrawal Motion, I assumed they remained my counsel of record.

28. Because the cover letter to the Withdrawal Motion asked that it be granted unless it was opposed by me within five days, and because I had opposed the withdrawal Motion within such time, I assumed that the motion was inoperative, or that the Probate court would schedule a hearing or other process.

29. During the Litigation, the Probate Court often took months to deal with motions, I had no reason to believe any decision on the Withdrawal Motion had been made.

30. While I did receive the Probate Court's letter of September 18, 2015 stating that the estate filings were incomplete because they did not include several items, I believed that the listed "missing" items had in fact been submitted, including an estate accounting that Krueger had claimed to have filed. I therefore did not take any action, relying on the fact that at an appropriate time, I could show the Probate Court that I had complied. Several years later, the Probate Court conceded everything was properly filed when the new trustee explained everything to the Probate Court.

31. While I did receive the unstamped October 5, 2015 contempt motion papers from counsel to Vaira, I had no independent knowledge that it had been filed with the Probate Court and believed it was merely a proposed hearing. I have no record of receiving the October

12, 2015 copy of such materials prior to November 9, 2015, whose only indication by the Probate Court was a stamp saying it had been "received."

32. I did not receive notice from the Probate Court of the November 9, 2015 hearing.

33. I did not receive any communication from Defendants regarding the November 9, 2015 hearing.

34. Although (a) I continued to correspond with Olejniczak through October 2015 regarding Defendants' invoices, (b) Krueger continued to be copied on correspondence and purported motion papers mailed to me by counsel for Vaira, (c) and Defendants have admitted in their Answers to Requests to Admit that they received the official Probate Court notice of the November 9 hearing dealing with Vaira's motion to remove me as trustee and personal representative and impose sanctions on me (the "November 9 Motion" and the related hearing, the "November 9 Hearing"), at no time did Defendants inform me of the pendency of the November 9 Hearing or that I had received proper notice.

35. Because I continued to believe that Defendants remained my legal counsel, and that responsibility for responding to motions and attending and arguing at hearings in the Litigation remained with Defendants, I assumed that if the November 9 Motion had been docketed and set for argument, (i) Defendants would have informed me of that fact and/or (ii) appeared on my behalf at the November 9 Hearing. As a result, I did not appear at the November 9 Hearing (of which I was not aware had been properly called).

36. Only after November 9, 2015 did I realize that there had been a hearing and Defendants did not appear on my behalf. I promptly hired new legal counsel.

37. I had no motive, incentive or other rationale to avoid the November 9 Hearing. Had I known it was scheduled and Defendants were not going to represent me, I would have petitioned the Probate court to allow me time to engage new counsel and appear at the hearing. I am not an irresponsible person.

38. I am not and have never been an attorney licensed in Wisconsin nor in 2015 was I familiar with Wisconsin civil procedure and what constitutes adequate notice of a hearing. I relied on my counsel, Defendants, to provide that expertise.

39. At no point while I was trustee and personal representative did I appear in Probate Court *pro se*. In an effort to be efficient, I did reply to direct correspondence from opposing counsel, and in a few instances I corresponded with the Probate Court directly on matters of estate and trust administration. Because I was not a Wisconsin admitted attorney, I could not have represented the estate or trust *pro se*.

40. The letter to the Wisconsin bar, dated February 8, 2016, was unartfully drafted. I was furious that Defendants had mischaracterized who was responsible for payment of Defendants' invoices, because it was clear under the Probate Court's June 5, 2015 order that payment was the Trust's responsibility.

41. The Probate Court's June 21, 2017 order imposed on me monetary sanctions and surcharges, and revalued trust assets in a manner that further penalized me personally, based directly or indirectly upon alleged breaches of fiduciary duties purportedly associated with the circumstances of my removal as trustee and personal representative for failing to close the Estate and failing to attend the November 9, 2015 hearing.

42. While I am a CPA and lawyer, neither my CPA nor law licenses are active and neither

has been active for almost 20 years. When I practiced law, I was a tax lawyer who did

not represent clients in court. I retired from the practice of law over 20 years ago.


SIGNED UNDER PENALTY OF PERJURY

_____

Barbara Simonson


Subscribed and sworn to before me this 5th day of April, 2024.

_____

Name:

State of New York Notary Public


CAROL A. SIGMOND
NOTARY PUBLIC STATE OF NEW YORK
Registration No. 02SI5078712
Qualified in New York County
Commission Expires May 27, 20__