No. 25-1417

# In the
# United States Court of Appeals
## For the Seventh Circuit
───────────────

BARBARA SIMONSON,

*Plaintiff-Appellant,*

v.

THOMAS OLEJNICZAK, STEVEN J. KRUEGER,
AND CONWAY, OLEJNICZAK & JERRY, S.C.,

*Defendants-Appellees.*

───────────────

On Appeal from the United States District Court
for the Eastern District of Wisconsin, No. 1:23-cv-526-WCG
The Honorable William C. Griesbach, *Judge.*

───────────────

**BRIEF OF DEFENDANTS-APPELLEES**

─────────────────────────────────────────────

Atty. Vincent J. Scipior
Coyne, Schultz, Becker & Bauer, S.C.
150 East Gilman Street, Suite 1000
Madison, Wisconsin 53703
Tel.: 608-255-1388
Fax: 608-255-8592

## APPEARANCE & CIRCUIT RULE 26.1 DISCLOSURE STATEMENT

Appellate Court No: 25-1417

Short Caption: Barbara Simonson v. Thomas Olejniczak, et al

To enable the judges to determine whether recusal is necessary or appropriate, an attorney for a non-governmental party, amicus curiae, intervenor or a private attorney representing a government party, must furnish a disclosure statement providing the following information in compliance with Circuit Rule 26.1 and Fed. R. App. P. 26.1.

The Court prefers that the disclosure statements be filed immediately following docketing; but, the disclosure statement must be filed within 21 days of docketing or upon the filing of a motion, response, petition, or answer in this court, whichever occurs first. Attorneys are required to file an amended statement to reflect any material changes in the required information. The text of the statement must also be included in the front of the table of contents of the party's main brief. **Counsel is required to complete the entire statement and to use N/A for any information that is not applicable if this form is used.**

☐        **PLEASE CHECK HERE IF ANY INFORMATION ON THIS FORM IS NEW OR REVISED AND INDICATE WHICH INFORMATION IS NEW OR REVISED.**

(1)      The full name of every party that the attorney represents in the case (if the party is a corporation, you must provide the corporate  disclosure information required by Fed. R. App. P. 26.1 by completing item #3):
Thomas M. Olejniczak, Steven J. Krueger, and Conway, Olejniczak & Jerry, S.C.

(2)      The names of all law firms whose partners or associates have appeared for the party in the case (including proceedings in the district court or before an administrative agency) or are expected to appear for the party in this court:
Coyne, Schultz, Becker & Bauer, S.C.

(3)      If the party, amicus or intervenor is a corporation:

i)        Identify all its parent corporations, if any; and

None

ii)       list any publicly held company that owns 10% or more of the party's, amicus' or intervenor's stock:

None

(4)      Provide information required by FRAP 26.1(b) – Organizational Victims in Criminal Cases:

N/A

(5)      Provide Debtor information required by FRAP 26.1 (c) 1 & 2:

N/A

Attorney's Signature: /s/ Vincent J. Scipior          Date: 3/31/2025

Attorney's Printed Name:  Vincent J. Scipior

Please indicate if you are *Counsel of Record* for the above listed parties pursuant to Circuit Rule 3(d).      **Yes** ☑   **No** ☐

Address:  Coyne, Schultz, Becker & Bauer, S.C., 150 E. Gilman St. #1000, Madison, WI 53703

Phone Number: 608-255-1388          Fax Number:  608-255-8592

E-Mail Address: vscipior@cnsbb.com

rev. 12/19 AK

# TABLE OF CONTENTS

TABLE OF AUTHORITIES ............................................................ iv

JURISDICTIONAL STATEMENT ................................................... 1

STATEMENT OF THE ISSUES ...................................................... 2

STATEMENT ON ORAL ARGUMENT .......................................... 4

STATEMENT OF THE CASE ......................................................... 5

    I.    Factual Background ............................................................ 5

    II.   Procedural History .......................................................... 18

    III.  District Court Decisions and Orders ................................ 20

SUMMARY OF ARGUMENT ........................................................ 22

STANDARD OF REVIEW .............................................................. 25

ARGUMENT .................................................................................... 27

    I.    This Is a Legal Malpractice Case ...................................... 27

    II.   Simonson Cannot Prove Her Legal Malpractice
           Case Without an Expert .................................................... 29

    III.  There Is No Genuine Issue As to Any Material Fact .............. 36

    IV.  Simonson Materially Breached the Legal Services
           Agreement By Failing to Pay COJ's Fees on Time ................. 44

    V.   COJ Did Not Breach the Legal Services Agreement .............. 51

VI.   Simonson's Decision To Represent Herself *Pro Se* After COJ Withdrew Is an Intervening Cause That Bars Her Legal Malpractice Claims ..................................... 53

VII.  Simonson Cannot Prove the "Suit Within the Suit" ............... 56

VIII. Simonson's Claim That COJ Breached the Legal Services Agreement By Failing to Close the Estate Fails for Additional Reasons ............................................. 58

     a.  The Claim Is Time-Barred ........................................... 58

     b.  The Claim is Barred by the Judicial Error Doctrine .......... 60

IX.   The Individual Attorneys Are Not Parties to the Legal Services Agreement ............................................. 61

CONCLUSION ................................................................... 63

CERTIFICATE OF COMPLIANCE ............................................. 64

# TABLE OF AUTHORITIES

## Cases

*Acedo v. Cty. of San Diego,*
    2018 U.S. Dist. LEXIS 118353 (S.D. Cal. July 16, 2018) ……….. 43

*Adsmp Holdings v. Urbanek,*
    2017 Fla. Cir. LEXIS 16873 (Fla. Cir. Nov. 17, 2017) ……..… 61-62

*Albiero v. City of Kankakee,*
    246 F.3d 927 (7th Cir. 2001) …………………………..……… 40

*American Int'l Adjustment Co. v. Galvin,*
    86 F.3d 1455 (7th Cir. 1996) …………………………..……… 28

*Anderson v. Liberty Lobby, Inc.,*
    477 U.S. 242 (1986) …………………………………….…….. 37

*Andrade v. City of Hammond,*
    9 F.4th 947 (7th Cir. 2021) ……………………………………. 42

*Anglo-Dutch Petroleum Int'l, Inc. v. Greenberg Peden, P.C.,*
    352 S.W.3d 445, 54 Tex. Sup. Ct. J. 1669 (2011) ………………. 61

*ARP Films, Inc. v. Marvel Entertainment Group, Inc.,*
    952 F.2d 643 (2d Cir. 1991) …………………………..……… 48

*Ball v. Kotter,*
    723 F.3d 813 (7th Cir. 2013) …………………………..……… 31

*Benjamin Plumbing, Inc. v. Barnes,*
    162 Wis. 2d 837, 470 N.W.2d 888 (1991) …………………..…. 62-63

*Boehm v. Wheeler,*
    65 Wis. 2d 668, 223 N.W.2d 536 (1974)……………………… 27

*Bouley v. Bouley*,
   19 A.D.3d 1049, 797 N.Y.S.2d 221 (2005) ……………………..……. 62

*Brophy v. Mei*,
   2010 Wis. App. LEXIS 19, 2010 WI App 33,
   323 Wis. 2d 822, 781 N.W.2d 550 (unpublished)………………..….. 31

*Capsavage v. Esser*,
   224 Wis. 2d 404, 591 N.W.2d 888 (Ct. App. 1999) …………..……. 62-63

*Celotex Corp. v. Catrett*,
   477 U.S. 317 (1986)…………………………………………………. 36

*Compston v. Holzapfel*,
   1991 Ohio App. LEXIS 3344 (July 15, 1991) ……………… 28, 33-35

*Cook v. Continental Casualty Co.*,
   180 Wis. 2d 237, 509 N.W.2d 100 (Ct. App. 1993)…………. 28-29, 53

*Crestwood Cove Apartments Bus. Tr. v. Turner*,
   2007 UT 48, 164 P.3d 1247, 581 Utah Adv. Rep. 3……………. 60-61

*Cty. of Milwaukee v. Schmidt, Garden & Erikson*,
   43 Wis. 2d 445, 168 N.W.2d 559 (1969) ……………………………. 27

*DeThorne v. Bakken*,
   196 Wis. 2d 713, 539 N.W.2d 695 (Ct. App. 1995)……………..… 29, 53

*Doering v. Kaufman*,
   1997 Wis. App. LEXIS 981, 213 Wis. 2d 123,
   570 N.W.2d 253 (Ct. App. 1997) (unpublished)……………………. 35

*Dussias Skallas Wittenberg, LLP v. Minogue*,
   2020 Ill. App. (1st) 190282-U,
   2020 Ill. App. Unpub. LEXIS 861 (unpublished)……………………. 47

*Elliott v. Donahue*,
   169 Wis. 2d 310, 485 N.W.2d 403 (1992) ……………………….... 44

*Entzminger v. Ford Motor Co.*,
    47 Wis. 2d 751, 177 N.W.2d 899 (1970)……………………..…… 50

*Evers v. Lerner*,
    1995 Wis. App. LEXIS 1465, 198 Wis. 2d 391,
    542 N.W.2d 239 (unpublished)…………………………………....... 31

*Fletcher v. Hoeppner Wagner & Evans, LLP*,
    775 Fed. Appx. 240 (7th Cir. 2019)…………………………………… 31

*Forsyth v. Feinstein*,
    2000 Ohio App. LEXIS 549, (Ohio Ct. App. 2000) …………..……… 33

*Gerber v. Ogle Coal Co.*,
    195 Wis. 578, 218 N.W. 361 (1928) ……………………………… 46-47

*Getmor Enters., LLC v. Brown Cty.*,
    2013 U.S. Dist. LEXIS 113269, (E.D. Wis. Aug. 12, 2013)……….. 31

*Gillis v. Chicago Transp. Auth.*,
    1996 U.S. App. LEXIS 23379 (7th Cir. 1996) …………….……….. 25

*Glamann v. St. Paul Fire & Marine Ins.*,
    144 Wis. 2d 865, 424 N.W.2d 924 (1988)…………………………... 56-57

*Green v. Whiteco Indus.*, Inc.,
    17 F.3d 199 (7th Cir.1994)……………………………………………… 36

*Groshek v. Trewin*,
    2010 WI 51, 325 Wis. 2d 250, 784 N.W.2d 163 ………….………… 53

*Hadzi-Tanovic v. Johnson*,
    62 F.4th 394 (7th Cir. 2023)…………………………………………… 42

*Hassebrock v. Bernhoft*,
    815 F.3d 334 (7th Cir. 2016) ……………………………………… 31-33

*Heimermann v. Kohler,*
2000 Wis. App. LEXIS 742, 2000 WI App 214,
238 Wis. 2d 840, 618 N.W.2d 273 (unpublished)........................ 31

*Helmbrecht v. St. Paul Ins. Co.,*
122 Wis. 2d 94, 362 N.W.2d 118 (1985).............................. 29, 32

*Hicks v. Nunnery,*
2002 WI App 87, 253 Wis. 2d 721, 643 N.W.2d 809................... 58

*Hieshetter v. Liberty Ins. Corp.,*
2012 U.S. Dist. LEXIS 37416 (E.D. Wis. Mar. 20, 2012) ........ 30-31

*Huang v. Brenson,*
2014 IL App (1st) 123231, 379 Ill. Dec. 891,
7 N.E.3d 729 (Ill. Ct. App. 2014) ....................…........ 60-61

*Imtrac Indus. v. Glassexport Co.,*
1996 U.S. Dist. LEXIS 1022 (S.D.N.Y. 1996) ...........…...... 49

*Irby v. Hackbarth,*
1995 Wis. App. LEXIS 183, 191 Wis. 2d 825,
532 N.W.2d 145 (Ct. App. 1995) (unpublished)......…......... 30-31

*Jakupovic v. Curran,*
850 F.3d 898 (7th Cir. 2017) .................................... 42

*Karum Holdings LLC v. Lowe's Cos.,*
895 F.3d 944 (7th Cir. 2018) .................................... 30

*Kay Law Firm v. Stangler,*
2015 Wis. App. LEXIS 336, 2015 WI App 52,
364 Wis. 2d 408, 866 N.W.2d 406 (unpublished) ......…........ 38

*Klingbeil v. Saucerman,*
165 Wis. 60, 160 N.W. 1051 (1917)......................….... 27

*Koumjian v. Mudd*,
2024 U.S. App. LEXIS 22140 (7th Cir. Aug. 29, 2024)................ 31

*KR Enters. v. Zerteck Inc.*,
999 F.3d 1044 (7th Cir. 2021).................................................. 47

*Kraner v. Law Offices of Selami, P.C.*,
2019 Mass. Super. LEXIS 5025 (Sept. 26, 2019)........................ 61

*Lee, Kilkelly, Paulson & Kabaker v. ROI Invs.*,
1999 Wis. App. LEXIS 492, 228 Wis. 2d 512,
597 N.W.2d 775 (unpublished) ............................................. 30

*Lewandowski v. Continental Casualty Co.*,
88 Wis. 2d 271, 276 N.W.2d 284 (1979) ...................….... 28, 56-57

*Mahoney v. McDonnell*,
2014 U.S. Dist. LEXIS 129220 (D.N.J. Sept. 16, 2014) .......... 55-56

*Mgmt. Comput. Servs., Inc. v. Hawkins, Ash, Baptie & Co.*,
206 Wis. 2d 158, 557 N.W.2d 67 (1996) ...........................…... 44-45

*McAllister v. Watkins*,
2016 U.S. Dist. LEXIS 145242 (W.D. Okla. Oct. 20, 2016).......... 62

*Nelson v. Berg*,
2023 WI App 32, 408 Wis. 2d 542,
993 N.W.2d 175 (unpublished)..........................................…....... 51

*Newman v. Beaver*,
1995 Wis. App. LEXIS 62, 191 Wis. 2d 359,
530 N.W.2d 69 (unpublished) .............................................. 54

*O'Leary v. Accretive Health, Inc.*,
657 F.3d 625 (7th Cir. 2011)...............................................…...... 25

*Olfe v. Gordon*,
93 Wis. 2d 173, 286 N.W.2d 573, 578 (1980)............................. 29

*Ortiz v. John O. Butler Co.*,
94 F.3d 1121 (7th Cir. 1996) ..............................…..... 37

*Oyler v. National Guard Ass'n of the United States*,
743 F.2d 545 (7th Cir. 1984) ..............................…..... 25

*Parent v. Home Depot U.S.A., Inc.*,
694 F.3d 919 (7th Cir. 2012) ..............................…..... 44

*Patterson v. Kohn*,
2020 Wis App. LEXIS 19, 2020 WI App 10,
390 Wis. 2d 833, 939 N.W.2d 875 (unpublished)......................…. 30

*Pierson v. Kraucunas*,
2002 U.S. Dist. LEXIS 26872 (W.D. Wis. Feb. 20, 2002) ...…....... 31

*Pines Bach, LLP v. Mills*,
2023 U.S. Dist. LEXIS 186753
(W.D. Wis. Oct. 17, 2023) ......................…....... 28, 31, 34-35

*Reives v. Illinois State Police*,
29 F.4th 887 (7th Cir. 2022)....................................…...... 25

*Rogers v. City of Chicago*,
320 F.3d 748 (7th Cir. 2003) ..............................…..... 40

*Salgado by Salgado v. Gen. Motors Corp.*,
150 F.3d 735 (7th Cir. 1998) ..............................…..... 30

*Segall v.* Hurwitz,
114 Wis. 2d 471, 339 N.W.2d 333 (Ct. App. 1983)....................…. 60

*Seidner v. Finkelman*,
195 A.3d 1048 (Pa. Super. Ct. 2018).......................…....... 62

*Siegel v. Shell Oil Co.*,
612 F.3d 932 (7th Cir. 2010) .............................…...... 43-44

ix

*Simmons v. Pryor*,
    26 F.3d 650 (7th Cir. 1993) ......................................... 26

*Simonson v. Vaira*,
    2016 Wis. App. LEXIS 633, 2016 WI App 80,
    372 Wis. 2d 185, 888 N.W.2d 23 (unpublished)..................... 42-43

*Slowiak v. Land O'Lakes,*
    *Inc.*, 987 F.2d 1293 (7th Cir. 1993) ............................... 40

*Smith v. Long*,
    178 Wis. 2d 797, 505 N.W.2d 429 (Ct. App. 1993)..................... 27

*Sprecher v. Weston's Bar, Inc.*,
    78 Wis. 2d 26, 253 N.W.2d 493 (1977) ............................. 62

*Swedlow, Butler, Inman, Levine & Lewis Co., L.P.A. v. Gableman*,
    1998 Ohio App. LEXIS 3325 (Ohio Ct. App. 1998)
    (unpublished) ..................................................... 47

*Thompson Tarasek Lee-O'Halloran PLLC v. Draper*,
    2018 Minn. Dist. LEXIS 1479
    (Sept. 12, 2018) (unpublished)..................................... 47

*Treasure Coast, Inc. v. Ludlum Const. Co.*,
    760 So. 2d 232 (Fla. 4th DCA 2000) ............................... 49

*Uncommon, LLC v. Spigen, Inc.*,
    926 F.3d 409 (7th Cir. 2019) ..................................... 30

*Voss v. City of Middleton*,
    162 Wis. 2d 737, 470 N.W.2d 625 (1991)............................ 30

*West Side Salvage, Inc. v. RSUI Indem. Co.*,
    878 F.3d 219 (7th Cir. 2017)....................................... 25-26

*Zhou v. Segall*,
    2020 Conn. Super. LEXIS 753 (June 15, 2020)........................ 62

# Other Authorities

Cir. R. 32(b) ........................................................…..……….. 64

Cir. R. 32(c) .......................................................……..…… 64

Cir. R. 34(f) .......................................................…….……. 4

Fed. R. App. P. 32(a)(5) ………………………………………… 64

Fed. R. App. P. 32(a)(6) ………………………………………… 64

Fed. R. App. P. 32(a)(7)(B) ……………………………………… 64

Fed. R. App. P. 34(a) …………………………………….……… 4

Fed. R. Civ. P. 26(a)(1)(A) ………………………...………… 19, 30

Fed. R. Civ. P. 26(a)(2) …………………………………..…... 19, 29-30

Fed. R. Civ. P. 37(c)(1) …………………………………………… 30

Fed. R. Civ. P. 56(c) ……………………………………………… 25

Restatement (2d) of Contracts § 241 (1981) …………………...…… 48-49

Wis. JI-Civil 1023.5 ……………………………………………... 28

## JURISDICTIONAL STATEMENT

The jurisdictional statement in the plaintiff-appellant's brief is complete and correct.

# STATEMENT OF THE ISSUES

1. Can Simonson prove her legal malpractice case without an expert?

   **The district court's answer: Not answered.**

2. Did Simonson materially breach the legal services agreement by failing to pay COJ's fees?

   **The district court's answer: "Yes."**

3. Did COJ materially breach the legal services agreement by failing to file paperwork to close the estate and/or by failing to attend the November 9 hearing?

   **The district court's answer: "No."**

4. Was Simonson's decision to represent herself *pro se* in the probate case after COJ withdrew an intervening cause that bars her legal malpractice claims?

   **The district court's answer: Not answered.**

5. Can Simonson prove the "suit within the suit" requirement of her legal malpractice case?

   **The district court's answer: Not answered.**

6. Is Simonson's claim that COJ breached the legal services

agreement by failing to file paperwork to close the estate barred by the statute of limitations?

**The district court's answer: Not answered.**

7.     Is Simonson's claim that COJ breached the legal services agreement by failing to file paperwork to close the estate barred by the judicial error doctrine?

**The district court's answer: Not answered.**

8.     Are the individual attorneys entitled to summary judgment because they were not parties to the legal services agreement?

**The district court's answer: Not answered.**

## STATEMENT ON ORAL ARGUMENT

Pursuant to Cir. R. 34(f) and Fed. R. App. P. 34(a), oral argument is not necessary because the facts and legal arguments are adequately presented in the briefs and record, and the decisional process would not be significantly aided by oral argument.

## STATEMENT OF THE CASE

### I.     Factual Background

Plaintiff-Appellant Barbara Simonson ("Simonson") is a retired attorney from Connecticut. (R. 26-3 at 42:14-44:1; R. 26-4 at 13.) Prior to retiring, she practiced international tax law. (R. 26-3 at 43:15-44:1.) She has a bachelor's degree in accounting from the University of Wisconsin, an MBA from INSEAD, a law degree from the University of Texas, and an LLM in taxation from New York University. (R. 26-3 at 39:25-40:25, 41:20-22.)

Simonson's father, John Hohler, died in Wisconsin on May 29, 2013. (R. 26-2 at 5:19-21.) Prior to his death, Mr. Hohler and his wife (who predeceased him) created the "John J. and Jane Hohler Trust" ("the Trust"). (R. 26-2 at 5:24-25.) The trust documents designated Simonson as the trustee of the Trust. (R. 26-2 at 5:22-6:7.) In addition, Simonson was nominated as the personal representative of her late father's estate ("the Estate"). (R. 26-2 at 5:22-6:7.) The terms of the Trust and Estate provided that 10% of all assets would be distributed to a Grandchildren Sub-Trust and the remainder would be distributed equally to Children Sub-Trusts. (R. 26-2 at 7:3-8, 8:22-9:1.) Mr. Hohler was survived by two

children (Simonson and her sister, Mary Vaira ("Vaira")) and one grandchild (Simonson's son, Joseph Simonson), which meant the beneficiaries of the Trust were: the Joseph Simonson Sub-Trust (10%); the Barbara Simonson Sub-Trust (45%); and the Mary Vaira Sub-Trust (45%). (R. 26-2 at 7:3-8, 8:22-9:1.)

Simonson initially hired Attorney Jennifer D'Amato to assist her with probating the estate and administering the trust. (R. 26-1.) The Estate was opened by Attorney D'Amato on July 16, 2013 in Winnebago County Case No. 13-PR-206 ("the probate case"). (R. 26-1.) On January 15, 2014, Simonson fired Attorney D'Amato and replaced her with Attorney Roy Fine. (R. 26-1.)

On June 16, 2014, Vaira filed a petition to remove Simonson as trustee and personal representative. (R. 26-5.) Two days later, Simonson hired Defendant-Appellee Conway, Olejniczak & Jerry, S.C. ("COJ"). (R. 27-2.) Simonson and COJ entered into a written legal services agreement in which COJ agreed to "represent [Simonson] in the dispute in the Estate and Trust of John J. Hohler with Mary M. Vaira":

> Thank you for choosing our firm to represent you in the dispute in the Estate and Trust of John J. Hohler with Mary M. Vaira. When we take on a new client, or an already-established client on a new matter, our firm and the Code of Professional Responsibility require us to have a written fee agreement. The purpose of this letter is to set forth the basis upon which our representation will be undertaken.

(R. 27-2 at 1.) As part of the agreement, Simonson agreed to "pay [COJ's] monthly statements on time" and "within thirty (30) days of receipt":

> All of our statements are payable within thirty (30) days of receipt. Where significant third-party payments are required (*i.e.*, co-counsel fees, expert fees, etc.), we will normally forward the charge to you for your direct payment. Accounts not paid within thirty (30) days will be charged interest at the rate of five percent (5%) per annum on the unpaid balance.

> **Client Responsibilities**
>
> You agree to (a) be truthful and cooperative with us; (b) keep us informed of developments; (c) abide by this Agreement; (d) pay our monthly statements on time; (e) promptly provide us with the information and documents that you have relating to matters we are handling; (f) be available to confer with us on matters related to our representation; and (g) assist and cooperate with us as appropriate in dealing with the matter.

(R. 27-2 at 2.) The agreement gave COJ "the right to withdraw from representation of [Simonson] at any time … in the event of … nonpayment of our fees":

> **Termination of Relationship**
>
> You have the right to terminate our representation at any time by notifying us of your intention to do so in writing. Our firm also reserves the right to withdraw from representation of you at any time after reasonable notice to you, allowing, of course, time for employment of other counsel. Under the rules of professional conduct by which we are governed, we may be required to withdraw from our representation of you in the event of, for example: nonpayment of our fees and expenses; misrepresentation or failure to disclose material facts concerning the engagement; action taken by you contrary to our advice; and in situations involving a conflict of interest with another client as described below.

(R. 27-2 at 3.) Simonson signed the agreement accepting these terms:



**Acceptance of Terms**

The foregoing is understood and agreed to this _/8ᵗʰ_ day of June, 2014.

_____

Barbara A. Simonson

(R. 27-2 at 5.)

The COJ attorneys who primarily worked on the probate case were Defendants-Appellees Thomas Olejniczak ("Attorney Olejniczak") and Steven J. Krueger ("Attorney Krueger"). (Krueger Aff. ¶ 3.) Attorney Krueger filed a response brief in opposition to Vaira's petition on September 9, 2014. (R. 26-1.) On October 14, 2014, the probate court issued an Order allowing Simonson to remain as the trustee and personal representative. (R. 26-1; R. 27-3.) Over the next eight months, COJ assisted Simonson with probating the Estate and administering the Trust. (R. 26-1.)

On June 5, 2015, the probate court issued an Order setting final deadlines to distribute the Trust assets. (R. 27-4.) In said Order, the probate court officially denied Vaira's petition to remove Simonson as trustee and personal representative. (R. 27-4 at 6.) Attorney Krueger

emailed the June 5, 2015 Order to Simonson on June 11, 2015. (R. 27-5.)

Simonson testified she was "very pleased at that point" with the "great

success as of the June 5th Order." (R. 26-3 at 170:23-171:8.)

On July 20, 2015, Simonson sent an email to Attorney Krueger

stating that she "cannot pay to have everything reviewed by [COJ]," and

that she was "left to administer and execute the Order" herself. (R. 27-22

at 2.) The next day, Attorney Krueger sent an email to Simonson asking

for "clarification of what you expect our role to be from this point forward"

and whether she wanted them to "take a back seat and assist only when

and where requested." (R. 27-6.) Simonson responded, "[T]hat makes

sense … My primary goal in retaining you was to get the properties

distributed." (R. 27-6.) Attorney Olejniczak replied, "The properties have

been transferred and therefore we believe our representation is

concluded." (R. 27-6.) On July 27, 2015, Simonson wrote in an email to

Attorney Krueger that it was her "understanding" that defendants "were

to be available on an 'as needed basis.'" (R. 27-7.) Attorney Krueger wrote

back, "Per Tom's July 21 email, our representation is concluded. If there

are additional issues in which you'd like our assistance, please let me

know." (R. 27-7.)

By July 21, 2015, Simonson had amassed **$91,047.51** in unpaid legal fees. (R. 27-8 at 46.) After paying Statements 1 through 6 in full, she stopped making payments at the beginning of 2015. (R. 27-8.) She made no payments between January 9, 2015 and May 11, 2015. (R. 27-8 at 28-44.) As of May 11, 2015, the outstanding balance was $91,462. (R. 27-8 at 41.) Simonson made a partial payment of $15,000 on May 11, 2015. (R. 27-8 at 44.) She made no additional payments in May or June. (R. 27-8 at 44-47.)

COJ repeatedly asked Simonson to pay its bills. (R. 27-6, 32, 34.) On April 6, 2015, Attorney Krueger told Simonson he would be "taking no further action until such time that our fees are paid in full." (R. 27-19.) On June 12, 2015, Attorney Olejniczak told Simonson they needed "prompt payment" and were "not going to act as your bank any further." (R. 27-21.) On July 21, 2015, Attorney Krueger told Simonson she needed to make a payment "as soon as possible." (R. 27-6.) The same day, Attorney Olejniczak told Simonson, "We have bent over backward for you in this matter and it's time you realize that your obstinacy in paying our bill will no longer be tolerated." (R. 27-6 at 1.)

Simonson said she had questions about the bills. (R. 27-6 at 1; R.

26-3 at 108:1-12.) She told Attorney Olejniczak she wanted to "sit down and go through all of the charges." (R. 26-3 at 108:1-12.) On July 21, 2015, she promised Attorney Olejniczak that she would "provide [him] with a very detailed review" of the bills. (R. 27-6 at 1.) Despite her promise, Simonson never provided Attorney Olejniczak with the "detailed review." (R. 26-3 at 112:21-113:12, 132:2-133:14.) Simonson testified that she never performed the detailed review because she was "very busy," she was "under tremendous pressure," and it was simply "not a priority" for her. (R. 26-3 at 112:21-113:12, 132:2-133:14.)

In an effort to get paid, Attorney Olejniczak offered to compromise COJ's bills. (R. 27-6 at 2; R. 27-23; R. 27-20.) On July 21, 2015, Attorney Olejniczak offered a $6,000 discount. (R. 27-6 at 2.) On August 5, 2015, Attorney Olejniczak offered a $15,000 discount. (R. 27-23.) On October 14, 2015, Attorney Olejniczak offered a $22,500 discount. (R. 27-20.) Simonson never accepted any of Attorney Olejniczak's offers. (R. 27-6 at 2; R. 26-3 at 125:21-126:12.) After making two small payments on July 30, 2015 totaling $12,000, Simonson never made another payment. (R. 27-8 at 47-51.)

On August 14, 2015, the probate court issued a Notice to Close the

Estate. (R. 26-6.) According to the Notice, the deadline to close the Estate was August 3, 2015. (R. 26-6.) On August 24, 2015, Simonson sent an email to Attorney Olejniczak stating, "It has come to my attention that … the estate is now delinquent. Please address this issue immediately … I do not understand why this issue is outstanding." (R. 27-10 at 3.) Attorney Olejniczak responded, "We never opened the Estate, that was done by one of your prior firms. … As stated previously, you dismissed us as Counsel some time ago and we are requesting the Court to allow that to happen, since you have refused to pay our bill, which I agreed to substantially compromise. You will have to deal with the estate closing." (R. 27-10 at 2.) Simonson responded, "I never dismissed you as counsel … I do not consent to your withdrawl [sic] and the last email from Steve clarified that you would be available to handle issues as needed." (R. 27-10 at 1.) Attorney Olejniczak responded bluntly, "Simply put Barbara, we are doing nothing until we get paid!" (R. 27-10 at 1.)

Attorney Olejniczak moved to withdraw from the probate case on August 24, 2015 on the grounds that "Simonson has failed to fulfill her obligations to COJ by failing to make payments for services agreed." (R. 26-7 at 2.) The motion was emailed to Simonson the same day. (R. 27-12;

R. 26-3 at 140:20-141:4.) The probate court granted the motion on August 26, 2015. (R. 27-13.) The probate court signed an Order stating that, "[COJ] is discharged from the representation of Simonson for the reasons set forth in its Motion to Withdraw" and that "[COJ] will have no further obligations concerning the case." (R. 27-13.) Simonson did not move the probate court to vacate the August 26, 2015 Order. (R. 26-1.) Nor did she appeal the August 26, 2015 Order. (R. 26-1.)

COJ performed no work on the probate case after August 26, 2015. (R. 27-8 at 48-51.) It sent monthly statements to Simonson at the end of August, September, and October showing no new work performed. (R. 27-8 at 48-50.) Simonson made no payments to COJ in August, September, October, or November. (R. 27-8 at 47-51.)

After August 26, 2015, Simonson represented herself *pro se* in the probate matter. (Exhs. 18, 20-21, 24.) On August 31, 2015, Simonson filed a Petition for Extension of Time to close the Estate, which she prepared herself. (R. 26-8; R. 26-3 at 143:6-21.) In the Petition, Simonson told the probate court that "she" would "promptly" file the necessary paperwork to close the Estate. (R. 26-8; R. 26-3 at 145:11-15.) The probate court granted Simonson's request and gave her until October 30, 2015 to close

the Estate. (R. 26-9.)

On September 18, 2015, Simonson filed a Personal Representative's Statement to Close the Estate, which she prepared herself. (R. 26-10; R. 26-3 at 146:11-20.) In a letter dated September 18, 2015, the probate court requested additional documents from Simonson and set a new deadline of October 5, 2015 to close the Estate. (R. 26-10.) Simonson admits she received this letter. (B. Simonson 1-15-24 Depo. Tr. at 151:20-22.) Despite receiving the letter, Simonson took no action to close the Estate between September 18, 2015 and October 5, 2015. (R. 26-1.) Simonson did not petition the probate court for another extension or hire a new attorney to assist her with closing the Estate. (R. 26-1; R. 26-4 at 8.)

On October 5, 2015, Vaira filed a motion to hold Simonson in contempt for failing to close the estate. (R. 26-12.) The motion was mailed to Simonson on October 5, 2015 along with a Notice for a hearing set for November 9, 2015 ("the November 9 hearing"). (R. 26-12; R. 26-3 at 157:5-158:24.) On October 12, 2015, Vaira's attorneys mailed a file-stamped copy of the Notice of Hearing to Simonson. (R. 26-13.)

On October 9, 2015, Simonson sent a letter Vaira's attorney asking

him to withdraw the motion. (R. 26-14.) In the letter, Simonson acknowledged the November 9, 2015 hearing date:

> As a preliminary matter, I do not anticipate being available for your proposed hearing date of November 9, 2015. As a result, unless this Motion is withdrawn, the Trustee and Personal Representative will need to petition the Court to delay this hearing.

(*Id.* at 1.) Simonson said she was not available for the hearing and "will need to petition the Court to delay this hearing" if the motion is not withdrawn. (*Id.*)

The motion was not withdrawn and Simonson did not petition the probate court to move or delay the hearing. (R. 26-3 at 166:19-21; R. 26-4 at 10.) Nor did she ask COJ to attend the hearing. (R. 26-3 at 164:23-165:11, 166:22-24, 167:21-168:9.) At no time before the November 9 hearing did Simonson communicate with Attorney Olejniczak or Attorney Krueger about the hearing. (R. 26-3 at 164:23-165:11, 166:22-24, 167:21-168:9.)

Simonson failed to appear at the November 9 hearing. (R. 26-3 at 210:14-15; R. 26-4 at 10.) As a result, the probate court removed her as trustee and personal representative in an Order dated November 24, 2015. (R. 26-15; R. 26-4 at 10.) As part of the Order, the probate court determined that Simonson "was given proper notice of [the November 9]

hearing." (R. 26-15 ¶¶ 1, 7.)

Simonson appealed the November 24, 2015 Order. (R. 26-16; R. 26-4 at 10.) She argued on appeal that she was not provided proper notice of the November 9 hearing in violation of her due process rights. (Exhs. 26, 28.) The appeal was denied in a Decision dated September 28, 2016. (R. 26-16.) The Wisconsin Court of Appeals ruled that Simonson was, in fact, provided proper notice of the November 9, 2015 hearing, and that her "due process rights were not violated." (R. 26-16 at ¶¶ 8-12.)

On remand, the probate court entered an order on June 21, 2017 approving a new plan of distribution. (R. 26-1.) Simonson objected to the new plan, and her objections were overruled. (R. 26-3 at 201:5-21.) As part of the June 21, 2017 Order, the probate court imposed surcharges on Simonson as a sanction for failing to attend the November 9 hearing. (R. 26-3 at 185:12-21, 194:1-8.) At the same time, however, the probate judge admitted he made a mistake and that Simonson had, in fact, filed all of the necessary paperwork to close the estate back in 2015:

> A: … I do know at the end of all of this that the court agreed, as of this date, that I had complied and closed the estate, as did the successor trustee.
>
> Q: September 18th, 2015?

A:     Whatever point in time I stopped sending documents; by the close of 2015, whatever I sent in, the successor trustee and the court said that I had, in fact, closed the estate.

[…]

Q:     … Am I to believe then that his earlier determination that you still needed to do something was wrong?

A:     In hindsight, it was; but, it didn't matter because he had his own opinion and he decided that his determination that the estate was closed was because of the successor trustee. She advised him of that; but, at the time, I guess, he believe – I mean, help me with what he said, these are insufficient; it's not closed.

Q:     Okay. So the successor trustee advised and – determined and advised the judge that you had successfully submitted everything that was necessary to close the estate?

A:     Later in the process; but as of November 9th, he believed that the estate wasn't closed and then I didn't show up.

(R. 26-3 at 154:6-14, 187:3-19.)

Simonson appealed the June 21, 2017 Order, arguing that the probate court erred in imposing surcharges against her and approved a plan of distribution in violation of the express terms of the Trust. (R. 26-17.) The appeal was denied in a Decision dated April 4, 2018. (R. 26-17)

Simonson moved the Wisconsin Court of Appeals for reconsideration, which was denied on May 7, 2018. (R. 26-18.) Simonson also filed a petition for review with the Wisconsin Supreme Court, which was denied on September 7, 2018. (R. 26-18.)

## II. Procedural History

On August 20, 2021, Simonson filed a civil malpractice suit against COJ, Attorney Olejniczak, and Attorney Krueger (hereinafter collectively referred to as "COJ") in federal court in Connecticut. (R. 26-19.) The action was dismissed for lack of personal jurisdiction. *See Simonson v. Olejniczak*, 2022 U.S. Dist. LEXIS 186116 (D. Conn. May 17, 2022). Simonson appealed the decision to the U.S. Court of Appeals for the Second Circuit, which affirmed the dismissal on April 14, 2023. *See Simonson v. Olejniczak*, No. 22-1219, 2023 U.S. App. LEXIS 8950 (2d Cir. Apr. 14, 2023). Eleven days later, Simonson filed this action in Wisconsin. (R. 1.) In the Complaint, Simonson alleges that COJ breached the legal services agreement by failing to file paperwork to close the estate and by failing to appear at the November 9 hearing. (R. 1.)

Simonson initially filed this action *pro se*. (R. 1.) On January 10, 2024, Simonson's husband, Eric Simonson (who is also a licensed

attorney), filed a Notice of Appearance on her behalf. (R. 22.) Since then, Simonson has been represented by her husband and is no longer *pro se*. (R. 22.) Mr. Simonson appeared with his wife at her deposition on January 12, 2024. (R. 26-3.)

The deadline for Simonson to make Rule 26(a)(2) expert disclosures was January 15, 2024. (R. 18.) Simonson did not disclose any expert by the deadline. (R. 26 ¶ 3.) While Simonson identified herself as a fact witness in her Rule 26(a)(1)(A) disclosures, she did not disclose herself as an expert pursuant to Rule 26(a)(2). (R. 26 ¶ 3.)

On February 27, 2024, COJ filed a motion for summary judgment. (R. 23) COJ argued that it was entitled to summary judgment for many reasons, including the following: (1) Simonson cannot prove her case without an expert; (2) Simonson materially breached the legal services agreement by failing to pay COJ's fees on time; (3) Simonson cannot prove that COJ breached the legal services agreement; (4) Simonson's decision to represent herself *pro se* in the probate matter after COJ withdrew is an intervening cause that bars her legal malpractice claims; (5) Simonson cannot prove the "suit within the suit"; (6) Simonson's claim that COJ breached the legal services agreement by failing to close the

estate is time-barred; (7) Simonson's claim that COJ breached the legal services agreement by failing to close the estate is barred by the judicial error doctrine; and (8) the individual attorneys are not parties to the legal services agreement. (R. 32.)

### III. District Court Decisions and Orders

On August 20, 2024, the district court issued a written decision granting summary judgment to COJ. (R. 40.) It ruled that COJ was entitled to summary judgment because Simonson materially breached the legal services agreement, thereby excusing any further performance by COJ, and because there is no evidence from which a jury could conclude that COJ breached its obligations under the legal services agreement. (R. 40.) Given these conclusions, the district court found it "unnecessary to address all of the additional arguments [COJ] offer[s] in support of the motion for summary judgment." (R. 40.)

Simonson filed a motion for reconsideration on September 12, 2024. (R. 45.) She argued that the district court failed to construe the record in the light most favorable to her and that genuine issues of material fact exist to preclude summary judgment. (R. 46.) In an Order dated February 11, 2025, the district court denied Simonson's motion. (R. 49.) It ruled as

follows:

> After careful review of its order and Simonson's motion, the court concludes that there is no basis to alter the August 20, 2024 order. Simply put, based on the undisputed material facts, no reasonable jury could find that Simonson did not materially breach the parties' legal services agreement. She failed to make timely payments in accordance with the agreement thus depriving Defendants of the only benefit they reasonably expected and excusing them of any future performance. And having withdrawn from the case for non-payment of fees, Defendants had no further obligation to perform legal services for Simonson. The court need not go so far as to reiterate the entirety of its order.

(R. 49.)

Simonson filed this appeal on March 12, 2025. (R. 51.)

## SUMMARY OF ARGUMENT

The Court should AFFIRM the district court's order granting summary judgment to COJ. Simonson's claims fail as a matter of law for many reasons. The Court can follow the reasoning of the district court or affirm on any other ground raised by COJ below.

Most obviously, Simonson cannot prove a legal malpractice case without an expert. She alleges COJ failed to fulfill its obligations under the legal services agreement. Whether COJ breached a duty of care is a matter that requires specialized knowledge. Without an expert, a jury would have to speculate about how a reasonable trusts and estates attorney would act under these circumstances.

Beyond Simonson's failure to designate an expert, the undisputed evidence shows that she materially breached the legal services agreement by failing to pay COJ's bills. After months of not making any payments, Simonson owed more than $80,000 in unpaid legal fees. COJ told Simonson they were doing no more work and withdrew from the probate case on August 24, 2015. They had no obligation to perform any work for Simonson after that, including attending the November 9 hearing.

Even if Simonson could prove that COJ failed to fulfill its obligations under the legal services agreement, she cannot prove causation. After COJ withdrew, Simonson petitioned the probate court for a two-month extension to close the estate, which the court granted. Simonson could have avoided all her damages by hiring a new attorney to assist her with closing the estate. Instead, she tried to handle it herself. That decision constitutes an intervening cause that bars her legal malpractice claims against COJ.

Even if Simonson could prove liability and causation, she cannot prove she would have received a more favorable distribution but for the alleged malpractice, *i.e.*, the "suit within the suit." Whether the probate court would have approved a different plan is pure speculation. Moreover, it is impossible for a jury to calculate damages without an expert to explain how distribution plans are calculated and approved by Wisconsin probate courts.

Focusing on Simonson's claim that COJ breached the legal services agreement by failing to file paperwork to close the estate, the claim is barred by the statute of limitations and the judicial error doctrine. The deadline to close the estate was August 3, 2015. Applying the 6-year

statute of limitations, Simonson had until August 3, 2021 to sue COJ for failing to close the estate by the deadline. Because she waited until August 20, 2021 to file suit, her claim is time-barred. The claim is also barred by the judicial error doctrine. According to Simonson, the probate judge made a mistake when he ruled the estate was delinquent; he later admitted that Simonson filed all the necessary paperwork to close the estate in 2015. Thus, Simonson's claimed damages arose from the judge's error, not COJ's alleged malpractice.

Finally, even if Simonson's claims against COJ somehow survive summary judgment, her claims against the individual attorneys— Attorney Olejniczak and Attorney Krueger—fail as a matter of law. They are not parties to the legal services agreement and Simonson chose to sue them in contract only.

## STANDARD OF REVIEW

A district court's grant of summary judgment is reviewed *de novo*.[1] *O'Leary v. Accretive Health, Inc.*, 657 F.3d 625, 630 (7th Cir. 2011). On summary judgment, the court construes the record in the light most favorable to the nonmoving party and draws all reasonable inferences in her favor. *Reives v. Illinois State Police*, 29 F.4th 887, 891 (7th Cir. 2022). Summary judgment is appropriate if the pleadings, depositions, affidavits, and other submissions on file show that there is no genuine issue as to any material fact and that the moving party is entitled to judgment as a matter of law. Fed. R. Civ. P. 56(c).

Because this Court examines the case *de novo*, it is not constrained by the district court's reasoning. *Oyler v. National Guard Ass'n of the United States*, 743 F.2d 545, 555 (7th Cir. 1984). The Court may affirm summary judgment on any ground supported by the record, even one the district court did not rely on, as long as the issue was adequately raised below and the nonmoving party had an opportunity to contest it. *West*

---

[1] Simonson spends her entire brief arguing that the district court applied the wrong standard. Because this Court reviews the district court's grant of summary judgment *de novo*, Simonson's argument is irrelevant. *See Gillis v. Chicago Transp. Auth.*, 1996 U.S. App. LEXIS 23379, *3-4 (7th Cir. 1996).

*Side Salvage, Inc. v. RSUI Indem. Co.*, 878 F.3d 219, 222 (7th Cir. 2017);

*Simmons v. Pryor*, 26 F.3d 650, 653 (7th Cir. 1993).

# ARGUMENT

## I. This Is a Legal Malpractice Case.

Although Simonson never uses the words "legal malpractice" in her Brief (she refers to her case as a "fairly straightforward breach of contract action"), this is a legal malpractice case. In Wisconsin, legal malpractice can "sound either in tort or contract." *Cty. of Milwaukee v. Schmidt, Garden & Erikson*, 43 Wis. 2d 445, 453, 168 N.W.2d 559 (1969); *see also Boehm v. Wheeler*, 65 Wis. 2d 668, 676, 223 N.W.2d 536 (1974). A tort claim arises from a breach of the attorney's common law duty, whereas a contract claim arises from a breach of duty created by a contractual agreement between the attorney and the client. *See Smith v. Long*, 178 Wis. 2d 797, 802, 505 N.W.2d 429 (Ct. App. 1993). Whether a plaintiff sues in tort or on contract, "each cause of action is grounded upon the same identical acts of the defendant, namely, his [or her] failure to exercise the proper skill or care, or both." *Cty. of Milwaukee*, 43 Wis. 2d at 453 (quoting *Klingbeil v. Saucerman*, 165 Wis. 60, 62, 160 N.W. 1051 (1917)).

Simonson cannot avoid her obligation to prove every element essential to a legal malpractice case merely by calling it a "breach of

contract action." *See Pines Bach, LLP v. Mills*, 2023 U.S. Dist. LEXIS 186753, at *9 (W.D. Wis. Oct. 17, 2023). "An action against one's attorney for damages resulting from the manner in which the attorney represented the client constitutes an action for malpractice regardless of whether predicated upon contract or tort …" *Compston v. Holzapfel*, 1991 Ohio App. LEXIS 3344, at *3 (Ct. App. July 15, 1991) (applying the same standard as Wisconsin); *see also American Int'l Adjustment Co. v. Galvin*, 86 F.3d 1455, 1459 (7th Cir. 1996) ("[C]ourts have held repeatedly that legal malpractice claims are governed by tort principles regardless of whether they are brought as a tort, a breach of contract, or both.").

In a legal malpractice case, the plaintiff must prove: (1) the existence of an attorney-client relationship; (2) the acts constituting the attorney's violation of a duty of care; (3) causation; and (4) damages. *Lewandowski v. Continental Casualty Co.*, 88 Wis. 2d 271, 277, 276 N.W.2d 284 (1979). An attorney violates a duty of care when he or she fails "to exercise that degree of care, skill, and judgment which is usually exercised under like or similar circumstances by lawyers licensed to practice in this state." *Cook v. Continental Casualty Co.*, 180 Wis. 2d 237, 245-46, 509 N.W.2d 100 (Ct. App. 1993) (quoting Wis. JI-Civil 1023.5).

## II. Simonson Cannot Prove Her Legal Malpractice Case Without an Expert.

Whether arising in contract or tort, Wisconsin law requires a plaintiff in a legal malpractice suit to present expert testimony to establish the standard of care required of an attorney and whether the defendant has departed from this standard. *See DeThorne v. Bakken*, 196 Wis. 2d 713, 717, 539 N.W.2d 695 (Ct. App. 1995); *Cook*, 180 Wis. 2d at 246; *Helmbrecht v. St. Paul Ins. Co.*, 122 Wis. 2d 94, 112, 362 N.W.2d 118 (1985). Legal malpractice cases which do not involve specialized knowledge, skill, or experience—and which therefore do not require expert testimony—are "the exception to the rule." *Olfe v. Gordon*, 93 Wis. 2d 173, 184-85, 286 N.W.2d 573, 578 (1980). Without an expert, a jury has no standard with which to determine whether COJ's alleged conduct caused Simonson any legally cognizable injury. *See Olfe*, 93 Wis.2d at 180.

Simonson has no expert to prove her legal malpractice claims. The deadline for Simonson to make Rule 26(a)(2) expert disclosures was January 15, 2024. (R. 18.) Simonson did not disclose any expert by the

deadline.[2] (R. 26 ¶ 3.) As a result, she is barred from introducing any expert testimony at trial. *See* Fed. R. Civ. P. 26(a)(2); Fed. R. Civ. P. 37(c)(1); *Uncommon, LLC v. Spigen, Inc.*, 926 F.3d 409, 417 (7th Cir. 2019); *Salgado by Salgado v. Gen. Motors Corp.*, 150 F.3d 735, 742 (7th Cir. 1998) ("[T]he sanction of exclusion is automatic and mandatory unless the sanctioned party can show that its violation of Rule 26(a) was either justified or harmless.").

Simonson's claims fail as a matter of law without an expert. *See Voss v. City of Middleton*, 162 Wis.2d 737, 748, 470 N.W.2d 625 (1991). State courts in Wisconsin have repeatedly dismissed legal malpractice claims at summary judgment when the plaintiff did not have a standard of care expert. *See*, *e.g.*, *Patterson v. Kohn*, 2020 Wis App. LEXIS 19, 2020 WI App 10, 390 Wis. 2d 833, 939 N.W.2d 875, at *5-6 (unpublished); *Lee, Kilkelly, Paulson & Kabaker v. ROI Invs.*, 1999 Wis. App. LEXIS 492, 228 Wis. 2d 512, 597 N.W.2d 775, at *8-9 (Ct. App. 1999) (unpublished); *Irby*

---

[2] While Simonson identified herself as a fact witness in her Rule 26(a)(1)(A) disclosures, she did not disclose herself as an expert pursuant to Rule 26(a)(2). (R. 26 ¶ 3.) "There is a significant distinction between disclosing an individual as a fact witness under Rule 26(a)(1)(A) and disclosing an expert witness under Rule 26(a)(2)." *Karum Holdings LLC v. Lowe's Cos.*, 895 F.3d 944, 951 (7th Cir. 2018). Failure to disclose a witness as an expert under Rule 26(a)(a) causes extreme prejudice to the other side. *Hieshetter*, 2012 U.S. Dist. LEXIS 37416, at *4-5.

*v. Hackbarth*, 1995 Wis. App. LEXIS 183, 191 Wis. 2d 825, 532 N.W.2d 145, *9 (Ct. App. 1995) (unpublished); *Brophy v. Mei*, 2010 Wis. App. LEXIS 19, 2010 WI App 33, 323 Wis. 2d 822, 781 N.W.2d 550, at *1, 13 (unpublished); *Heimermann v. Kohler*, 2000 Wis. App. LEXIS 742, 2000 WI App 214, 238 Wis. 2d 840, 618 N.W.2d 273, at *14 (unpublished); *Evers v. Lerner*, 1995 Wis. App. LEXIS 1465, 198 Wis. 2d 391, 542 N.W.2d 239, at *2 (Ct. App. 1995) (unpublished). Federal courts in Wisconsin have also repeatedly dismissed legal malpractice claims at summary judgment because the plaintiff did not have a standard of care expert. *See*, *e.g.*, *Mills*, 2023 U.S. Dist. LEXIS 186753; *Getmor Enters., LLC v. Brown Cty.*, 2013 U.S. Dist. LEXIS 113269, at *7-8 (E.D. Wis. Aug. 12, 2013); *Hieshetter*, 2012 U.S. Dist. LEXIS 37416, at *2-4; *Pierson v. Kraucunas*, 2002 U.S. Dist. LEXIS 26872, at *28-31 (W.D. Wis. Feb. 20, 2002). Additionally, this Court has routinely affirmed decisions granting summary judgment to the defendant in legal malpractice actions due to plaintiff's failure to have an expert. *See*, *e.g.*, *Koumjian v. Mudd*, 2024 U.S. App. LEXIS 22140, at *4-7 (7th Cir. Aug. 29, 2024); *Fletcher v. Hoeppner Wagner & Evans, LLP*, 775 Fed. Appx. 240, 241-242 (7th Cir. 2019); *Ball v. Kotter*, 723 F.3d 813, 825 (7th Cir. 2013); *Hassebrock v.*

*Bernhoft*, 815 F.3d 334, 343 (7th Cir. 2016).

Expert testimony is necessary in the present case because of the technical, complex nature of the issues and the claimed damages that flow from the asserted breaches of the attorneys' duty of care. A law firm's handling of estate and trust disputes in a probate case is precisely the type of conduct that is outside the purview of lay people, and therefore requires expert testimony. For example, an average juror does not know what must be done to open and close an Estate or when necessary paperwork must be filed and with whom. An average juror does not know what must be done upon termination of an attorney-client relationship. An average juror does not know what obligations an attorney owes to a former client. An average juror does not know how distribution plans are calculated and approved by Wisconsin probate courts. Simply put, expert testimony is needed to assist a jury in understanding the probate process and the degree of care, skill, and judgment that an attorney must exercise in representing a client in a probate matter. *See Helmbrecht*, 122 Wis. 2d at 112. Without expert testimony, Simonson cannot even educate a jury on what it means to "close an estate." Absent such proof, Simonson's claims fail as a matter of law and must be dismissed.

Simonson argues that COJ had "obligations" under the legal services agreement. She argues that COJ had an "obligation … to file the papers necessary to close the Estate promptly." (Pl.-App. Br. at 19, 21.) She also argues that COJ "remained obligated under the Contract to continue representing Simonson without regard to whether the probate court had permitted their withdrawal as counsel of record." (Pl.-App. Br. at 13.) None of these "obligations" appear in the legal services agreement. Whether the standard of care required COJ to perform these acts is a matter of "specialized knowledge" requiring expert testimony. *See Hassebrock*, 815 F.3d at 342 ("The breach-of-contract claim directly incorporates the professional duties of care that, as we've said, require expert testimony."); *Forsyth v. Feinstein*, 2000 Ohio App. LEXIS 549, at *12 (Ohio Ct. App. 2000) ("Whether an attorney properly withdrew from representation of a client is not within the common knowledge of lay people. Therefore, expert testimony would be required in order to establish a breach of duty."). Simonson's own personal dissatisfaction with the legal representation she received is not enough. *See Pines Bach*, 2023 U.S. Dist. LEXIS 186753, at *2.

*Compston v. Holzapfel* involved similar facts and is instructive on

these issues. In *Compston*, the plaintiffs hired the defendant law firm to represent them in a domestic relations matter. *Compston*, 1991 Ohio App. LEXIS 3344, at *2. After the defendant law firm allegedly "failed to file various documents," "failed to do what [the plaintiffs] requested," and improperly withdrew from the underlying case, the plaintiffs filed a *pro se* complaint against the defendant law firm for legal malpractice under a breach of contract theory. *Id*. at *1-2. When plaintiffs failed to designate an expert, the defendant moved for summary judgment, which the trial court granted. *Id*. at *2. On review, the court of appeals affirmed the decision, holding that "the question of whether these actions breached a professional duty of care is not within the ordinary knowledge and experience of a layman." *Id*. at *6. "Thus, it was necessary for appellants to present expert testimony to establish the elements of malpractice." *Id*.

The Western District of Wisconsin's decision in *Mills* is also instructive. In *Mills*, the plaintiff alleged that his attorney breached their contract by mishandling depositions. *Mills*, 2023 U.S. Dist. LEXIS 186753, at *7. The plaintiff did not identify any contract terms whereby the attorney promised that it would take depositions at certain times or obtain specific deposition testimony. *Id*. at *8. The plaintiff's only claim

was that the attorney "didn't uphold its general obligation to represent him 'professionally.'" *Id*. The court noted that, "in Wisconsin, a claim that a lawyer breached his duty of care to his client requires expert testimony," which the plaintiff did not have. *Id*. The plaintiff argued he did not need an expert because he was asserting a breach of contract claim. *Id*. at *9. The court rejected this argument, stating that the plaintiff "can't evade his obligation to provide expert testimony in support of that claim just by calling it 'breach of contract' rather than legal malpractice." *Id*. (citing *Doering v. Kaufman*, 1997 Wis. App. LEXIS 981, 213 Wis. 2d 123, 570 N.W.2d 253, at *5 (Ct. App. 1997) (unpublished)). The court ruled that "how a lawyer should prepare for and conduct a deposition or when those depositions should have been taken in this case are not matters within the ordinary knowledge of non-lawyers." *Id*. at *8. The only "evidence" the plaintiff had "consist[ed] solely of his own personal dissatisfaction with his attorney's performance," which is "not enough to establish that [the attorney] breached the contract." *Id*. at *11. Accordingly, the court granted summary judgment to the attorney. *Id*. at *14.

Like the plaintiffs in *Compston* and *Mills*, Simonson cannot prove

her legal malpractice claims without an expert. The legal services agreement does not specify that COJ would file paperwork to close the estate or appear for Simonson at the November 9 hearing. Whether COJ had a general obligation to perform these acts is a question not within the ordinary knowledge and experience of a layperson. This is especially true given Simonson's July 21, 2025 instruction to COJ to "take a back seat and assist only when and where requested," which was further complicated by COJ moving to withdraw from the case on August 24, 2015. (R. 27-6; R. 26-7.)

### III. There Is No Genuine Issue As to Any Material Fact.

Contrary to Simonson's assertion, there are no genuine issues for trial. Because COJ does not have the ultimate burden of proof at trial, it need only demonstrate the "absence of evidence on an essential element of the non-moving party's case" to satisfy its burden at summary judgment. *Celotex Corp. v. Catrett*, 477 U.S. 317, 325 (1986); *Green v. Whiteco Indus.*, Inc., 17 F.3d 199, 201 & n. 3 (7th Cir.1994). The burden then shifts to Simonson to "affirmatively demonstrate by specific factual allegations that a genuine issue of material fact exists for trial." *Celotex*, 477 U.S. at 325. "If the nonmoving party fails to establish the existence

of an element essential to [her] case, one on which [she] would bear the burden of proof at trial, summary judgment must be granted to the moving party." *Ortiz v. John O. Butler Co.*, 94 F.3d 1121, 1124 (7th Cir. 1996).

According to Simonson, the following "facts" are in dispute: (1) whether she "refused to pay" COJ; (2) whether she was "aware of the withdrawal"; (3) whether she "objected to [the] withdrawal"; (4) whether she "believed COJ remained her counsel" after the withdrawal; (5) whether she "was aware of the... November 9 hearing"; and (6) whether she "assumed that COJ ... would represent her at [the] hearing." None of these "facts" are material to the motion for summary judgment. A fact is considered "material" if it "might affect the outcome of the suit." *Anderson v. Liberty Lobby, Inc.*, 477 U.S. 242, 248 (1986). A dispute over a material fact is considered "genuine" only if "the evidence is such that a reasonable jury could return a verdict for the nonmoving party." *Id.*

Whether Simonson "intended" to pay COJ's bills is irrelevant to whether she materially breached the legal services agreement. The agreement required Simonson to pay COJ's bills "on time" and "within thirty (30) days of receipt." (R. 27-2.) She did not. (R. 27-8 at 28-44.) She

did not pay the January, February, March, April, May, June, July, or August bills on time. (R. 27-8 at 28-47.) During these eight months, she made only three partial payments. (R. 27-8 at 44, 47.) By the end of August, she still owed $80,544.24 in unpaid legal fees. (R. 27-8 at 48.) Whether Simonson "intended" to pay or "never indicated that she would refuse to pay" does not matter. *See Kay Law Firm v. Stangler*, 2015 Wis. App. LEXIS 336, ¶¶ 10-11, 2015 WI App 52, 364 Wis. 2d 408, 866 N.W.2d 406 (unpublished) ("Stangler's third argument is that he did not breach the contract he signed with Kay & Kay because he intended to pay off the money owed through an installment plan. This argument is completely devoid of merit.").

Similarly, whether Simonson "agreed to" or "objected to" COJ's withdrawal is irrelevant. Simonson argues in her Brief that she "objected to the motion [to withdraw]" and never "agreed to terminate the contract." (Pl.-App. Br. at 19, 21.) Under the legal services agreement, COJ did not need Simonson's consent to withdraw. The agreement gave COJ the right to terminate the relationship and withdraw "in the event of … nonpayment." (R. 27-2.) COJ moved to withdraw on August 26, 2015 because "Simonson has failed to fulfill her obligations to COJ by failing

to make payments for services agreed." (R. 26-7 at 2.) The probate court granted COJ's motion to withdraw "for the reasons set forth in its Motion" and entered an Order stating that COJ "will have no further obligations concerning the case." (R. 27-13.) Neither COJ nor the probate court needed Simonson's permission under these circumstances.

Simonson's subjective beliefs are similarly irrelevant. She claims she was not aware the probate court had allowed COJ to withdraw and "believed Defendants remained her counsel." (Pl.-App. Br. at 16.) True or not, Simonson's subjective beliefs are irrelevant to whether she can prove a legal malpractice claim against COJ. Her subject beliefs do not create a contract. Nor do they create a duty. Just because she believed COJ would do something does not mean they were obligated by contract or common law to do it. Indeed, Simonson seems to concede this point in her Brief:

> "Simonson's subjective belief is not relevant to a claim of breach of contract."

> "Speculation about Simonson's state of mind is irrelevant under Wisconsin law."

(Pl.-App. Br. at 22-23.)

Regardless, the Court does not need to accept Simonson's self-

serving statements about her beliefs as true. In an effort to try to avoid summary judgment, Simonson submitted an Affidavit in which she claims that she did not know COJ had withdrawn, that she believed they were still her attorneys, and that she believed they were going to attend the November 9 hearing. (R. 37-1.) These statements are belied by the record. In *Albiero v. City of Kankakee*, 246 F.3d 927 (7th Cir. 2001), this Court ruled that "self-serving affidavits are insufficient to defeat summary judgment" when those statements are "without factual support in the record." *Id*. at 933 (quoting *Slowiak v. Land O'Lakes, Inc.*, 987 F.2d 1293, 1295 (7th Cir. 1993)). "[S]elf-serving affidavits without factual support in the record do not create an issue of material fact." *Rogers v. City of Chicago*, 320 F.3d 748, 751 (7th Cir. 2003).

Not only do Simonson's statements about her beliefs have no factual support in the record, they are directly contradicted by the record. After COJ withdrew, Simonson represented herself *pro se* in the probate matter for months, filing documents with the probate court and communicating directly with opposing counsel. (Exhs. 18, 20-21, 24.) When Simonson received notice of the November 9 hearing, she advised opposing counsel that she was not available and "will need to petition the

Court to delay this hearing." (R. 26-14 at 1.) She did not communicate with COJ about the hearing, ask COJ to attend the hearing, or ask COJ to petition the court to delay the hearing. (R. 26-3 at 164:23-165:11, 166:22-24, 167:21-168:9; 37-1 at ¶ 33.) She did, however, receive monthly statements from COJ at the end of August, September, and October showing no new work performed. (R. 27-8 at 48-50.) There was absolutely no factual or legal basis for Simonson to assume that COJ was going to attend the November 9 hearing.

Perhaps realizing it would be unreasonable to assume that COJ was going to attend the November 9 hearing, Simonson takes the position that she never received notice of the November 9 hearing. (37-1 at ¶ 32.) Whether she received notice of the hearing has no relevance to her legal malpractice claims against COJ. By that time, COJ had terminated the legal services agreement and withdrawn from the lawsuit. (R. 27-10; R. 26-7.) COJ therefore had no contractual or common law duty to attend the hearing.

Relevant or not, this Court should rule that Simonson is estopped from claiming that she did not have notice of the November 9 hearing under the *Rooker-Feldman* doctrine. "The *Rooker-Feldman* doctrine is an

important foundation for the division of power between federal and state courts." *Hadzi-Tanovic v. Johnson*, 62 F.4th 394, 399 (7th Cir. 2023). "The doctrine imposes a 'jurisdictional bar' that prohibits federal courts other than the Supreme Court of the United States from reviewing final state court judgments." *Id.* (citing *Andrade v. City of Hammond*, 9 F.4th 947, 948 (7th Cir. 2021)). The doctrine applies when a federal court "is essentially being called upon to review the state court decision." *Jakupovic v. Curran*, 850 F.3d 898, 902 (7th Cir. 2017).

The *Rooker-Feldman* doctrine applies here because the Wisconsin Court of Appeals has already ruled that Simonson was, in fact, provided proper notice of the November 9 hearing. *See Simonson v. Vaira*, 2016 Wis. App. LEXIS 633, 2016 WI App 80, 372 Wis. 2d 185, 888 N.W.2d 23 (unpublished). After Simonson failed to appear for the November 9 hearing, the probate court ruled that Simonson "was given proper notice of this hearing." (R. 26-15 ¶¶ 1, 7.) Simonson appealed the decision, and it was upheld by the court of appeals. *Simonson*, 2016 WI App 80, ¶ 3. The court of appeals reviewed the record, which showed that a notice of hearing was mailed to Simonson on October 5, 2015. *Id.* ¶ 3. Additionally, a file-stamped copy of the notice of hearing was mailed to Simonson on

October 12, 2015. *Id.* Finally, in a letter dated October 9, 2015, Simonson "acknowledged notice of the November 9, 2015 hearing date." *Id.* Based on this record, the court of appeals ruled that the probate court properly found that notice of the hearing was given to Simonson and that her "due process rights were not violated." *Id.* ¶¶ 8-12.

Under the *Rooker-Feldman* doctrine, Simonson cannot relitigate the state court's factual findings and conclusions in this Court. By alleging that she "received no notice from the probate court of the date of any hearing," Simonson is arguing that the state court's decision was erroneous. It is a collateral attack on the state ruling, which *Rooker-Feldman* forbids. *See Acedo v. Cty. of San Diego*, 2018 U.S. Dist. LEXIS 118353 (S.D. Cal. July 16, 2018) (holding that the *Rooker-Feldman* doctrine barred the plaintiff from arguing in the federal action that his due process rights were violated because his biological mother did not receive notice of a state court hearing that resulted in a termination of parental rights because the juvenile court already ruled on the issue).

To survive summary judgment, Simonson "must do more than simply show that there is some metaphysical doubt as to the material facts." *Siegel v. Shell Oil Co.*, 612 F.3d 932, 937 (7th Cir. 2010). She must

"submit evidentiary materials that set forth specific facts showing that there is a genuine issue for trial." *Id.* (citations omitted). Simonson has failed to make a showing sufficient to establish the existence of an element essential to her case. Summary judgment is therefore appropriate. *See Parent v. Home Depot U.S.A., Inc.*, 694 F.3d 919, 922 (7th Cir. 2012).

### IV. Simonson Materially Breached the Legal Services Agreement by Failing to Pay COJ's Fees on Time.

Based on the undisputed facts, Simonson materially breached the legal services agreement. Whether a party to a contract has breached a contractual provision is a question of law. *See Elliott v. Donahue*, 169 Wis. 2d 310, 316, 485 N.W.2d 403 (1992). In order to be material, a breach must "be so serious … as to destroy the essential objects of the contract." *Mgmt. Comput. Servs., Inc. v. Hawkins, Ash, Baptie & Co*, 206 Wis. 2d 158, 183, 557 N.W.2d 67 (1996) (citations omitted). In determining materiality, the court may consider "the extent to which the injured party will be deprived of the benefit that he or she reasonably expected, and the extent to which the injured party can be adequately compensated for his or her loss." *Id.* at 184. When only one reasonable conclusion can be

drawn from the undisputed facts, the court may conclude as a matter of law that a material breach occurred. *Id.*

As discussed above, it is undisputed that Simonson did not pay COJ's fees in full and on time. After paying the first six statements when they became due, Simonson stopped making payments in January of 2015. (R. 27-8.) She made no payments between January 9, 2015 and May 11, 2015. (R. 27-8 at 28-44.) As of May 11, 2015, the total outstanding balance was $91,462. (R. 27-8 at 41.) On May 11, 2015, Simonson made a partial payment of $15,000. (R. 27-8 at 44.) Simonson made no additional payments in May or June. (R. 27-8 at 44-47.) As of June 30, 2015, the total outstanding balance was $91,047. (R. 27-8 at 46.) Simonson made two partial payments on July 30, 2015 totaling $12,000. (R. 27-8 at 47.) After applying these payments to the total, the balance due as of July 31, 2015 was $80,216. (R. 27-8 at 47.) Simonson made no payments in August, September, October, or November. (R. 27-8 at 47-51.) The total outstanding balance as of November 30, 2015 was $81,544. (R. 27-8 at 51.)

COJ repeatedly asked Simonson to pay its bills. In an email on April 6, 2015, Attorney Krueger told Simonson he would be "taking no

further action until such time that our fees are paid in full." (R. 27-19.)

On June 12, 2015, Attorney Olejniczak told Simonson they needed "prompt payment" and were "not going to act as your bank any further." ((R. 27-21.) On July 21, 2015, Attorney Krueger told Simonson she needed to make a payment "as soon as possible." (R. 27-6.) The same day, Attorney Olejniczak told Simonson, "We have bent over backward for you in this matter and it's time you realize that your obstinacy in paying our bill will no longer be tolerated." (R. 27-6 at 1.)

In an effort to get paid, Attorney Olejniczak even offered multiple discounts. (R. 27-6 at 2; R. 27-23; R. 27-20.) On July 21, 2015, Attorney Olejniczak offered a $6,000 discount. (R. 27-6 at 2.) On August 5, 2015, Attorney Olejniczak offered a $15,000 discount. (R. 27-23.) On October 14, 2015, Attorney Olejniczak offered a $22,500 discount. (R. 27-20.) It is undisputed that Simonson never accepted any of Attorney Olejniczak's generous offers. (R. 27-6 at 2; R. 26-3 at 125:21-126:12.)

By failing to pay COJ's legal fees in full and on time, Simonson materially breached the legal services agreement. *See Gerber v. Ogle Coal Co.*, 195 Wis. 578, 218 N.W. 361 (1928) (holding that the buyer's failure to make punctual payment was a material breach of the contract and the

seller was justified in terminating the contract). Simonson's promise to pay easily qualifies as a material term of the agreement. *See KR Enters. v. Zerteck Inc.*, 999 F.3d 1044, 1054 (7th Cir. 2021). It is axiomatic that nonpayment is a material breach of contract unless the breaching party has a valid excuse. *See*, *e.g.*, *Gerber*, 195 Wis. at 581 ("plaintiffs were justified in terminating the contract because of the defendant's failure to pay"). Many courts have ruled that a client's failure to pay legal fees in full and on time is a material breach of the contract. *See*, *e.g.*, *Thompson Tarasek Lee-O'Halloran PLLC v. Draper*, 2018 Minn. Dist. LEXIS 1479, at \*5 (D. Minn. Sept. 12, 2018) (unpublished); *Dussias Skallas Wittenberg, LLP v. Minogue*, 2020 Ill. App. (1st) 190282-U, 2020 Ill. App. Unpub. LEXIS 861, ¶¶ 1-3 (unpublished); *Swedlow, Butler, Inman, Levine & Lewis Co., L.P.A. v. Gableman*, 1998 Ohio App. LEXIS 3325, at \*7 (Ohio Ct. App. 1998) (unpublished).

Simonson's failure to pay destroyed the essential object of the agreement between her and COJ. As the district court correctly pointed out, payment was the only meaningful benefit that COJ reasonably expected to receive under the agreement. (R. 40 at 12 ("By not paying her lawyers, Ms. Simonson deprived them of the benefit, indeed, the only

benefit, they reasonably expected.").) Moreover, the agreement gave COJ the right to withdraw in the event of nonpayment. (R. 27-2 at 3.) When a contract explicitly states that nonpayment warrants termination, failure to pay constitutes a material breach of a contract as a matter of law. *See ARP Films, Inc. v. Marvel Entertainment Group, Inc.*, 952 F.2d 643, 649 (2d Cir. 1991).

Faced with overwhelming evidence that she breached the legal services agreement, Simonson argues in the alternative that her breach was not "material." (Pl.-App. Br. at 25-27.) She cites to the Restatement (2d) of Contracts § 241 (1981) for support, which sets forth five factors that the Court may consider in determining whether a breach is material, including "the extent to which the injured party will be deprived of the benefit which he reasonably expected" and "the extent to which the injured party can be adequately compensated for the part of that benefit of which he will be deprived." Simonson argues that COJ was not deprived of any benefit because "the Trust had more than adequate resources to pay [COJ]," and COJ could "sue Simonson and/or the Trust for payment." (Pl.-App. Br. at 27.) This argument is absurd. "It is a basic tenet of contract law that nontender of payment constitutes material

breach, which operates to discharge performance by the nonbreaching party." *Imtrac Indus. v. Glassexport Co.*, 1996 U.S. Dist. LEXIS 1022, *17, (S.D.N.Y. 1996) (citing the Restatement (2d) of Contracts § 241 (1981)). Furthermore, COJ did not agree to be paid 'someday in the future' or in small "progress payments." The legal services agreement required COJ's monthly statements to be paid "within thirty (30) days of receipt." (R. 27-2 at 2.) "There is almost always no such thing as 'substantial performance' of payment between commercial parties when the duty is simply the general one to pay. Payment is either made in the amount and on the due date, or it is not." *Treasure Coast, Inc. v. Ludlum Const. Co.*, 760 So. 2d 232, 234-35 (Fla. 4th DCA 2000). Finally, Simonson's failure to pay did not comport with standards of good faith, which is the Restatement (2d) of Contracts § 241's fifth factor, since she knew when payment was due but failed to pay because she was "very busy" and it was "not a priority" for her. (R. 26-3 at 112:21-113:12, 132:2-133:14.)

As a result of Simonson's material breach, COJ was excused from future performance under the legal services agreement. A material breach by one party to a contract excuses subsequent performance by the

other party. *Entzminger v. Ford Motor Co.*, 47 Wis. 2d 751, 755, 177 N.W.2d 899 (1970). To expect COJ to continue to represent Simonson without payment would create an unreasonable financial burden on COJ. It would only add to the fees she was refusing to pay. Under well-established contract principles, COJ had no obligation to continue to represent Simonson for free. *See id.*

Simonson's breach also gave COJ the right to terminate the legal services agreement. The agreement explicitly states that COJ may terminate the relationship and withdraw from representation "in the event of … nonpayment." (R. 27-2 at 3.) That is precisely what happened here. On August 24, 2015, Attorney Olejniczak told Simonson that he was "doing nothing" more "since you have refused to pay our bill," and that he was moving to withdraw. (R. 27-10.) Later that day, Attorney Olejniczak moved to withdraw from the probate case based on Simonson "failing to make payments for services as agreed." (R. 27-11 at 2.) Two days later, the probate court entered an Order allowing COJ to withdraw and declaring that COJ "will have no further obligations concerning the [probate] case." (R. 27-13.) Simonson never moved to vacate or appeal the order. (R. 26-1.) After that date, no contract for legal services existed

between the parties.

## V. COJ Did Not Breach the Legal Services Agreement.

Notwithstanding Simonson's breach, there is no evidence that COJ breached the legal services agreement. To prevail on her breach of contract claim, Simonson must identify the terms of a written contract that were breached or show that an oral agreement was enforceable. *See Nelson v. Berg*, 2023 WI App 32, ¶ 29, 408 Wis. 2d 542, 993 N.W.2d 175 (unpublished). Simonson alleges that COJ breached the terms of the legal services agreement by failing to file paperwork to close the Estate and by failing to appear at the November 9 hearing. Nothing in the legal services agreement required COJ to perform either of these acts.

Simonson hired COJ to "represent [her] in the dispute in the Estate and Trust of John J. Hohler with Mary M. Vaira." (R. 27-2 at 1.) The "dispute … with Mary M. Vaira" unquestionably refers to the petition filed by Simonson's sister to remove her as trustee and personal representative, which was filed just two days before Simonson signed the legal services agreement. (*Compare* R. 26-5 *with* R. 27-2.) On June 5, 2015, the probate court entered an Order denying the petition. (R. 27-4 at 6.) Thus, as of June 5, 2015, COJ had satisfied all its contractual

obligations. Going forward, the parties agreed that Simonson was "left to administer and execute the [June 5] Order" herself and that COJ would "take a back seat and assist only when and where requested" in an effort to limit legal fees. (R. 27-22 at 2; R. 27-6; R. 27-7.)

There was never an agreement, express or implicit, that COJ would close the Estate. First, there is no provision in the legal services agreement that required COJ to close the Estate. (*See* R. 27-2.) Second, COJ never agreed to close the Estate. The Estate was opened by one of Simonson's prior attorneys, not by COJ. (R. 26-1.) Although Simonson asked COJ to file paperwork to close the Estate on August 24, 2015, they told her no. (R. 27-10 at 2.) Attorney Olejniczak told Simonson that she would "have to deal with the estate closing" herself. R. 27-10 at 2.) Simply put, there was never an "agreement"—*i.e.*, offer and acceptance—that COJ would file paperwork to close the Estate.

Likewise, COJ never agreed to attend the November 9 hearing. Simonson admitted at her deposition that she never communicated with Attorney Krueger or Attorney Olejniczak about the November 9 hearing. (R. 26-3 at 164:23-165:11, 166:22-24, 167:21-168:9.) She did not ask them to attend the hearing. (R. 26-3 at 167:21-168:9.) She did not ask them to

petition the probate court to reschedule the hearing. (R.26-3 at 166:22-24.) Moreover, the November 9 hearing occurred more than two months after COJ terminated the legal services agreement, withdrew from the case, and stopped performing work for Simonson.

While Simonson repeatedly refers to COJ's "obligations" in her Brief, she never identifies the source of the "obligations." They do not appear explicitly in the legal services agreement. To the extent she intends to argue COJ implicitly agreed to perform certain acts just by being her attorneys, she has no expert. An expert is required to establish the standard of care required of an attorney and whether the defendant has departed from this standard. *See DeThorne*, 196 Wis. 2d at 717; *Cook*, 180 Wis. 2d at 246.

### VI. Simonson's Decision To Represent Herself *Pro Se* After COJ Withdrew Is an Intervening Cause That Bars Her Legal Malpractice Claims.

In addition to not being able to prove a breach, Simonson cannot prove causation. *See Groshek v. Trewin*, 2010 WI 51, ¶ 12, 325 Wis. 2d 250, 784 N.W.2d 163 (a legal malpractice claim requires evidence that the attorney's actions caused the client's damages). After COJ withdrew from the case, Simonson petitioned the probate court for a sixty day

extension to close the estate, which the court granted. (R. 26-8; R. 26-9.) Simonson could have hired new counsel to assist her with the estate closing, but instead chose to do it herself. In an attempt to close the Estate, Simonson prepared and filed documents with the probate court on September 18, 2025. (R. 26-10; R. 26-3 at 146:11-20.) The court deemed them insufficient and gave her a new deadline of October 5, 2015. (R. 26-10; R. 26-1.) Despite admitting she received notice of the new deadline, Simonson took no action to close the Estate between September 18, 2015 and October 5, 2015. (R. 26-3 at 151:20-22; R. 26-1.) As a result, Simonson's sister filed a motion to hold her in contempt on October 5, 2015, which was the subject of the November 9 hearing. (R. 26-12.)

Simonson cannot prove the cause element of her malpractice claim because her failure to hire a new attorney after the probate court gave her a sixty day extension is an intervening cause that severed the causal connection between COJ's alleged malpractice and Simonson's claimed injury. *See Newman v. Beaver*, 1995 Wis. App. LEXIS 62, 191 Wis. 2d 359, 530 N.W.2d 69, at *5-8 (Ct. App. 1995) (unpublished). Simonson could have avoided all her damages by hiring a new attorney. Thus, her claimed damages were not caused by COJ's acts or omissions, but rather

her own failures.

*Mahoney v. McDonnell*, 2014 U.S. Dist. LEXIS 129220, at *13-16 (D.N.J. Sep. 16, 2014), is a similar case involving nearly identical facts. There, the plaintiff—an attorney herself—hired the defendant law firm to represent her in an appeal. *Id*. at *2. After the defendant failed to file a necessary motion and withdrew from the case, the plaintiff took over the handling of the case *pro se*. *Id*. *15. She requested an extension to file the motion, which the court granted. *Id*. Despite the extension, the plaintiff took no actions to file the motion, sought no further extensions, and did not retain new counsel to assist her. *Id*. at *16. When no motion was filed, the court contacted her inquiring about the status of the motion, but she did not respond. *Id*. As a result, her appeal was dismissed. *Id*. The plaintiff then sued her former attorneys, alleging they breached their retainer agreement by failing to file the motion and improperly withdrawing from the case. *Id*. at *6. The district court dismissed the plaintiff's claims for two reasons. First, the court ruled that plaintiff could not prove her claims without an expert. *Id*. at *12-13. In doing so, the court rejected the plaintiff's argument that expert testimony was unnecessary because a juror using ordinary understanding and

experience would be able to determine whether the defendant's conduct was negligent. *Id*. at \*13-14. Second, the court ruled that plaintiff could not prove that her damages were caused by the defendant's alleged negligence. *Id* at \*15-16. The defendant's acts and omissions did not cause the plaintiff's alleged damages because she had ample time and opportunity to retain new counsel to file the motion or file it herself *pro se*. *Id*. Therefore, the defendants were entitled to summary judgment as a matter of law. *Id*. Similarly, this Court should rule that Simonson's failure to hire a new attorney to close the estate after securing a sixty day extension is an intervening cause that bars her legal malpractice claims against COJ.

## VII. Simonson Cannot Prove the "Suit Within the Suit."

Even if Simonson could prove liability and causation, she cannot prove damages—*i.e.*, that she would have been successful but for COJ's alleged malpractice. This is referred to as the "suit within the suit." *See Glamann v. St. Paul Fire & Marine Ins.*, 144 Wis. 2d 865, 870, 424 N.W.2d 924 (1988). "The ultimate goal [in a legal malpractice case] should be to determine what the outcome should have been if the issue had been properly presented in the first instance." *Lewandowski*, 88 Wis.

2d at 281. Here, the "suit within the suit" is the final distribution of assets in the underlying probate action. Simonson alleges that she would have received a more favorable distribution had she not been removed as trustee and personal representative. (R. 26-3 at 199:12-16, 208:20-209:23.) Whether the probate court would have approved a different plan is, however, pure speculation. When asked at her deposition what the probate judge would have done differently had she not been removed as trustee and personal representative, Simonson responded, "Well, I don't know what he would have done … who knows what he would have done …" (R. 26-3 at 206:15-207:8.) We agree. It is impossible to know what the judge may have done differently. Moreover, even if this Court assumes the probate judge would have approved a different plan, it is impossible for a jury to calculate damages without an expert to explain how distribution plans are calculated and approved by Wisconsin probate courts. *See supra* Section II.

Proving the "suit within the suit" is Simonson's burden to prove. Under Wisconsin law, the plaintiff bears the burden of proving that the outcome would have been different but for the defendants' alleged malpractice. *See Glamann*, 144 Wis. 2d at 870. Based on Simonson's own

testimony that it is impossible to know what the probate judge may have done differently, she cannot meet her burden of proving the "suit within the suit."

## VIII. Simonson's Claim That COJ Breached the Legal Services Agreement by Failing to Close the Estate Fails for Additional Reasons.

Looking just at Simonson's claim that COJ breached the legal services agreement by failing to file paperwork to close the Estate, the claim fails for two additional reasons. First, the claim is barred by the statute of limitations. Second, the claim is barred by the judicial error doctrine.

### a. The Claim Is Time-Barred.

Simonson's claim that COJ breached the legal services agreement by failing to file paperwork to close the Estate is time-barred. Pursuant to Wis. Stat. § 893.43(1), a six-year statute of limitations applies to Simonson's breach of contract claims. *See Hicks v. Nunnery*, 2002 WI App 87, ¶ 23, 253 Wis. 2d 721, 643 N.W.2d 809. Simonson first filed suit against COJ on August 20, 2021. Thus, any breaches that occurred prior to August 20, 2015 (six years before she filed suit) are time-barred.

Even if Simonson is correct that COJ was responsible for closing

the estate, their alleged failure to close the Estate indisputably occurred prior to August 20, 2015. Simonson initially hired Attorney Roy Fine to close the estate. (R. 26-1.) When COJ took over the case on July 9, 2014, Simonson learned that Attorney Fine had not closed the estate. (R. 26-3 at 51:4-7.) Simonson testified that she told COJ closing the estate "was one of the first things that needed attention." (R. 26-3 at 51:51-24.) Simonson claims COJ told her they filed the necessary paperwork to close the estate in the summer of 2014. (R. 26-3 at 52:14-53:5.) At a hearing on June 5, 2015, Simonson allegedly learned the Estate had still not been closed. (R. 26-3 at 55:20-56:17.) Simonson testified that Attorney Krueger told her after the hearing that he would "take care of it." (R. 26-3 at 56:23-57:7.) On August 14, 2015, the probate court issued a Notice that the estate "is delinquent because it has not been closed." (R. 26-6.) According to the Notice, "The court set August 3, 2015 as the deadline to close the estate and the deadline has passed." (*Id*.) Thus, if Simonson wanted to sue COJ for breach of contract for failing to close the estate, the latest she needed to file suit by was August 3, 2021 (six years after the alleged breach occurred). In Wisconsin, the discovery rule does not apply to contract actions; the statute of limitations begins running when the

breach occurs. *Segall v. Hurwitz*, 114 Wis. 2d 471, 490, 339 N.W.2d 333 (Ct. App. 1983). Because Simonson waited until August 20, 2021 to file suit, her claim is time-barred.

### b. The Claim Is Barred by the Judicial Error Doctrine.

Simonson's claim that COJ failed to timely close the Estate is also barred by the judicial error doctrine. Under the judicial error doctrine, a client is foreclosed from bringing a malpractice suit where judicial error, rather than attorney malpractice, caused the client's losses. *See*, *e.g.*, *Crestwood Cove Apartments Bus. Tr. v. Turner*, 2007 UT 48, ¶ 33, 164 P.3d 1247, 581 Utah Adv. Rep. 3. When the trial court commits an error, that error acts as an intervening cause that severs the causal connection between the alleged malpractice and the claimed injury, relieving the attorney from liability for his or her alleged negligence. *See Huang v. Brenson*, 2014 IL App (1st) 123231, 379 Ill. Dec. 891, 7 N.E.3d 729, 737 (Ill. App. 2014).

Here, Simonson alleges that the probate judge removed her as trustee and personal representative, in part, because she failed to timely close the Estate. According to Simonson, however, the probate judge later admitted he made a mistake, and conceded that she had, in fact, filed all

of the necessary paperwork to close the estate prior to the November 9 hearing. (R. 26-3 at 154:6-14, 187:3-19.) If Simonson's testimony is accepted as true, her damages were caused by a mistake by the probate judge, not anything COJ's alleged acts or omissions, in which case she cannot prove the causation element of her claim. *See Crestwood*, 164 P.3d at 1255-56; *Huang*, 7 N.E.3d at 737.

### IX. The Individual Attorneys Are Not Parties to the Legal Services Agreement.

Lastly, even if Simonson's breach of contract claims against COJ somehow survive summary judgment, there is no basis for her to pursue a breach of contract claim against the individual attorneys. The legal services agreement was between COJ and Simonson. (R. 27-2.) While Attorney Olejniczak signed the Legal Services Agreement, he did so as representative of COJ. (R. 27-2.) Many courts have ruled that individual attorneys cannot be held personally liable under a breach of contract theory where the legal services agreement was between the client and the law firm, not the individual attorneys personally. *See*, *e.g.*, *Kraner v. Law Offices of Selami, P.C.*, 2019 Mass. Super. LEXIS 5025, at *12 (Sep. 26, 2019); *Anglo-Dutch Petroleum Int'l, Inc. v. Greenberg Peden, P.C.*, 352 S.W.3d 445, 452, 54 Tex. Sup. Ct. J. 1669 (2011); *Adsmp Holdings v.*

*Urbanek*, 2017 Fla. Cir. LEXIS 16873, *4-5; *Bouley v. Bouley*, 19 A.D.3d 1049, 1050, 797 N.Y.S.2d 221 (App. Div. 2005); *Zhou v. Segall*, 2020 Conn. Super. LEXIS 753, at *20-23 (Super. Ct. June 15, 2020); *Seidner v. Finkelman*, 195 A.3d 1048, at *16 (Pa. Super. Ct. 2018); *McAllister v. Watkins*, 2016 U.S. Dist. LEXIS 145242, at *7 (W.D. Okla. Oct. 20, 2016).

More generally, it is a well-established rule in Wisconsin that "where an agent merely contracts on behalf of a disclosed principal, the agent does not become personally liable to the other contracting party." *See Benjamin Plumbing, Inc. v. Barnes*, 162 Wis. 2d 837, 848, 470 N.W.2d 888 (1991) (citing *Sprecher v. Weston's Bar, Inc.*, 78 Wis. 2d 26, 37, 253 N.W.2d 493 (1977)). Similarly, shareholders of a corporation "are generally not personally liable for the contractual obligations of the corporation." *Id*. at 849-50; *see also Capsavage v. Esser*, 224 Wis. 2d 404, 418, 591 N.W.2d 888 (Ct. App. 1999). When a party contracting with a business entity knows that the agent for that entity is contracting on behalf of a corporation, "the agent would not be [personally] liable on the contract unless he or she expressly assumed such liability." *Benjamin Plumbing*, 162 Wis. 2d at 850. "The fact that the agent might also be a director or officer of the corporation is generally irrelevant under agency

principles." *Id.* "A corporation, be it for profit or not for profit, enters into contracts and incurs liability as a separate legal entity." *Id.*

Here, Attorneys Olejniczak and Krueger were, at all times, acting on behalf of LOCJ. Attorney Olejniczak signed the Legal Services Agreement on behalf of LOCJ as an agent and shareholder of the corporation. Attorneys Olejniczak and Krueger cannot be held personally liable under the Legal Services Agreement because they were not a party to the agreement.

## CONCLUSION

For the foregoing reasons, the district court's decision should be AFFIRMED.

Dated: <u>June 2, 2025</u>        Respectfully Submitted,

*/s/ Vincent J. Scipior*
Vincent J. Scipior, SBN 1085069
Coyne, Schultz, Becker & Bauer, S.C.
150 East Gilman Street, Suite 1000
Madison, Wisconsin 53703
Tel.: 608-255-1388
Fax: 608-255-8592

*Attorneys for Defendants-Appellees*

# CERTIFICATE OF COMPLIANCE

I hereby certify that this brief complies with the type-volume limitations of Fed. R. App. P. 32(a)(7)(B), as modified by Circuit Rule 32(c) ("A principal brief is acceptable if it contains no more than 14,000 words"), because this brief contains <u>13,992</u> words according to the word-count function of Microsoft Word 2016.

I further hereby certify that this brief complies with the typeface and type style requirements of Fed. R. App. P. 32(a)(5) and (6), as modified by Circuit Rule 32(b), because this brief has been prepared in a proportionally spaced typeface using Microsoft Word 2016 with 14-point Century Schoolbook font in the body and 12-point Century Schoolbook font in footnotes.

Dated: <u>June 2, 2025</u>      Respectfully Submitted,

*/s/ Vincent J. Scipior*
Vincent J. Scipior, SBN 1085069
Coyne, Schultz, Becker & Bauer, S.C.
150 East Gilman Street, Suite 1000
Madison, Wisconsin 53703
Tel.: 608-255-1388
Fax: 608-255-8592

*Attorneys for Defendants-Appellees*